

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD BRYSON,<br><br>                           Petitioner,<br><br>v.<br><br>RAYMOND MADDEN, Warden, et al.,<br><br>                          Respondents. | Case No.:  3:22-cv-00556-JES-VET<br><br>**ORDER:**<br><br>**(1) DENYING AMENDED PETITION FOR A WRIT OF HABEAS CORPUS;**<br><br>**(2) DENYING PETITIONER'S REQUESTS [ECF No. 40]; AND**<br><br>**(3) DENYING A CERTIFICATE OF APPEALABILITY** |

Ronald Bryson ("Petitioner") is a state prisoner proceeding pro se with an Amended Petition for a Writ of Habeas Corpus ("Amended Petition" or "FAP") filed under 28 U.S.C. § 2254. ECF No. 23 through 23-6. Petitioner challenges his 2019 judgment of conviction in San Diego Superior Court case number SCD268146 on six counts of committing a lewd act upon a child under the age of 14 in violation of Cal. Penal Code § 288(a), with true findings the offenses were committed against multiple victims pursuant to Cal. Penal Code § 667.61(e)(4) and (j)(2) and he inflicted great bodily injury as to one of the counts within the meaning of Cal. Penal Code § 12022.7(a), for which he was sentenced to six

consecutive terms of 25 years to life plus 3 years, for an aggregate term of 153 years to life. ECF No. 38-2 at 34-35; *see also* ECF No. 38-44 at 3.

Petitioner raises 120 enumerated claims of federal error, including but not limited to numerous claims alleging ineffective assistance of trial and appellate counsel, trial court error, errors and/or misconduct committed by police, prosecutors, counsel, and judges, failure to disclose exculpatory evidence, errors or inconsistencies in witness statements and/or testimony, conflict of interest by counsel, false testimony at trial, confrontation clause errors, and errors relating to Petitioner's requests for self-representation. *See* ECF No. 23 *generally*.

Respondent has filed an Answer and lodged the trial record. ECF Nos. 37, 38. Respondent maintains habeas relief is unavailable because (1) many of Petitioner's federal habeas claims are procedurally defaulted (Claims 1-4, 7, 10-11, 14, 16, 18, 20, 22, 24-32, 34-39, 41-42, 44-46, 51-55, 58-70, 72-86, 95-99, 101, 104-111, 113-116) and Petitioner fails to show cause and prejudice or any other reason to excuse default, (2) Claim 27 is barred by *Stone v. Powell*, 428 U.S. 465 (1976), (3) Claims 95, 111, and 113 are barred because they challenge Petitioner's conditions of confinement and are thus not cognizable on federal habeas corpus, (4) Petitioner fails to state a case for relief on any claim except possibly on Claim 1, which is defaulted, (5) Petitioner cannot in any event satisfy section 2254 with respect to any of the claims which the state court rejected on the merits (Claims 1-113 and 117-120) and (6) all of Petitioner's claims lack merit and any potential error was harmless. ECF No. 37 at 4-5.

Petitioner has filed a Traverse, in which he opposes Respondent's contentions and maintains he can demonstrate cause and prejudice to excuse any default, his habeas claims are meritorious, and seeks federal habeas relief and release from custody, as well as an

1  evidentiary hearing; Petitioner also raises several additional requests, detailed and

2  addressed below.[1] *See* ECF No. 40 *generally*; *see also id.* at 30 (Petitioner's requests).

## I.    FACTUAL HISTORY AND RELEVANT PROCEDURAL BACKGROUND

The following is taken from the state appellate court opinion affirming the judgment

in *People v. Bryson*, D076683 (Cal. Ct. App. Jan. 7, 2021). *See* ECF No. 38-44. The state

court factual findings are presumptively correct and entitled to deference in these

proceedings. *See Sumner v. Mata*, 449 U.S. 539, 545-47 (1981).

> In 2014, 12-year-old sisters Jane Doe 1 and Jane Doe 2 moved into their aunt's
> apartment together with other members of their immediate family. The
> defendant was in an on-again, off-again romantic relationship with the sisters'
> aunt. After the sisters moved in with their aunt, the defendant became involved
> in the sisters' lives. He regularly played with them, picked them up from
> school, and babysat them while the other members of the family were at work.
> Jane Doe 1 referred to the defendant as her "Tio."

> During several of the defendant's visits, the defendant forced the sisters to
> have sexual intercourse with him. He forced Jane Doe 1 to have sexual
> intercourse with him on at least five occasions. According to Jane Doe 1, she
> tried to resist the defendant's advances but was unable to do so. During one
> of these forced sexual encounters, the defendant impregnated Jane Doe 1. She
> later gave birth to the defendant's child at the age of 13. The defendant forced
> Jane Doe 2 to have sexual intercourse with him on at least three occasions.

> In connection with these incidents, the defendant was convicted of four counts
> of committing a lewd act on Jane Doe 1 (counts 2–5) and two counts of
> committing a lewd act on Jane Doe 2 (counts 7–8). The jury found true
> allegations that the defendant committed the offenses against multiple victims
> and, as to count 4, that the defendant inflicted great bodily injury in the
> commission of the offense. [footnote: The jury was unable to reach a
> unanimous verdict on two additional counts of committing lewd acts against
> a child under the age of 14 (counts 1 and 6) and a one-strike special

---

[1] Although this case was referred to United States Magistrate Judge Valerie E. Torres
pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and
Recommendation nor oral argument are necessary for disposition of this matter. *See* S.D.
Cal. CivLR 71.1(d).

circumstance allegation of great bodily injury (count 4). The trial court declared a mistrial as to those counts and dismissed the counts and the special circumstance allegation.]

The probation officer submitted a probation report recommending the trial court sentence the defendant to 153 years to life, consisting of six consecutive 25-to-life terms for the lewd act convictions and a consecutive three-year term for the great bodily injury enhancement. The probation officer recommended the court run the terms consecutively because "each count involved a separate sexual act" and the defendant committed the offenses against separate victims.

The prosecution filed a sentencing statement that likewise recommended an aggregate sentence of 153 years to life. The prosecution argued there were multiple factors in aggravation and no factors in mitigation. According to the prosecution, the aggravating factors included the fact that the defendant posed a serious danger to society, the fact that the defendant was on probation when he committed his crimes, and the fact that the defendant's prior performance on probation was unsatisfactory. The prosecution argued, "(a) consecutive prison sentence for each count (was) absolutely warranted in light of Defendant's repeated predatory sexual assaults upon two children, an innocent child being birthed as a result of the rapes, and Defendant's lack of remorse, regret, and accountability for the horrific crimes he committed."

During the sentencing hearing, the trial court opined that it read and considered the probation report and the prosecution's sentencing statement. In accordance with the recommendations of the probation officer and the prosecution, the court sentenced the defendant to prison for 153 years to life.

ECF No. 38-44 at 3-5.

Petitioner appealed, raising one claim for relief as to sentencing (Claim 1 in the instant Petition) and contending to the extent the reviewing court was inclined to find the issue waived, trial counsel was ineffective for failing to raise the issue and argue the matter at sentencing. ECF No. 38-41. On January 7, 2021, the California Court of Appeal affirmed Petitioner's judgment of conviction, finding the sentencing argument forfeited and his arguments as to both the alleged error at sentencing and the asserted ineffective assistance of trial counsel were without merit. ECF No. 38-44. On January 27, 2021, Petitioner submitted an untimely pro se petition for rehearing, which the California Court of Appeal

forwarded unfiled to his appointed appellate counsel on the same day it was received. ECF Nos. 38-45, 38-46.

On February 8, 2021, Petitioner, through counsel, filed a petition for review in the California Supreme Court "solely to exhaust state remedies" as to the sentencing arguments previously presented to the state appellate court (Claim 1 in the FAP). ECF No. 38-47 at 6. Petitioner also submitted an untimely pro se petition for review to the California Supreme Court, which on February 26, 2021, that court granted permission to file and filed on that same date. ECF No. 38-48. On March 17, 2021, the California Supreme Court issued an order summarily denying both petitions for review without a statement of reasoning or citation to authority. ECF No. 38-49.

On April 20, 2022, Petitioner filed a habeas petition in the San Diego Superior Court raising 116 enumerated grounds for relief and on the same date, separately filed motions for an evidentiary hearing, judicial notice, discovery, and for appointment of counsel and an investigator. ECF Nos. 38-50, 38-51. On May 12, 2022, the superior court denied the petition on the merits in a reasoned decision and denied Petitioner's motions. ECF No. 38-52. On August 1, 2022, Petitioner filed a habeas petition in the California Court of Appeal again raising 116 enumerated grounds for relief and again also filing motions for judicial notice, an evidentiary hearing, and for appointment of counsel and an investigator. ECF No. 38-53. On November 2, 2022, the appellate court denied the habeas petition and motions in a reasoned decision. ECF No. 38-54 at 1-5. On February 10, 2023, Petitioner filed a habeas petition in the California Supreme Court raising 120 claims for relief (Claims 1-120 in the instant Petition), which on July 12, 2023, the state supreme court summarily denied. *See* ECF Nos. 38-55 (petition), 38-60 (docket sheet reflecting denial); *see also* ECF No. 23-12 at 4 (Petitioner's filed copy of order denying petition).

On April 20, 2022, Petitioner filed a federal habeas petition raising four claims for relief, along with motions for stay and abeyance, evidentiary hearing and discovery. ECF Nos. 1-4. After dismissing the case without prejudice for failure to satisfy the filing fee requirement, ECF No. 5, denying his subsequent motion to proceed in forma pauperis and

denying without prejudice his motions for stay and abeyance, evidentiary hearing and discovery, ECF No. 7, Petitioner paid the filing fee. ECF No. 12. On February 1, 2023, Petitioner filed another motion for stay and abeyance, which on August 18, 2023, the Court denied as moot pursuant to Petitioner's July 20, 2023, notice of exhaustion, and directed Petitioner to file an Amended Petition which included his newly exhausted claims. *See* ECF Nos. 14, 19-20. On September 18, 2023, Petitioner filed an Amended Petition, the operative pleading in this case. ECF No. 23 through 23-6. On May 17, 2024, Respondent filed an Answer and lodged the state court record. ECF No. 37-38. On June 25, 2024, Petitioner filed a Traverse, ECF No. 40, and separately filed a motion for summary judgment, seeking immediate release. ECF No. 41. On February 28, 2025, the Court denied the summary judgment motion, reasoning it was "not the proper mechanism to address the relief Petitioner seeks" and stating the Court "will address the merits of the Amended Petition, which lists 120 grounds for relief within more than 2000 pages of argument and exhibits, in due course." ECF No. 44 at 2.

## II.    STANDARD OF REVIEW

A federal habeas petitioner cannot obtain federal habeas relief on a claim that the state court adjudicated on the merits unless the petitioner is first able to show that the state court adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97-98 (2011), quoting 28 U.S.C. § 2254(d)(1)-(2). Additionally, even in a situation where section 2254(d) is satisfied or does not apply, a reviewing habeas court must still determine whether the petitioner has established a federal constitutional violation. *See Fry v. Pliler*, 551 U.S. 112, 119 (2007) (§ 2254(d) "sets forth a precondition to the grant of habeas relief . . . , not an entitlement to it."); *see also Frantz v. Hazey*, 533 F.3d 724, 735-36 (9th Cir. 2008) (en banc).

A decision is "contrary to" clearly established law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.*; *Bruce v. Terhune*, 376 F.3d 950, 953 (9th Cir. 2004). With respect to section 2254(d), "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable– a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007), citing *Williams*, 529 U.S. at 410. "State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" *Rice v. Collins*, 546 U.S. 333, 338-39 (2006), quoting 28 U.S.C. § 2254(e)(1).

Where a state court fails to reach the merits of a claim or when it is unclear what standard of review applies, de novo review of that claim, that is review without AEDPA deference, is appropriate. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) ("[W]e hold that when it is clear that a state court has not reached the merits of a properly raised issue, we must review it de novo."); *see also Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can, however, deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review, see § 2254(a).") Even under a de novo review, a habeas court's consideration of a petitioner's claims can be further informed by any discussion or analysis offered by the state court. *See Frantz*, 533 F.3d at 738 (holding that even under de novo review, reasoning of state court remains relevant to reviewing court's consideration of whether a constitutional violation occurred).

"Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law." *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), overruled on other grounds by *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *see also Richter*, 562 U.S. at 98 ("Where a state court decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Richter*, 562 U.S. at 102.

In a federal habeas action, "[t]he petitioner carries the burden of proof." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam). Still, "[p]risoner pro se pleadings are given the benefit of liberal construction." *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010), citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

///
///
///
///
///
///
///
///

### III.   PETITIONER'S CLAIMS[2]

As noted above, Petitioner raises 120 enumerated claims for relief in the FAP, ECF Nos. 23 through 23-6, which the Court has grouped by the type of claim presented.

**A. Claims Alleging Disproportionate Sentence and Subsequent Changes in State Law**

Petitioner alleges the trial court imposed a disproportionate sentence, including illegal enhancements and the improper "dual use" of the multiple victim aggravator to increase the term for each count (Claim 1), and asserts the passage of various new state laws since his judgment of conviction was finalized, including Assembly Bills 256 and 1540 and Senate Bills 507 and 1209, entitle him to the appointment of counsel to pursue a hearing, resentencing and other relief (Claims 117-120).

**B. Claims Alleging Judicial Error and Bias**

Petitioner alleges the trial judge made numerous errors during his trial and sentencing proceedings, including denying him his right to self-representation (Claim 3), failing to inform the jury of the sentencing import of its decision (Claim 4), failing to acknowledge on the record he was provided with and read the pre-sentence report (Claim 7), allowing the California Rape Shield law into trial (Claim 18), failing to have a speedy trial (Claim 22), failing to weigh mitigating factors against aggravating factors at sentencing (Claim 25), forcing a lawyer upon him (Claim 26), allowing a DNA reference

---

[2] Reviewing the FAP (ECF No. 23 through 23-6) in conjunction with his state superior court habeas petition (ECF No. 38-50), it appears Petitioner appended his prior arguments to the FAP with respect to Claims 1-50, but did not do so for the remainder of his claims. Even so, throughout the FAP, he continually references the state superior court decision denying his claims and his FAP arguments appear to supplement those previously raised. *See generally* ECF No. 23. Petitioner also previously attached the superior court decision as the first exhibit to his initial federal petition. *See* ECF Nos. 1, 1-2. Given this, coupled with the duty to liberally construe pro se pleadings, *see Porter*, 620 F.3d at 958, the Court construes each of Petitioner's claims in the FAP to encompass the arguments previously raised in Petitioner's state superior court habeas petition.

sample profile into evidence (Claim 30), denying the presence of Petitioner and defense counsel at a critical stage of the proceedings (Claim 38), allowing biased jurors to be seated on his trial jury (Claim 39), allowing presumption of innocence violations (Claim 42), allowing false testimony at trial (Claim 84), denying motions critical to the defense which were not heard within 15 days of filing (Claim 85), and allowing errors in consolidation of cases (Claim 104), and contends a different superior court judge abused his discretion in admitting the reference sample DNA profile at the preliminary hearing (Claim 105). He also asserts yet another different superior court judge displayed bias and hostility towards him during an earlier hearing (Claim 10) and contends the trial judge sought his conviction and sentence based on his race, ethnicity or national origin (Claim 11).

### C. Claims Alleging Prosecutorial and/or Law Enforcement Errors and/or Misconduct

Petitioner alleges the prosecution committed numerous errors and/or misconduct, including violating his speedy trial rights (Claim 21), in communications with defense counsel (Claim 23), consolidating the wrong case within the original one (Claim 35), failing to inform the defense about dismissing several charged counts (Claim 36), violating his presumption of innocence (Claim 37), violating his Confrontation Clause rights (Claim 54), prejudicing him by pretrial public exposure of case information (Claim 58), failing to disclose and turn over all inculpative and exculpatory evidence to the defense (Claim 59), failing to prove all elements of each charged count (Claim 60), admitting into trial "the use of prosecutor's fallacy," calculations for DNA results and probability statements (Claim 61), providing speculation rather than proof beyond a reasonable doubt (Claim 62), conducting improper burden shifting (Claim 65), failing to arraign him within 48 hours (Claim 70), and violating his federal Constitutional rights during the testimony of Detective Kindred, "trial testimonies" and two preliminary hearings (Claims 114-116).

Petitioner also alleges prejudicial errors in prosecution witness testimony and/or prior statements, including alleging Wiley testified against him with prejudice and bias and provided exculpatory statements during trial testimony (Claims 51 and 63), Angelica and

Angel De La Cruz provided inconsistent statements prior to their trial testimony, testified falsely and committed perjury (Claims 53 and 64, respectively), expert witness Urquiza gave opinionated and biased statistical testimony rather than factual testimony (Claim 66), the prosecution allowed a probation officer to incorrectly state the outcome of his prior conviction and reported his presentence interview comments at sentencing (Claim 67), the prosecution allowed character testimony from alleged victims and witnesses at trial and at preliminary hearings (Claim 68), the prosecution allowed false trial testimony (Claim 69), Jane Doe 1[3] provided exculpatory prior statements, exculpatory trial testimony and inconsistent statements prior to trial testimony (Claims 96-97, 99), Jane Doe 2 provided exculpatory trial testimony and inconsistent statements prior to trial testimony (Claims 98, 100), forensic expert Kaeser testified illegally and invalidly (Claim 108), and Dr. Kabacka provided exculpatory trial testimony (Claim 109).

Petitioner alleges errors and/or misconduct by various law enforcement agencies and/personnel, including alleging San Diego Sheriff's Department jail personnel failed to preserve and lost material evidence and caused property damage (Claim 16), a police officer committed misconduct when responding to a 911 call (Claim 24), police conducted an illegal search and seizure in taking his DNA swab (Claim 27), police failed to show sufficient chain of custody for DNA swabs taken from a baby (Claim 28) and from numerous others (Claim 29), the United States Marshals made a false and illegal arrest of Petitioner (Claim 31), the police had no probable cause to arrest, detain, and/or hold him in custody beyond 48-72 hours without an arrest warrant (Claim 34), a police detective conducted an improper and faulty photo lineup procedure and failed to properly identify him (Claim 41), the Sheriff's Department delayed in assisting him with filing a police report which resulted in the failure to preserve exculpatory evidence (Claim 45), a forensic

---

[3] The Court employs the same pseudonyms as the state appellate court did when referring to the two juvenile victims in this case- "Jane Doe 1" was impregnated and later gave birth and "Jane Doe 2" is her twin sister. *See* ECF No. 38-44 at 2-4.

expert witness failed to show sufficient chain of custody for DNA swabs tested (Claim 46), the Sheriff's Department prejudiced him through pretrial and trial publicity (Claim 52), a police detective committed misconduct during prosecution witness interviews (Claim 106), and detectives conducted a sloppy and tunnel vision investigation (Claim 107). Finally, Petitioner alleges two violations of *Miranda v. Arizona*, 384 U.S. 436 (1966), asserting he was questioned by the police after he invoked his right to counsel (Claim 14) and the Marshals failed to provide him with a *Miranda* warning before questioning (Claim 32).

### D. Claims Alleging Ineffective Assistance of Trial Counsel

Petitioner alleges numerous errors resulting in prejudicially deficient performance by both Public Defender Marshall-Petry, who represented him during pretrial proceedings (apart from when he proceeded pro per), as well as by Public Defender Suwczinsky, who ultimately represented him at trial and during sentencing.

Petitioner contends Marshall-Petry failed to: investigate and uncover mitigating factors "for litigation" (Claim 13); thoroughly advise him and move for a speedy trial (Claim 20); consult with and hire experts (Claim 87); file numerous pretrial motions (Claim 88); object to the victim's failure to "thoroughly identify" him (Claim 89); "argue thoroughly" that someone else committed the crime (Claim 90); subpoena defense and character witnesses (Claim 91); understand the law (Claim 92); communicate the "deal offer" discussed with the prosecution (Claim 93); argue suggestibility and coercion thoroughly and effectively in court hearings (Claim 94), and alleges counsel made several false and contradictive statements during court hearings (Claim 112).

Petitioner contends trial counsel Suwczinsky failed to: inform and accompany him to the presentencing interview (Claim 6); obtain and review the presentencing report with him prior to sentencing (Claim 8); investigate and uncover mitigating factors for sentencing (Claim 12); file and argue motions concerning the loss of material evidence by the Sheriff's Department at the jail (Claim 17); object to the trial court's use of the California Rape Shield law (Claim 33); move for a mistrial when a prosecution witness expressed their opinion about his guilt (Claim 40); prepare and utilize his requested defense (Claim 43);

file a motion to suppress DNA evidence (Claim 50); prepare and present a coercion, duress or suggestibility defense (Claim 71); challenge his identification (Claim 73); go to the crime scene (Claim 74); consult with and hire experts, request copies of studies and conduct relevant research (Claim 75); examine and recall prosecution witnesses as he requested, in violation of the Confrontation Clause (Claim 76); contact, subpoena and secure witnesses for trial (Claim 77); bar the seating of "obviously biased" jurors and object to the prosecution's challenges (Claim 78); perform effectively in closing argument and committed "gross error" (Claim 79); subpoena expert witnesses for the defense as he requested (Claim 80); adequately investigate the facts and law concerning the potential admission of the victims' prior statements as to the perpetrator (Claim 81); object to the prosecution's closing argument (Claim 82); and file numerous pretrial motions (Claim 83).

### E. Claims Alleging Trial Counsel Conflict of Interest or Misconduct

Petitioner contends Marshall-Petry "collaborated with" the prosecution against him (Claim 15), there was a breakdown in attorney client communication with this counsel (Claim 56), and counsel represented "conflicting interests and/or divided loyalties" impacting performance (Claim 86). Petitioner also contends the Office of Assigned Counsel interfered with his right to represent himself while he was pro per (Claim 44). Petitioner contends he also had a breakdown in attorney client communication with his trial defense counsel Suwczinsky (Claim 57) and counsel represented conflicting interests and/or divided loyalties impacting performance (Claim 72).

### F. Claims Alleging Ineffective Assistance of Appellate Counsel

Petitioner alleges appellate counsel rendered ineffective assistance in failing to: file a petition for a writ of certiorari with the United States Supreme Court (Claim 2); raise and argue trial counsel's asserted ineffectiveness in failing to advise and accompany him to the presentence interview, object to the interview, review the report and prepare mitigation for sentencing (Claim 5); effectively argue trial counsel's ineffectiveness at sentencing (Claim 9); argue the speedy trial violation (Claim 19); follow the "*Anders* mandate" and refused to proceed on appeal (Claim 47); argue trial counsel failed to move the court for mistrial

(Claim 48), filing a no-merit (*Anders*) brief on his direct appeal (Claim 101); argue a Confrontation Clause violation (Claim 102); and argue trial counsel was silent with no objection at the reading of the verdict and imposition of sentence imposed (Claim 103). He also asserts there was a breakdown in communication with appellate counsel (Claim 49).

### G. Claims Concerning Conditions of Confinement

Petitioner presents several claims concerning his conditions of confinement, including alleging the Sheriff's Department failed to protect the protective custody defendants, which prejudiced his ability to prepare a better defense (Claim 55), he has been placed in extreme health risk and life-threatening situations while trying to prepare appeal documents and habeas corpus petitions from November 14, 2019, to the present (Claim 95), the Sheriff's Department committed misconduct and interfered with his pro per representation (Claim 110), a deputy sheriff twice groped him during a body pat down before escorting him to court while he was pro per (Claim 111), and his current sentence and good conduct credits earned are no longer in compliance with current law (Claim 113).

## IV.    DISCUSSION

Again, Respondent maintains habeas relief is unavailable because (1) many of Petitioner's federal habeas claims are procedurally defaulted (Claims 1-4, 7, 10-11, 14, 16, 18, 20, 22, 24-32, 34-39, 41-42, 44-46, 51-55, 58-70, 72-86, 95-99, 101, 104-111, 113-116) and he fails to show cause and prejudice or any other reason to excuse default, (2) Claim 27 is barred by *Stone v. Powell*, 428 U.S. 465 (1976), (3) Claims 95, 111, and 113 are barred because they challenge Petitioner's conditions of confinement and are thus not cognizable on federal habeas corpus, (4) Petitioner fails to state a case for relief on any claim except possibly on Claim 1, which is defaulted, (5) Petitioner cannot in any event satisfy section 2254 with respect to any of the claims which the state court rejected on the merits (Claims 1-113 and 117-120) and (6) all of his claims lack merit and any potential error was harmless. ECF No. 37 at 4-5. The Court will separately address procedural default first and will discuss the remainder of these procedural and other arguments as to the availability of habeas relief together with the merits of Petitioner's claims.

1

## A. Procedural Default

2      "A state court's invocation of a procedural rule to deny a prisoner's claims precludes

3   federal review of the claims if, among other requisites, the state procedural rule is a

4   nonfederal ground adequate to support the judgment and the rule is firmly established and

5   consistently followed." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012) (citations omitted). "In all

6   cases in which a state prisoner has defaulted his federal claims in state court pursuant to an

7   independent and adequate state procedural rule, federal habeas review of the claims is

8   barred unless the prisoner can demonstrate cause for the default and actual prejudice as a

9   result of the alleged violation of federal law, or demonstrate that failure to consider the

10  claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S.

11  722, 750 (1991).

12      Respondent contends 88 of Petitioner's 120 enumerated claims are procedurally

13  defaulted, asserting Claim 1 is "forfeited" due to trial counsel's failure to object and Claims

14  2-4, 7, 10-11, 14, 16, 18, 20, 22, 24-32, 34-39, 41-42, 44-46, 51-55, 58-70, 72-86, 95-99,

15  101, 104-111, 113-116 are barred pursuant to "a variety of bars that favor trial and direct

16  appeal over collateral review," including *In re Dixon*, 41 Cal. 2d 756, 759 (1953).[4] ECF

17  No. 37-1 at 18-19. Petitioner maintains he can demonstrate cause and prejudice to excuse

18  any procedural bars with respect to each of his 120 enumerated claims, contending

19  appellate counsel was ineffective in failing to raise Claims 2-120 on direct appeal, as

20  Petitioner requested, and appears to contend the forfeiture of Claim 1 is attributable to the

21  ineffective assistance of his counsel at sentencing. ECF No. 40 at 5-6.

22

23

24  _____

25  [4] While Respondent contends each claim "that raises an allegation concerning trial error or
    evidence" is defaulted under *Dixon*, he lists several claims alleging ineffective assistance
26  of counsel or counsel's conflict of interest, namely Claims 72-83, 86, and 101, even though
    Respondent appears to otherwise acknowledge those claims are *not* barred. *See* ECF No.
27  37-1 at 22. In any event, for the reasons discussed later in this section, the Court will
    address Petitioner's claims on the merits despite the asserted procedural bars.
28

After recounting the state law requirements to plead and prove claims on habeas review, *see* ECF No. 38-54 at 3, the state appellate court first concluded that based on its review of both the petition and the record on direct appeal, Petitioner "fails to state a prima facie case for relief," *id.*, but went on to detail further procedural deficiencies in "most" or the "vast majority" of Petitioner's claims, in relevant part as follows:

> The vast majority of Bryson's claims, including his claims regarding conditions of confinement, are entirely conclusory, speculative, and unsupported by any evidence in the record on appeal or in the documents attached to his petition. Similarly, most of the claims could have been raised on direct appeal, but were not. (*In re Reno* (2012) 55 Cal.4th 428, 501; *In re Horowitz* (1949) 33 Cal.2d 534, 546-547.) Moreover, his claims that the evidence was insufficient to support his conviction are not cognizable in a habeas corpus proceeding. (*In re Reno, supra,* at p. 505). Similarly, his claims generally alleging the court erred in allowing certain testimony or that the prosecution erred in presenting that testimony are not cognizable at this stage because the writ of habeas corpus does "not lie to review questions concerning the admissibility of evidence." (*In re Harris* (1993) 5 Cal.4th 813, 826; accord, *In re Lindley* (1947) 29 Cal.2d 709, 723.) A petition for habeas corpus is also not a valid method to raise search and seizure claims under the Fourth Amendment. (*In re Lessard* (1965) 62 Cal.2d 497, 503.) Bryson's failure to overcome these "procedural obstacles to consideration of the claims raised in a habeas corpus petition justifies summary denial without the court's consideration of the merits." (*In re Reno, supra,* at p. 511.)

*Id.* at 4.

Respondent specifically asserts the bar the state appellate court applied to Claim 1, when it held Petitioner had forfeited that ground for relief due to trial counsel's failure to object "is an adequate and independent bar to relief." ECF No. 37-1 at 18, citing *Fairbank v. Ayers*, 650 F.3d 1243, 1256-57 (9th Cir. 2011), *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004). However, Respondent does not appear to make any similarly specific assertion as to the adequacy and/or independence of each of the "procedural obstacles" cited with respect to the other 87 claims at issue here. Instead, Respondent generally contends "[w]here a California court's denial of a claim rests on an independent and adequate bar—such as a forfeiture or the habeas corpus *Dixon* rule—a federal court

generally may not consider habeas corpus relief for that claim," referencing California's timeliness rule (which was not cited in this case), *Dixon* rule (a version of which was cited in this case, barring claims that could have but were not raised on direct appeal), and the contemporaneous objection rule (which was cited with respect to Claim 1). *Id.* at 17-18. Given Respondent does not specifically contend, much less attempt to demonstrate, *each* of the bars relied upon by the state court are adequate and independent, he has not met his burden to properly raise and plead this affirmative defense in a manner sufficient to bar consideration of Petitioner's claims on the merits, save for Claim 1.

A prospective procedural default analysis is also further complicated by the state appellate court's failure to specifically articulate which claim or claims were subject to which procedural bar and/or bars. *See* ECF No. 38-54 at 4. This, in combination with Respondent's failure to plead the adequacy and independence of each bar, presents a significant obstacle to any potential finding procedural default prevents federal habeas review. *See Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir. 2003) ("'By failing to specify which claims were barred for which reasons, the [state court] did not clearly and expressly rely on an independent and adequate state ground.'"), quoting *Valerio v. Crawford*, 306 F.3d 742, 774-75 (9th Cir. 2002) (en banc) (internal citation and quotation omitted); *see also Washington v. Cambra*, 208 F.3d 832, 834 (9th Cir. 2000) (holding that a state court order that invokes multiple procedural bars without indicating which bar applies to which claim cannot preclude federal habeas review unless each bar is itself adequate and independent). Here again, Respondent generally asserts "the California rules that bar Bryson's claims work together to promote the early presentation of claims at trial (as opposed to later during an appeal or on habeas corpus), and this distinguishes circuit authority that has refused to apply inconsistent bars to multiple claims." ECF No. 37-1 at 20, citing *Valerio*, 306 F.3d at 774-75. These general arguments fail to satisfy Respondent's burden to plead the existence of an adequate and independent bar to federal review as to all but one of the 88 claims at issue here. Accordingly, the Court is not precluded from

1    considering the merits of Claims 2-4, 7, 10-11, 14, 16, 18, 21-32, 34-39, 41-42, 44-46, 51-

2    55, 58-70, 72-86, 95-99, 101, 104-111, and 113-116 based on procedural default.

3        Even to the extent Respondent had properly asserted the existence of an adequate

4    and independent procedural bar to each of these 88 claims, it appears reaching the merits

5    of each claim (including Claim 1) remains the more efficient and appropriate course of

6    action in this case. This is because Petitioner maintains he can demonstrate cause and

7    prejudice to excuse each of his assertedly defaulted claims, and any such cause and

8    prejudice analysis would necessarily require more than a minimal examination of the

9    merits of each claim at issue to determine whether Petitioner has shown prejudice sufficient

10   to excuse the bar. Thus, rather than engaging in what would essentially be a merits analysis

11   to decide only the procedural default issue, the Ninth Circuit has approved a reviewing

12   court's decision to simply proceed to the merits when faced with a potentially protracted

13   and complicated procedural bar matter. *See e.g. Franklin v. Johnson*, 290 F.3d 1223, 1232

14   (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits

15   issues presented by the appeal, so it may well make sense in some instances to proceed to

16   the merits if the result will be the same."), citing *Lambrix v. Singletary*, 520 U.S. 518, 525

17   (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be

18   resolved first; only that it ordinarily should be.") Here, because an analysis of cause and

19   prejudice as to even Claim 1 alone would almost certainly require detailed discussion of

20   its merits given Petitioner contends the forfeiture of Claim 1 is attributable to the

21   ineffective assistance of his counsel at sentencing, *see* ECF No. 40 at 5-6, proceeding

22   directly to the merits appears the more efficient path to resolution of that claim as well.

23   Thus, the Court will elect to address the merits of these claims, particularly given the claims

24   plainly do not warrant habeas relief for the reasons discussed below.

25       **B. Merits**

26       Petitioner raised Claims 1-120 in a habeas petition filed in the California Supreme

27   Court, which that court summarily denied without a statement of reasoning or citation to

28   authority. *See* ECF Nos. 38-55, 38-60. Petitioner previously presented Claims 1-116 in a

1     habeas petition filed in the California Court of Appeal, which that court denied in a
2 reasoned opinion. *See* ECF Nos. 38-53, 38-54.

3         The Supreme Court has repeatedly stated a presumption exists "[w]here there has
4 been one reasoned state judgment rejecting a federal claim, later unexplained orders
5 upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v.*
6 *Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Wilson v. Sellers*, 584 U.S. 122, 128
7 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.")
8 Given the lack of any argument or grounds in the record to rebut this presumption, the
9 Court will "look through" the state supreme court's silent denial to the reasoned opinion
10 issued by the appellate court as to Claims 1-116. *See Ylst*, 501 U.S. at 804 ("The essence
11 of unexplained orders is that they say nothing. We think that a presumption which gives
12 them *no* effect- which simply 'looks through' them to the last reasoned decision- most
13 nearly reflects the role they are ordinarily intended to play.") (footnote omitted).

14         With respect to the claims addressed by the state appellate court (Claims 1-116), that
15 court generally indicated Petitioner failed to state a prima facie case for relief as to any of
16 his claims, which would ordinarily constitute a denial on the merits. *See* ECF No. 38-54 at
17 3 ("Based on our review of the petition and the record on direct appeal, we conclude that
18 Bryson fails to state a prima facie case for relief."); *see e.g. Phelps v. Alameida*, 569 F.3d
19 1120, 1125 n. 8 (9th Cir. 2009) ("[I]f the [California] Supreme Court believes the petition
20 does not state a *prima facie* case, then it will issue a 'summary denial,' . . . which is a denial
21 on the merits of the claim."); *see also Richter*, 562 U.S. at 99-100 ("When a federal claim
22 has been presented to a state court and the state court has denied relief, it may be presumed
23 that the state court adjudicated the claim on the merits in the absence of any indication or
24 state-law procedural principles to the contrary. . . The presumption may be overcome when
25 there is reason to think some other explanation for the state court's decision is more
26 likely.") Yet, with respect to "most" or "[t]he vast majority" of Petitioner's claims, the state
27 appellate court went on to detail the numerous procedural deficiencies in those claims
28 (discussed above with respect to procedural default) and specifically indicated that

Petitioner's "failure to overcome these 'procedural obstacles to consideration of the claims raised in a habeas corpus petition justifies summary denial *without the court's consideration of the merits*.'" ECF No. 38-54 at 4 (emphasis added). In contrast, the state appellate court specifically indicated Petitioner's claims of ineffective assistance of trial and appellate counsel lacked merit. *See id.* at 5 ("Even if we assume that Bryson's attorneys' performance was deficient as he alleges, he fails to demonstrate that he was prejudiced by the alleged errors. . . . None of his claims, either considered individually or cumulatively, suggest that he was prejudiced by any alleged deficient performance in light of the clear evidence of guilt introduced at trial.").

While it is apparent the state court rejected Petitioner's ineffective assistance of counsel claims on the merits and AEDPA deference clearly applies, it is not clear whether the state court also reached the merits of the remainder of his claims, given the state court both indicated he failed to state a prima facie case for relief *and* stated the "procedural obstacles" presented by those claims "justifie[d] summary denial without the court's consideration of the merits." *Id.* at 4 (internal quotation omitted). As such, in an abundance of caution and given the lack of clarity as to whether those claims were denied on the merits, the Court will conduct a de novo review of the non-ineffective assistance of counsel claims, that is, Claims 1-4, 7, 10-11, 14, 16, 18, 21-32, 34-39, 41-42, 44-46, 51-55, 58-70, 84-85, 95-100, 104-111, and 113-116. *See Pirtle*, 313 F.3d at 1167 ("[W]e hold that when it is clear that a state court has not reached the merits of a properly raised issue, we must review it de novo."); *see also Berghuis*, 560 U.S. at 390 ("Courts can, however, deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review, see § 2254(a).") Even under a de novo review, as noted above, the reasoning provided by the superior court in its prior adjudication of Petitioner's claims remains relevant to a reviewing court's determination of whether a constitutional violation occurred and informs this Court's analysis. *Frantz*, 533 F.3d at 738 ("[W]hen the constitutional right itself is tied to the reasons for a trial

court's decision, . . . even on de novo review we must focus on the trial court's reasoning to determine whether a constitutional violation occurred.").

Finally, with respect to Claims 117-120, because those claims were only raised in the California Supreme Court and were summarily denied, the Court will conduct an independent review of the record as to each of those four claims in order "to determine whether the state court clearly erred in its application of controlling federal law." *Delgado*, 223 F.3d at 982; *see also Richter*, 562 U.S. at 98 ("Where a state court decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").

### 1. Claims Alleging Disproportionate Sentence and Re: Changes in State Law

Petitioner contends the sentence imposed in his case violates his federal Constitutional rights because the trial judge made numerous errors and because his sentence is disproportionate (Claim 1) and contends several state laws passed since his sentencing require appointment of counsel and a resentencing hearing (Claims 117-120).

Again, the Court will conduct a de novo review of Claim 1, *see Pirtle*, 313 F.3d at 1167; *Berghuis*, 560 U.S. at 390, informed by the state court's analysis and will conduct an independent review of the record as to Clams 117-120 in order "to determine whether the state court clearly erred in its application of controlling federal law." *Delgado*, 223 F.3d at 982; *see also Richter*, 562 U.S. at 98.

### a. Claim 1

Petitioner alleges the trial court imposed a disproportionate sentence in his case, including imposing numerous "illegal enhancement[s]" and an improper "dual" use of the multiple victim aggravator to increase the term for each count. ECF No. 23 at 3-4.[5]

---

[5] Petitioner also references the purported error in consolidating the cases, the victims' inconsistent statements, and the lack of physical evidence as to the charges concerning Jane Doe 2, *see id.*, but does not explain the relevance of these contentions to the proportionality

21

First, to the extent Petitioner contends the trial court erred under state law in its sentencing decisions, including imposing enhancements, imposing a sentence above the lower, mid and upper terms, and the "dual use" of the multiple victim aggravator to increase his sentence, any alleged state law error is not cognizable on federal habeas corpus. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *see also Rhoades v. Henry*, 611 F.3d 1133, 1142 (9th Cir. 2010) ("[V]iolations of state law are not cognizable on federal habeas review.") Indeed, the "[Supreme Court] ha[s] repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), citing *McGuire*, 502 U.S. at 67-68; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). On direct appeal, the California Court of Appeal specifically rejected Petitioner's argument that the trial court's sentencing decisions were improper and an abuse of discretion, specifically rejecting his contention that the trial court's reliance on the multiple victims finding to both increase his sentence and run the terms consecutively violated the "dual use" rule. *See* ECF No. 38-44 at 5-8 (finding argument both forfeited for failure to object and reasoning "[e]ven if the defendant had preserved his dual use argument for appeal, the defendant's dual use argument is meritless because it rests on a misinterpretation of the trial record. . . Because there is no indication the court used the fact of multiple victims to run the terms consecutively, the defendant's dual use argument fails on the merits.") (footnote omitted). The Court is thus bound by the state court's application of state law.

Petitioner next contends the trial court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004) in rendering his sentence.

_____

of his sentence. In any event, these allegations are the subject of separate claims of error addressed elsewhere in this Order. *See e.g.* Claims 35-36, 96-100, 104, *infra*.

Specifically, Petitioner alleges "[t]he trial court violated *Blakely* by using circumstantial evidence to support an aggravating factor which was decided by the jury as true that there were multiple victims (two)." ECF No. 23 at 4. In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  Meanwhile, the *Blakely* Court clarified "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely*, 542 U.S. at 303-04. Thus, both cases stand for the proposition that a jury, and not a judge, must make factual findings which increase the potential penalty for a crime. Yet here, because Petitioner appears to explicitly concede the *jury* made the multiple victims finding which the trial court later used in sentencing, *see* ECF No. 23 at 4, he fails to state a violation of *Apprendi* or *Blakely*. *See also* ECF No. 38-23 at 25-26 (sentencing transcript reflecting conviction on each of the six counts under Cal. Penal Code § 288(a) included "a true finding of Penal Code Section 667.61(j)(2) that the defendant committed the offense against more than one victim."); ECF No. 38-22 at 104-14 (reporter's transcript of verdict reflecting jury found Petitioner committed offense against multiple victims within the meaning of Cal. Penal Code § 667(j)(2) for each of six counts of violations of Cal. Penal Code § 288(a)); ECF No. 38-1 at 200-05 (completed jury verdict forms).

Finally, Petitioner asserts his sentence of 153 years to life is "disproportionate" and "grossly out of proportion to other crimes," and despite being a first-time offender, he was not given probation or a minimum term. ECF No. 23 at 3-4. "The final clause [of the Eighth Amendment] prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S 277, 284 (1983). Yet, "[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring), quoting *Solem*, 463 U.S. at 288, 303. "'Generally, so long as the sentence imposed does

not exceed the statutory maximum, it will not be overturned on eighth amendment grounds.'" *Belgarde v. State of Montana*, 123 F.3d 1210, 1215 (9th Cir. 1997), quoting *United States v. McDoughtery*, 920 F.2d 569, 576 (9th Cir. 1990); *see also Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("'[A]fter *Harmelin*, only extreme sentences that are grossly disproportionate to the crime' violate the Eighth Amendment."), quoting *United States v. Bland*, 961 F.2d 123, 129 (9th Cir. 1992).

The sentence imposed here, while severe, "does not exceed the statutory maximum." *Belgarde*, 123 F.3d at 1215. Petitioner was convicted of six counts of committing a lewd act upon a child under the age of 14 in violation of Cal. Penal Code § 288(a), and the jury found the offenses were committed against multiple victims pursuant to Cal. Penal Code § 667.61(e)(4) and (j)(2), and found Petitioner inflicted great bodily injury with respect to one of the counts within the meaning of Cal. Penal Code § 12022.7(a), for which he was sentenced to six consecutive terms of 25 years to life plus 3 years for the great bodily injury enhancement, for an aggregate term of 153 years to life. ECF No. 38-2 at 34-35; *see also* ECF No. 38-44 at 3. California law plainly provides for sentences of 25 years to life for such offenses. *See* Cal. Penal Code § 667.61(j)(2) ("A person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e), upon a victim who is a child under 14 years of age, shall be punished by imprisonment in the state prison for 25 years to life."); *see also* Cal. Penal Code § 667.61(c)(8) ("Lewd or lascivious act, in violation of subdivision (a) of Section 288"); Cal. Penal Code § 667.61(e)(4) ("The defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim.").

While Petitioner contends he was subjected to an "illegal enhancement," that is, the "dual use" of the multiple victim aggravating circumstance (ECF No. 23 at 3), he fails to argue, much less show, his sentence exceeds the statutory maximum or is disproportionate

to the crimes committed.[6] As the state court recounted, Petitioner had a sometime "romantic relationship with the sisters' aunt" who "became involved in the sisters' lives" after they moved in with their aunt. ECF No. 38-44 at 3-4. Petitioner "regularly played with them, picked them up from school, and babysat them while the other members of the family were at work," and "Jane Doe 1 referred to the defendant as her 'Tio.'" *Id.* at 4. As the state court also recounted: "During several of the defendant's visits, the defendant forced the sisters to have sexual intercourse with him. He forced Jane Doe 1 to have sexual intercourse with him on at least five occasions. According to Jane Doe 1, she tried to resist the defendant's advances but was unable to do so. During one of these forced sexual encounters, the defendant impregnated Jane Doe 1. She later gave birth to the defendant's child at the age of 13. The defendant forced Jane Doe 2 to have sexual intercourse with him on at least three occasions." *Id.*

Given the facts underlying Petitioner's judgment of conviction and because the sentence imposed appears clearly contemplated by the statute in the case of multiple offenses against more than one victim each under age 14 such as those at issue here, the Court cannot conclude this is one of the "rare" cases in which the term imposed is "grossly disproportionate" to the crimes. *Rummel*, 445 U.S. at 272; *Helm*, 463 U.S. at 288, 303. Nor

---

[6] Petitioner also submits several newspaper articles concerning other sex crimes cases. *See* ECF No. 23-26, Exh. K to FAP. To the extent he offers them in support of his disproportionality claim, the Court finds the articles of limited relevance. While several appear to concern sex crimes cases against children, at least one case concerns an adult victim in another jurisdiction, and most appear to have involved lone victims and/or single instances of abuse or assault. Even to the extent some of the cases are amenable to comparison because some involve similar crimes and/or occurred in the same jurisdiction, none involve a comparable "gravity of the offense" as the instant case, in which Petitioner was convicted of numerous acts against multiple victims. *See Helm*, 463 U.S. at 292 ("[A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.")

does Petitioner state a violation of *Blakely* or *Apprendi*, for the reasons discussed above. Thus, habeas relief is unavailable on Claim 1 even under a de novo review.

### b. Claims 117-120

Petitioner contends several aspects of his original sentencing proceeding and the term imposed by the trial court now require resentencing due to the subsequent passage of several California laws, including AB 256, SB 507, SB 1209, and AB 1540, each of which were not in effect before his judgment of conviction was finalized and now warrant a hearing/resentencing and appointment of counsel for that purpose. ECF Nos. 23-6 at 17-20. Specifically, he contests the imposition of purportedly racially disproportionate sentencing enhancements, his lengthy sentence and the trial court's failure to consider mitigation and military service in sentencing in light of recent laws. *Id.* at 17-19. Again, the Court must conduct an independent review of the record as to Clams 117-120 "to determine whether the state court clearly erred in its application of controlling federal law." *Delgado*, 223 F.3d at 982; *see also Richter*, 562 U.S. at 98.

Here, however, Petitioner fails to plead any federal Constitutional violation arising from the state court's denial of his claims and instead appears to have simply restated his state court claims contending that reconsideration, resentencing, and appointment of counsel is required under state law. Only with respect to Claim 120 does Petitioner reference federal law, and even then, only vaguely asserts he "has filed several claims eligible for resentencing under federal law and with the new passage of California AB1540." ECF No. 23-6 at 20. Thus, Petitioner fails to state a cognizable ground for federal habeas relief with respect to his resentencing claims, as state law error, standing alone, is not reviewable on federal habeas corpus. *See e.g. McGuire*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also Rhoades* 611 F.3d at 1142 ("[V]iolations of state law are not cognizable on federal habeas review.") Moreover, the Ninth Circuit has specifically held: "The retroactivity of a state change of law is a state question and the federal Constitution has no voice upon the subject." *Rue v. McCarthy*, 833 F.2d 140, 142 (9th Cir.

1987) (internal quotations and citations omitted). Given this authority, it is clearly outside the Court's purview to re-evaluate the correctness of the state court's implicit determination these new state laws either did not retroactively apply to Petitioner's case or even if they did, Petitioner did not qualify for resentencing relief under those new laws.

Even under an independent review of the record as to Clams 117-120, *see Delgado*, 223 F.3d at 982, there was no federal error. That is because these claims are solely premised on the state court's allegedly erroneous application of (or failure to apply) state law, and Petitioner does not actually articulate any federal error. Habeas relief is not available as to Claims 117-20.

### 2. Claims Alleging Trial Court Error/Bias

Petitioner alleges numerous errors by both the trial judge and the judge presiding over the preliminary hearing with respect to several pre-trial motions, jury selection and directions to the jury, his right to self-representation, his right to a speedy trial, admission of evidence and testimony, his and counsel's presence at a critical stage, and sentencing (Claims 3-4, 7, 18, 22, 25-26, 30, 38-39, 42, 84-85, 104-05), and contends both the trial judge and a different judge presiding over a prior hearing displayed bias or had improper motives (Claims 10-11). Again, the Court's review of these claims is de novo, informed by any relevant state court reasoning and analysis.

As relevant to several of the claims discussed below, "[w]hile a petitioner for federal habeas relief may not challenge the application of state evidentiary rules, he is entitled to relief if the evidentiary decision created an absence of fundamental fairness that 'fatally infected the trial.'" *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 897 (9th Cir. 1996), quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986); *see Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991) ("The issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point.") "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005). To merit habeas relief Petitioner must also demonstrate the claimed error had a

"substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

### a. Claims 3 and 26

Petitioner asserts the trial court denied him his right to self-representation (Claim 3) and "forced [a] lawyer" upon him (Claim 26). As to Claim 3, he states he "requested self-representation and time to prepare" on the day of trial but the trial court "refused" to indicate whether he would grant a continuance, without which he would have been "force[d] . . . into trial without his needed exculpatory evidence through additional motions and subpoenas," and the trial court therefore "forced" him "to accept the Public Defender Office over representing himself effectively." ECF No. 23 at 8. In Claim 26, he relatedly contends the trial court "forced" an ineffective lawyer on him by denying his requests for non-conflict counsel, co-counsel, hybrid counsel or non-Public Defender office counsel, noting his repeated *Marsden* hearings and denials in 2017, 2018 and 2019, up to and including the day trial began. ECF No. 23-2 at 7-8.

"The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta v. California*, 422 U.S. 806, 807 (1975). Moreover, a criminal defendant has the right to represent himself, as "[t]he Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Id.* at 819; *see also id.* at 832 ("The Framers selected in the Sixth Amendment a form of words that necessarily implies the right of self-representation.") The Ninth Circuit has additionally held "*Faretta* requires a defendant's request for self-representation be unequivocal, timely, and not for purposes of delay." *Stenson v. Lambert*, 504 F.3d 873, 882 (9th Cir. 2007), citing *United States v. Erskine*, 355 F.3d 1161, 1167 (9th Cir. 2004) and *United States v. Arlt*, 41 F.3d 516, 519 (9th Cir. 1994).

First, as to Claim 3, the contested request was far from the first time he moved to represent himself, as the trial court granted such requests on two prior occasions, and each

of those periods of self-representation had resulted in extensions of time and were thereafter followed by Petitioner again requesting the assistance of counsel. On August 27, 2019, the day of trial, after confirming his request for self-representation was a "conditional yes, not a complete yes," given Petitioner indicated he would not be ready to go forward with trial that day were his request granted, the trial court outlined relevant legal authority as to the timeliness of a request for self-representation and the potential for misuse for purposes of delay, then went on to recount the timeline in this case, as follows:

> In this case, the original complaint was filed approximately three years ago, on 8/5/16. That's when the felony complaint was filed. The Public Defender's Office was appointed to represent Mr. Bryson for the first time. On 8/16/16 defendant waived time for prelim. 8/27/16 defendant waived time for prelim. On 3/2/17 -- March 2nd, 2017, after a Lopez waiver signed in open court, Public Defender's office was relieved, Mr. Bryson went pro per for the first time. He waived time for trial. On April 17th, 2017 defendant's motion to reappoint counsel was granted. Public Defender's Office was reappointed for the second time. He waived time for trial.
>
> There was -- subsequently, on January 3rd, 2018, Mr. Bryson went pro per for the second time. He waived time for trial. Then on March 18th, 2019, the jury trial began. And on the second day of jury trial, on March 19th, 2019, before the jury was selected, Mr. Bryson claimed he was out of his depth and that he needed the Public Defender reappointed. Defendant's request was granted, and the Public Defender's Office was reappointed for the third time. He waived time for trial. Additional time was granted to the Public Defender to become prepared for trial.
>
> We are now here on August 27th, 2019. And on the day of trial, defendant indicates that he wants to represent himself, but that he's not prepared to go forward to trial. This appears to the Court to be a dilatory tactic on his part.

ECF No. 38-16 at 15-16. The trial court then overruled Petitioner's objection to the recitation and concluded: "So for all of these reasons, your motion to represent yourself is denied." *Id.* at 17.

While Petitioner presently concedes the trial court informed him he may represent himself if he was prepared to go to trial "on that date," he relatedly asserts the trial court

"was aware" of Petitioner's need to replace "lost" evidence which had been in the possession of the Sheriff, the need to subpoena character witnesses, the need for evidence purportedly discussed at *Marsden* hearings and defense counsel's failure to proceed with his choice of defense. ECF No. 23 at 7-8. However, as discussed elsewhere in this Order, the record reflects Petitioner had, while previously proceeding pro per, unsuccessfully brought and litigated motions concerning the purportedly lost evidence, *see e.g.* Claim 16, *infra*, and had previously inquired with the Office of Assigned Counsel about witness subpoenas, *see* Claim 44, *infra*. Petitioner does not explain why any such additional tasks or issues, such as his vague reference to the "evidence" discussed at *Marsden* hearings, was not completed prior to the day of trial, nor does he explain why he did not raise these matters at the time of his August 27, 2019, request. In any event, it is apparent the trial court was well-aware of the numerous motions Petitioner filed while representing himself, noting it had "a stack of about four, five inches from when you were representing yourself on all of your pro per motions" and stating: "The Court has reviewed all those motions when you were representing yourself. The Court has denied those motions. Ms. Suwczinsky is representing you, and we are going forward." ECF No. 38-16 at 20-21. Even were Petitioner somehow persuasively able to explain and justify the conditional (and thus equivocal) nature of his request, which does not appear likely on this record, he fails to address or justify the timing of his request nor the trial court's explicit finding his self-representation request on the day of trial was made for purposes of delay.

Petitioner's reliance on *Bribesca v. Galaza*, 215 F.3d 1015 (9th Cir. 2000), is unavailing because it is clearly distinguishable on the facts. In *Bribesca*, the Ninth Circuit found a *Faretta* violation where the trial court denied the defendant his right to represent himself based on the trial court's concerns about his ability to represent himself given his jail status and lack of law library access, and where the state court later affirmed the conviction based on his purportedly "obstructionist conduct" at a preliminary conference, which that record reflected occurred only *after* his request for self-representation was

denied. *Id.* at 1019-20. Petitioner does not make any attempt to explain how *Bribesca* is at all akin to his situation and the Court finds no persuasive similarities.

It is instead evident Petitioner's request, made on the day of trial, accompanied by his admission he would not be prepared to proceed to trial, and which followed two prior pre-trial periods during which he had proceeded pro per and later asked for reappointment of counsel, was not only untimely but also was, as the trial court reasonably concluded, "a dilatory tactic on his part." ECF No. 38-16 at 16. Given this record, Petitioner fails to show the trial court's denial of his August 29, 2017, motion to represent himself runs afoul of *Faretta. Stenson*, 504 F.3d at 882 ("*Faretta* requires a defendant's request for self-representation be unequivocal, timely, and not for purposes of delay.").

Turning to Claim 26, the Court first rejects Petitioner's assertion the trial court erred in violation of his federal Constitutional rights by denying his request for specific counsel of his choice, including non-conflict counsel, co-counsel, hybrid counsel or non-Public Defender office counsel. "The Sixth Amendment guarantees criminal defendants the right to effective representation, but indigent defendants do not have a constitutional right to be represented by their counsel of choice." *See Gonzalez v. Knowles*, 515 F.3d 1006, 1012 (9th Cir. 2008), citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). Additionally, both the Supreme Court and Ninth Circuit have held there is no federal Constitutional right to any such "hybrid" counsel. *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) ("*Faretta* does not require a trial judge to permit "hybrid" representation of the type Wiggins was actually allowed."); *Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir. 1983) ("If the right to co-counsel is not of constitutional dimension, we fail to see why the right to advisory counsel should be afforded higher status. The decision to allow a defendant to proceed with either form of hybrid representation is best left to the sound discretion of the trial judge.") (internal citations omitted). Thus, the Court finds no federal error in this regard.

Petitioner also asserts the trial court's ruling "forced" him to be represented by an ineffective attorney. *See* ECF No. 23-2 at 8. He argues he is entitled to "competent

appointed counsel but also effective counsel not just competent/ adequate," that his counsel did not produce "positive results" with respect to motions, subpoenas, and hiring experts, and he asserts had he hired "O.J. Simpson's attorneys," he "would be acquitted, meaning my counsel [was] very ineffective." *Id.* at 7. But the constitutional standard is not whether another specific counsel or set of counsel could have perhaps achieved a different result; it is whether counsel satisfied the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). For the reasons discussed elsewhere in this Order with respect to the numerous claims of ineffective assistance of trial counsel Petitioner raises in the FAP, he fails to demonstrate trial counsel was ineffective in violation of *Strickland*, *see infra*.

Petitioner's citation to out of circuit authority is also unpersuasive. His repeated citation to *Bribesca* again fails to assist his argument, *see* Claim 3, *supra*, while *Pazden v. Mauder*, 424 F.3d 303 (3rd. Cir 2005), is similarly unavailing and distinguishable. In *Pazden*, the Third Circuit concluded the petitioner in that case, who chose to represent himself at trial with standby counsel, "was not exercising his free will, but was instead compelled to proceed *pro se* only because his attorney had not been given enough time to familiarize herself with the relevant background of his case," noting: "This record is replete with statements and submissions by [Petitioner's] attorney explaining that she was unprepared to proceed to trial, as well as statements by [Petitioner] explaining the dilemma he was placed in by the late discovery and the inflexible trial date." *Id.* at 316 (footnote omitted). In contrast, Petitioner's defense counsel made no indication she was unprepared to proceed to trial. *See* ECF No. 38-16. Instead, it was *Petitioner* who, on the day of trial, asked for a continuance in the event the trial court were to grant his last-minute request to represent himself. *See id.* There is no record indication Petitioner faced a dilemma as posed in *Pazden*, nor any support for a conclusion he was "forced" into a choice of unprepared or ineffective counsel versus no counsel at all. Thus, even under a de novo review, habeas relief is not available on Claim 3 or 26.

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b. Claim 4

Petitioner asserts the trial court failed to inform and instruct the jurors on "the sentencing import of its decision," violating his federal right to instruction on nullification. ECF No. 23 at 9. He specifically contends the trial court "failed to instruct the jury that it has the power to refuse to convict even if the facts and law indicated guilt," the jury was not aware that he was "facing a 203 years to life if convicted on all eight counts of PC 288(a)," and he "ha[d] a right to be tried by a jury that knows the sentencing import of its decision." *Id.* at 10. He argues "[t]he Constitution requires that the trial courts apply 1780 jury practices in the court" and appears to largely reference materials published in 1649, 1769, and 1810 concerning "state trials" and/or "the laws of England." *Id.* He also appears to discuss this matter at length in the Traverse. *See* ECF No. 40 at 17-19.

As Respondent correctly notes, the Ninth Circuit has held there is no right to an instruction on jury nullification. *See* ECF 37-1 at 26; *see United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1991) (rejecting defendant's contention trial court erred or abused its discretion in refusing to give a proposed instruction on jury nullification, noting "[o]ur circuit's precedent indicates that the [defendants] are not entitled to jury nullification instructions."), citing *United States v. Simpson*, 460 F.2d 515, 519 (9th Cir. 1972); *see also Merced v. McGrath*, 426 F.3d 1076, 1079 (9th Cir. 2005) ("While jurors have the power to nullify a verdict, they have no right to do so."), citing *Standefer v. United States*, 447 U.S. 10, 22-23 (1980).

Given the clear circuit authority rejecting any such right, the Court finds no likelihood of federal error in failing to instruct the jury on nullification. As such, even under a de novo review, Petitioner does not merit federal habeas relief on Claim 4.

### c. Claims 7 and 25

In Claim 7, Petitioner contends the trial court failed to "acknowledge on the record" he was provided with and read the presentence report at least "10-35 days" prior to the sentencing hearing to allow sufficient time to read the report, consult with defense counsel and investigate mitigating factors to present at sentencing "in efforts toward a lesser

sentence and or probation." ECF No. 23 at 15-16. He also asserts the presentencing interview was instead conducted on the day of sentencing, October 7, 2019, in the absence of defense counsel and such errors violated his right to due process and a fair sentencing. *Id.* In Claim 25, he relatedly asserts the trial court failed to "weigh mitigating factors against aggravating factors" at his sentencing hearing. ECF No. 23-2 at 5-6. Specifically, Petitioner alleges the trial court (1) failed to articulate on the record numerous factors in mitigation, including but not limited to his lack of a criminal history, lack of parole or probation violations, lack of prior prison terms and positive psychological evaluations/assessments, (2) failed to correct the probation officer's improper introduction and use of a statement he made at the presentencing interview, and (3) used the same multiple victim aggravating factor to increase the sentence and run it consecutively. *Id.*

As to Petitioner's Claim 7 contention that alleged trial court errors relating to the probation officer's presentencing interview and report violated his rights, the record first fails to support several of his factual assertions.[7] For instance, the record reflects the probation officer's presentencing report was delivered to the trial court on September 30, 2019, *see* ECF No. 38-2 at 32, over a week prior to the October 7, 2019, sentencing, and the report reflects Petitioner's interview for that report was conducted on September 19, 2019, *see id.* at 21, which refutes his claim the interview was conducted on the day of sentencing. Petitioner's receipt of the report was also noted on the record at sentencing, albeit not by the trial court, as *defense counsel* stated: "I have given Mr. Bryson a copy of the probation reports." ECF No. 38-23 at 6. Petitioner does not explain the basis for his "10-35 days" assertion and his proffered citations to authority in the FAP are unaccompanied by any argument or explanation. *See* ECF No. 23 at 16. Nonetheless, upon review, two of the cited cases do not present sentencing issues such as those presented in Claim 7 and instead appear to primarily concern claims of ineffective assistance of counsel.

---

[7] As to Petitioner's contention trial counsel was not present at the presentencing interview, he does not explain how this could support a claim of *trial court* error.

See ECF No. 23 at 16, citing *Richter v. Hickman*, 578 F.3d 944 (9th Cir. 2009)[8] and *McKenna v. McDaniel*, 65 F.3d 1483 (9th Cir. 1995). Meanwhile, the other three cited cases each appear to concern the application of *federal* sentencing rules and procedures in federal court, none of which are applicable here given Petitioner is a *state* prisoner who was convicted and sentenced in a California state court. *See id.*, citing *United States v. Sustaita*, 1 F.3d 950, 953 (9th Cir. 1993) (discussing error arising from sentencing court's failure to determine on the record whether defendant had read sentencing report or discussed it with counsel "as required by Fed. R. Crim. P. 32(a)(1)(A)"), *United States v. Davenport*, 151 F.3d 1325, 1328-29 (11th Cir. 1998) (deciding whether 18 U.S.C. § 3552(d), which "unambiguously provides a criminal defendant with at least ten days in which to review his PSI before sentencing" applies in a case where federal defendant absconded prior to sentencing), and *United States v. Washington*, 619 F.3d 1252, 1262-63 (10th Cir. 2010) (finding counsel's failure to understand, advise and inform federal defendant prior to presentencing interview concerning impact of disclosures on application of federal sentencing guidelines, which could have resulted in a reduced sentence, constituted prejudicially deficient performance).

Given the cited legal authority fails to support Petitioner's contention and his factual allegations also fail to find record support, he does not show the trial court's actions or lack of action concerning the probation report constituted federal error. The Court finds no grounds which could provide for federal habeas relief on Claim 7.

Turning to Claim 25, Petitioner asserts the trial court erred in failing to weigh mitigation against aggravation at sentencing, the assertedly improper introduction of a comment he made at the presentencing interview, and the "dual" use of the multiple victims aggravating factor to increase his sentence.

---

[8] Additionally, the Ninth Circuit's decision in *Richter* was subsequently reversed and remanded by the Supreme Court. *See Harrington v. Richter*, 562 U.S. 86 (2011).

However, as Respondent aptly observes, *see* ECF No. 37-1 at 31-32, and as the Court previously discussed with respect to Claim 1, Petitioner was not sentenced solely pursuant to the terms outlined in Cal. Penal Code § 288(a), which provided for a prison term of three, six, or eight years, but was instead sentenced pursuant to a different statute requiring a specific term of imprisonment (25 years to life per count) because of the type of offenses committed and because those offenses were committed against more than one victim. *See* Cal. Penal Code § 667.61(j)(2) ("A person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e), upon a victim who is a child under 14 years of age, shall be punished by imprisonment in the state prison for 25 years to life.") Petitioner fails to demonstrate how mitigation evidence, or weighing, could have impacted his sentence, which was clearly outlined in the statute *without* any provision for a lower, middle or upper term. Thus, the Court finds no error, much less error cognizable on federal review, in the trial court's failure to conduct weighing in imposing sentence given the sentence would not have been different regardless of the outcome of any weighing. For the same reasons, the Court finds no federal error in introducing a comment Petitioner made at the presentencing interview, as again, he fails to show it had any impact on the sentence imposed. Finally, the alleged error arising from the "dual" use of the multiple victims aggravator is rejected for the reasons discussed in Claim 1. Thus, for the reasons discussed above, Petitioner does not merit federal habeas relief on Claim 7 or 25 even under a de novo review.

### d.  Claims 10 and 11

Petitioner contends a judge overseeing one of his *Marsden* hearings displayed bias and partiality (Claim 10) and the trial judge sought his conviction based on race, ethnicity or national origin (Claim 11).

"[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997), quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975). "[W]hen a defendant's right to have his case tried by an impartial judge is

compromised, there is structural error that requires automatic reversal." *Greenway v. Schriro,* 653 F.3d 790, 805 (9th Cir. 2011), citing *Tumey v. Ohio*, 273 U.S. 510, 535 (1927) and *Chapman v. California*, 386 U.S. 18, 23 (1967). Even so, a court must indulge "a presumption of honesty and integrity in those serving as adjudicators" in reviewing a claim of judicial bias. *See Withrow*, 421 U.S. at 47. Moreover, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion" and "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994), citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966).

In Claim 10, Petitioner alleges Judge Major-Lewis displayed "bias" and "hostility" towards Petitioner at a January 3, 2018, *Marsden* hearing, citing the judge's comments questioning or expressing doubts about his ability to understand and appreciate the gravity of self-representation and appearing to counsel Petitioner against representing himself. ECF No. 23 at 21-22. However, a review of the cited comments appears to reflect only that the judge sought to ascertain Petitioner's ability to understand the charges against him and the import of his decision to represent himself and forego the assistance of counsel, given the request was made in response to the judge's denial of his *Marsden* motion. *Id.*; *see also* ECF No. 23-55, Exh. LL to FAP (*Marsden* motion hearing transcript). Upon review, the contested comments appear to be the judge's own opinions voiced while hearing and ruling on Petitioner's motions and appear relevant to the matters at hand. *See Liteky*, 510 U.S. at 555. Even assuming without deciding that Petitioner could demonstrate the judge displayed bias, he fails to demonstrate prejudice because his case was tried by an entirely different judge. *See Greenway*, 653 F.3d at 805 (violation of right to trial by impartial judge is structural error requiring reversal). Even were Petitioner able to show error in the denial of his motions at that hearing, he subsequently *twice* successfully elected to represent himself and twice revoked his pro per status, ultimately electing to proceed to trial represented by

an altogether different counsel. *See* ECF No. 38-16 at 15-16 (trial court recounting timeline in case, including periods of pro per representation). Thus, based on this record, Petitioner fails to show that presiding judge's comments and decision in denying his January 2018 motion to replace counsel or represent himself (a motion that again was later granted) somehow resulted in prejudice which affected the outcome of his August 2019 trial proceedings tried by a different judge. *Brecht*, 507 U.S. at 637.

Turning to Claim 11, Petitioner contends the trial judge sought his conviction based on his race, ethnicity or national origin, but the contentions in support of this claim appear to be either based on contentions raised and rejected elsewhere in this Order, or fault the trial court for actions or attributes of other individuals or entities.[9] He appears to fault the trial court because the jury did not have "more peers of color" than one Black juror and included a white male juror who he states had been the victim of a sex crime, was unsure of his bias, but would "try not to." ECF No. 23 at 23. Petitioner fails to explain how the jury's composition is evidence of *judicial* bias, as he points to no comments or actions by the judge indicating any bias against Petitioner, much less any comments or actions by the judge either leading to the exclusion of prospective minority jurors or which resulted in seating a contested juror. Petitioner similarly faults the trial judge for the prosecution's asserted actions in more frequently seeking to prosecute and convict minorities such as Petitioner, *see* ECF No. 23-1 at 1, but again, fails to explain how such actions by the prosecutor, even if true, evidences bias on the part of the trial judge. Finally, Petitioner contends the trial judge imposed a "longer or more severe" sentence on him than on other

---

[9] Petitioner also cites to California Assembly Bill 256 (Racial Justice Act), *see* ECF No. 23 at 23, but the state superior court found the Act "was not in effect at the time Petitioner went to trial and it applies only prospectively." ECF No. 38-52 at 20. Even setting aside the matter of cognizability, *see e.g. McGuire*, 502 U.S. at 67-68, the Court is bound by the state court's determination that this state law did not retroactively apply to Petitioner's case. *See Rue*, 833 F.2d at 142 ("The retroactivity of a state change of law is a state question and the federal Constitution has no voice upon the subject.")

similarly situated criminal defendants and contends this is widespread in the jurisdiction where he was convicted and sentenced, and such disparities are impacted by the race, ethnicity or national origin of both the victims and defendants. ECF No. 23 at 23, ECF No. 23-1 at 1. But Petitioner offers no factual support for these assertions and conclusory allegations cannot support a claim for federal habeas relief. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

Given the complete lack of factual support for the allegations of bias by the trial judge, much less bias based on Petitioner's race, ethnicity or national origin, this claim must fail for lack of merit, particularly given the "presumption of honesty and integrity in those serving as adjudicators." *See Withrow*, 421 U.S. at 47.

### e. Claim 18

Petitioner contends the trial court violated his right to due process and a fair trial when it "allowed the California Rape Shield Law into trial" because it "prevented crucial exculpatory evidence" which would have supported his defense. ECF No. 23-1 at 14. Petitioner concedes the trial court followed "existing" state law, but contends such application was contrary to federal law and violated his right "to be tried on all the evidence" rather than on selective evidence that increased his likelihood of conviction. *Id.* Specifically, Petitioner argues this law prevented the introduction of Jane Doe 1's: (1) inconsistent statements about previous sexual encounters with "Josh" and about taking advantage of Petitioner while he was asleep and without his knowledge, (2) social media accounts "showing her sexual interests" and her contacts, (3) prior sexual education course, as well as (4) Jane Doe 2's prior inconsistent statements, (5) the lack of a rape kit on either victim, and (6) the lack of any recordings or transcripts of those prior statements. *Id.* at 15.

Yet, Petitioner does not appear to assert, much less attempt to demonstrate, the trial court erred in its application of the state Rape Shield law. He appears to acknowledge the trial court "followed the existing" state law and instead contests the existence and application of the law in his case, which "block[ed] evidence" he sought to introduce. *See*

1   *id.* at 14-15. However, the record reflects Petitioner was not prevented from introducing at

2   least a few of these subject matters, namely, Jane Does 1 and 2's prior statements. The

3   defense cross-examined Jane Doe 1 at length about her prior accounts of how she was

4   impregnated, including her prior statements concerning both "Josh" and her taking

5   advantage of Petitioner while he was drunk and sleeping, *see* ECF No. 38-19 at 66-74, and

6   similarly cross-examined Jane Doe 2 about her inconsistent prior statements. *See id.* at 91-

7   107. Given both victims were cross-examined about their prior statements, Petitioner fails

8   to persuasively explain what additional benefit could have been gained by potentially

9   introducing audio/video evidence as to those same statements. Nor does the record support

10  his claim the audio/video was excluded due to application of the Rape Shield law, as the

11  record appears to reflect *defense counsel* requested excluding all audio/video recordings

12  and witness statement transcripts. *See* ECF No. 38-1 at 109-110 (defense trial brief).

13          Next, as to Petitioner's assertion neither victim underwent a rape kit examination,

14  he fails to allege in this claim what evidence an exam would have shown or how such

15  evidence was potentially "exculpatory" such that he suffered prejudice from its exclusion.

16  To the extent he intended to again speculate a rape kit may have shown Jane Doe 2 was a

17  virgin, as he suggests elsewhere in the FAP, *see e.g.* ECF No. 23-5 at 7, any such

18  conclusory contentions, absent factual support, do not support a claim for habeas relief.

19  *Greenway*, 653 F.3d at 804 ("[Petitioner's] cursory and vague claim cannot support habeas

20  relief."); *see also James*, 24 F.3d at 26. Nor does he specify what a rape kit could have

21  shown as to Jane Doe 1, who "gave birth to [his] child at age 13." *See* ECF No. 38-44 at 4.

22          Turning to the victims' supposed social media activity and prior sex education

23  course, Petitioner fails to sufficiently explain how either subject was at all relevant or

24  potentially helpful to his defense, particularly in view of Respondent's apt observation that

25  consent was not an issue in this case because both victims were minors. *See* ECF No. 37-1

26  at 30, citing *People v. Giardino*, 82 Cal. App. 4th 454, 467 n.6 (2000); *see also* ECF No.

27  38-1 at 191 (jury instruction as to charges pursuant to Cal. Penal Code 288(a) included

28  instruction: "It is not a defense that the child may have consented to the act."); *contrast*

1   *with Anderson v. Morrow*, 371 F.3d 1027, 1030 (9th Cir. 2004) (upholding exclusion of

2   evidence which "characterized [the victim] as a wanton and promiscuous woman" under

3   Oregon's rape shield law, concluding that "[t]he court's evidentiary rulings properly

4   balanced [Petitioner's] right to inform the jury of [victim's] past sexual activity (evidence

5   that was relevant to his affirmative defense and to [victim's] ability to consent) against the

6   importance of protecting her from unnecessary invasions of privacy.").

7       Petitioner cites two out of circuit cases without explanation or argument, both of

8   which appear plainly distinguishable. *See* ECF No. 23-1 at 15, citing *Redmond v. Kingston*,

9   240 F.3d 590 (7th Cir. 2000) and *Smelcher v. Atty General of Alabama*, 947 F.2d 1472

10  (11th Cir. 1991). In *Redmond*, the Seventh Circuit found error in a statutory rape case where

11  the trial court refused to allow cross-examination concerning the victim's prior false, and

12  later recanted, accusation of forcible rape against a different individual, holding "the

13  court's ruling, though ostensibly based on the rape-shield statute, derives no support from

14  that statute. The statute protects complaining witnesses in rape cases (including statutory-

15  rape cases) from being questioned about their sexual conduct, but a false charge of rape is

16  not sexual conduct." *Redmond*, 240 F.3d at 592 (citations omitted). Here, Petitioner does

17  not proffer any potential evidence of the type discussed in *Redmond* and instead contests

18  the exclusion of evidence concerning the victims' sexual conduct and/or knowledge, which

19  the *Redmond* Court clearly found excludable under that state's rape-shield statute. *See id.*

20  Nor does *Smelcher* assist his argument, as that case involved defense counsel's failure to

21  object to the exclusion of rape shield type evidence of the victim's past sexual conduct

22  where the defendant and victim had prior sexual relations and the defense plan was to use

23  the evidence to advance a defense of consent; the Eleventh Circuit concluded "the facts are

24  sufficient for the court to conclude that counsel was ineffective for not objecting to the trial

25  judge's ruling prohibiting mention of the victim's past sexual conduct," and found

26  counsel's actions prejudicial, reasoning: "Smelcher was accused of raping a woman whom

27  he claimed had consented to intercourse. Obviously, any evidence of past sexual conduct

28

between the two parties would have been very important to the jury in ruling on the issue of consent." *Smelcher*, 947 F.2d at 1478. Again, consent is not an issue in this case.

Accordingly, this claim fails because Petitioner fails to meet his "heavy burden" to demonstrate the trial court's exclusion of the contested evidence violated his federal constitutional rights. *See e.g. Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005) ("A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision.") Given much of the cited evidence does not appear relevant or potentially helpful, and some was introduced (i.e. the substance of the victims' prior inconsistent statements), the Court finds no possibility the alleged error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Thus, even under a de novo review, habeas relief is not available on Claim 18.

### f.  Claim 22

Petitioner contends his federal Constitutional rights to due process and a fair trial were violated because the "trial court failed to order and conduct trial within or up to 70 days" and he had "[n]o speedy trial." ECF No. 23-1 at 22. Petitioner admits he waived his speedy trial rights pursuant to the advice of defense counsel but nonetheless points to several periods of delay between his August 2016 arrest and the eventual August 2019 commencement of trial, amounting to approximately twenty months, and appears to contend these periods of delay warrant a new trial or dismissal of the case. *Id.* at 22-23.

The Supreme Court has long affirmed that "a speedy trial is guaranteed the accused by the Sixth Amendment to the Constitution" and "the right to a speedy trial is 'fundamental' and is imposed by the Due Process Clause of the Fourteenth Amendment on the States." *Barker v. Wingo*, 407 U.S. 514, 515 (1972). The *Barker* Court also instructed reviewing courts to consider several factors, including: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant" in deciding whether there was a violation of a particular defendant's speedy trial rights. *Id.* at 530 (footnote omitted). In contrast to delays caused by the government, "delay caused by the defense weighs against the defendant: '(I)f delay is attributable to the defendant, then his

waiver may be given effect under standard waiver doctrine,'" and the Supreme Court has specifically stated "delays caused by defense counsel are properly attributed to the defendant, even where counsel is assigned." *Vermont v. Brillion*, 556 U.S. 81, 90-94 (2009), quoting *Barker*, 407 U.S. at 529.

These factors clearly weigh against Petitioner, as for one, he concedes and acknowledges he waived his right to a speedy trial "by defense counsel's advice." ECF No. 23-1 at 23. Nor does he claim, or attempt to establish, prejudice. Moreover, as the trial court recounted in ruling on his self-representation request made on the "day of trial," *see* Claims 3 and 26, *supra*, Petitioner repeatedly waived time during pre-trial proceedings. *See* ECF No. 38-16 at 15-16 (outlining two prior waivers of time for the preliminary hearing in 2016 and four prior waivers of time for trial between 2017 and 2019).

Based on a review of the record, including the trial court's detailed recitation of Petitioner's numerous waivers of his speedy trial right and the fact that several of the delays were clearly attributable to Petitioner (either on his own or through defense counsel), *see Brillion*, 556 U.S. at 90-94, the Court finds no likelihood of federal Constitutional error in this respect. Nor does Petitioner plead, much less establish, prejudice. As such, even under a de novo review, Petitioner does not merit habeas relief on Claim 22.

### g.  Claims 30 and 105

Petitioner contends the trial court abused its discretion when it admitted the "reference sample DNA profile for comparison to DNA from CODIS and or any other source" given the "illegal search/seizure" of that evidence (Claim 30) and makes these same allegations with respect to a different judge admitting it into evidence at his preliminary hearing (Claim 105).

As to Claim 30, he asserts the trial court abused its discretion in allowing the DNA into evidence given the allegedly "incomplete chain of custody" and the lack of warrant

1  and lack of consent for its collection.[10] ECF No. 23-2 at 15-16. As to Claim 105, he claims

2  "[a]lthough reference DNA samples may be allowed in preliminary hearings under state

3  law, but not under federal law, state should not be contrary to federal law" and because

4  there was "only testimony" otherwise presented, he would have had a "better" chance

5  absent the DNA, ECF No. 23-6 at 5, and again repeats his assertions as to chain of custody

6  and lack of consent or warrant. *See* ECF No. 38-50 at 110.

7      With respect to Petitioner's allegations as to the propriety of the DNA seizure,

8  California law provides an avenue for this type of challenge. *See* Cal. Penal Code

9  § 1538.5(a)(1) (providing in relevant part: "A defendant may move for the return of

10  property or to suppress as evidence any tangible or intangible thing obtained as a result of

11  a search or seizure on either of the following grounds: (A) The search or seizure without a

12  warrant was unreasonable.") To the extent Petitioner contends the trial court erred under

13  state law in admitting the evidence, such a question is not reviewable on federal habeas.

14  *See Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) ("Simple errors of state

15  law do not warrant federal habeas relief."), citing *McGuire*, 502 U.S. at 67.

16      Petitioner also does not explain his conclusory assertion that federal law, rather than

17  state law, should somehow govern the admissibility of evidence in a state court criminal

18  proceeding. In any event, federal case law does not assist his argument, as it provides that

19  "'(t)he possibility of a break in the chain of custody goes only to the weight of the

20  evidence.'" *United States v. Solorio*, 669 F.3d 943, 954 (9th Cir. 2012), quoting *United

21  States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991). Thus, even were federal law

22  somehow applicable, Petitioner's contention this evidence was inadmissible due to an

23  "incomplete chain of custody" appears dubious at best. Regardless, the evidence was

24

25  _____

26  [10] Petitioner also asserts appellate counsel failed to "pursue and challenge all DNA evidence

27  on direct appeal" despite his request. ECF No. 23-2 at 15. To the extent he is attempting to
   raise another allegation of ineffective assistance of appellate counsel, the Court addresses

28  it below, alongside the other claims concerning appellate counsel.

clearly found admissible under state law, a finding this Court will not review or disturb on federal habeas review. Nor does Petitioner appear to contest he is the father of Jane Doe 1's baby, as the DNA evidence reflects, although Petitioner maintains he is the victim in this case and claims Jane Doe 1 took advantage of him while he was drunk and asleep. *See* ECF No. 23-1 at 15, 19; *see also* ECF No. 23-19, Exhibit D to FAP (containing SDPD incident reports in which Petitioner alleges he was the victim of sex crimes committed against him by both Jane Doe 1 and her aunt Angelica De La Cruz). Because the jury could plainly and permissibly infer the baby's paternity from the DNA evidence, independent of whether the jury believed Jane Doe 1's trial testimony, the Court cannot conclude its admission violated Petitioner's due process rights. *See Jammal*, 926 F.2d at 920 ("Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process."); *see also Boyde*, 404 F.3d at 1172 ("A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision.") Because Petitioner fails to demonstrate federal Constitutional error in the admission of the DNA evidence, much less establish any likelihood of prejudice, habeas relief is not available on Claim 30 or Claim 105 even under a de novo review.

### h. Claim 38

Petitioner contends the trial court "denied the presence of the defendant and his counsel at a critical stage of court proceedings, presumed prejudice." ECF No. 23-3 at 10. Specifically, he claims a pretrial hearing conducted in the absence of both Petitioner and defense counsel resulted in the dismissal of several charged counts, which he contends prevented him or his counsel from potentially arguing for a reduced bail amount or release on his own recognizance prior to trial. *Id.* at 11. Petitioner also contends the trial court "allowed" the presentencing interview to be conducted without the presence of counsel and again asserts it took place on the day of sentencing.[11] *Id.*

---

[11] In the FAP, he also reiterates alleged consolidation errors, *see* ECF No. 23-3 at 11, which are addressed elsewhere in this Order. *See* Claims 35, 104, *infra.*

First and importantly, Petitioner fails to allege these errors had any "substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 637, and instead simply asserts prejudice is "presumed." This conclusory assertion is insufficient, as is his implication that the possibility of reduced bail or release prior to trial at that hearing somehow resulted in prejudice, as Petitioner does not show either could have affected the outcome of his *trial* proceedings. Second, as discussed above with respect to Claim 7, *supra*, the record reflects his presentencing interview was conducted a few weeks before sentencing, and not on the day of sentencing, *see* ECF No. 38-2 at 21, 32, and he fails to explain how the trial court can in any way be held responsible for whether defense counsel was or was not present. Finally, he fails to provide any details, such as the date, as to the contested pretrial hearing. He instead cites to several exhibits to the FAP concerning the consolidation of the two cases against him and the hearing on that matter, *see* ECF No. 23-3 at 11, citing Exhs. B, SS, DDD to FAP, but both Petitioner and defense counsel *were* present at the consolidation hearing. *See* ECF No. 38-3 at 20.

Because Petitioner fails to articulate prejudice arising from his and counsel's lack of presence at the contested pretrial hearing, and the Court finds no likelihood of prejudice from the *dismissal* of charges against him in their absence, habeas relief is unavailable on Claim 38 even under a de novo review. *See Brecht*, 507 U.S. at 637.

### i.  Claim 39

Petitioner contends the trial court allowed "biased jurors" to be seated on his trial jury and deliberate, asserts "no victim of sex crimes should be seated on the jury for fairness of trial" and argues the "only certainty" in such a situation is if the jurors render a not guilty verdict, while "a decision of 'guilty' should be assumed as bias." ECF No. 23-3 at 12. He cites various facts about or attributes of the trial jurors and alternates which he contends reflect bias, such as that several jurors were a "victim" or had a friend or relative who had been molested, several worked for or were associated with law enforcement, the courts, or the legal profession, one was a "DNA student," one alternate juror worked with children and another previously made an impact statement in a sex crimes case. *Id.* at 13.

46

While "the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors . . . It is not required, however, that the jurors be totally ignorant of the facts and issues involved." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). To this end, the Supreme Court further directed: "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* at 723 (citation omitted).

A review of the voir dire transcript Petitioner submits does not support his claim of bias. *See* ECF No. 23-84, Exh. EEE to FAP. For one, he challenges prospective juror #18, who he asserts wrote an impact statement in a sex crimes case, *see* ECF No. 23-3 at 13, but the available record reflects the parties stipulated to *excusing* that prospective juror. *See* ECF No. 23-84 at 26-27. The same excerpt reflects defense counsel stipulated to excusing several other individuals who indicated an inability to be fair and impartial and further reflects those remaining appeared to indicate no such inability to be fair, *see generally* ECF No. 23-84, and he fails to show any of the sworn jurors were unable to be impartial and decide his case fairly. *Irwin*, 366 U.S. at 722-23. Moreover, the sworn jurors and alternates were specifically instructed to decide the case solely on the facts and evidence introduced and to not be influenced by feelings, including prejudice, with respect to any party to the proceeding. *See* ECF No. 38-17 at 6 ("You must decide the facts from the evidence received in this trial, and not from any other source. [¶] You must determine the effect and the value of the evidence. You must not be influenced in your decision by mere sentiment, conjecture, sympathy, passion or prejudice towards any party, witness or attorney in this case, or public opinion or public feeling.") A jury is presumed to understand and follow the trial court's instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 211 (1989). Absent an indication any juror harbored bias against Petitioner or failed to understand and follow their oaths and instructions, this claim fails for lack of merit. Habeas relief is not available on Claim 39 even under a de novo review.

### j. Claim 42

Petitioner contends the trial court "allowed presumption of innocence violations," in that the jurors were allowed to view him with "jail garb," specifically a jail identification wristband. ECF No. 23-3 at 18-19. He asserts this error, when coupled with the fact that one juror was "associated with DEA," an alternate juror "worked for child services," and the Sheriff's website listing him as in custody and charged with many more counts than were tried, violated his federal Constitutional rights. *Id.*

However, Petitioner offers no evidence any juror saw the jail wristband or other "jail garb" nor that any jurors viewed the Sheriff's Department website. In any event, the trial court specifically instructed jurors not to investigate the case, and that admonition specifically included internet use. *See* ECF No. 38-1 at 170 (instruction directing jurors in relevant part: "Do not use the Internet, a dictionary, thesaurus, or any other reference manual in any way in connection with this case, either on your own or as a group.") The trial court also clearly instructed the jury on Petitioner's presumption of innocence. *See e.g.* ECF No. 38-1 at 173 ("The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial.") Again, a jury is presumed to understand and follow the trial court's instructions. *See Weeks*, 528 U.S. at 234; *Marsh*, 481 U.S. at 211 (1989).

Absent any indication the jurors viewed either the jail wristband or the website, coupled with the clear and specific jury instructions provided in this case, the Court finds no likelihood of federal Constitutional error, much less error which could have resulted in prejudice. Thus, even under a de novo review, habeas relief is not merited on Claim 42.

### k. Claim 84

Citing inconsistent prior statements by Jane Doe 1, Jane Doe 2, and the victims' father and aunt, *see* ECF No. 38-50 at 89, Petitioner asserts "[t]he judge and trial court knew the details of all statements and allowed false testimony" which violated his federal rights to due process and a fair trial. ECF No. 23-4 at 44.

As discussed in greater detail below with respect to Petitioner's claims alleging false testimony by prosecution witnesses based on their prior inconsistent statements, "[t]he fact that a witness may have made an earlier inconsistent statement, or that other witnesses have conflicting recollections of events, does not establish that the testimony offered at trial was false." *United States v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997). Thus, the existence of inconsistent prior statements does not, on its own, establish that the witnesses testified falsely. Because this claim is based solely on those prior inconsistent statements, Petitioner does not merit habeas relief on Claim 84 even under a de novo review. *See id.*

### l. Claim 85

Petitioner contends the trial court "denied motions critical to [his] defense" and the motions were "not heard in court within 15 days of being filed" in violation of his federal right to due process and to a fair trial. ECF No. 23-4 at 45. Petitioner generally contends the trial judge "acted in accordance with California law, not Federal law" and "denied all the motions prematurely" without providing the defense an opportunity to object or respond, which he contends "forc[ed]" him as a pro per defendant "to trial with a weak defense and lack of evidence." *Id.*

Petitioner specifically asserts the trial court violated his federal rights by denying several "critical" motions made while pro per, namely his *Trombetta/Youngblood* motion concerning lost evidence by the Sheriff's department, his motion to suppress DNA evidence arising from his DNA swab, motions to recuse various individuals, including the District Attorney's office, Public Defender's office, the trial judge and the Office of Assigned Counsel, his request to be released on his own recognizance, his motion to set aside charges under Cal. Penal Code § 995 and his motion to dismiss pursuant to Cal. Penal Code § 1385. ECF No. 38-50 at 90. Yet, he fails to allege or explain how any such denials (or the timing of the hearing on any of these motions) conceivably constituted federal error, nor does he cite any federal authority supporting his claim or attempt to demonstrate prejudice. Thus, "[Petitioner's] cursory and vague claim cannot support habeas relief." *Greenway*, 653 F.3d at 804, citing *James*, 24 F.3d at 26. Absent anything more than a vague

1    allegation of federal error and prejudice, habeas relief is not merited on Claim 85 even

2    under a de novo review.

3              **m. Claim 104**

4         Petitioner alleges the trial court "allowed errors in the consolidation of cases" in

5    violation of his right to due process and a fair trial. ECF No. 23-6 at 4. He contends the

6    trial court "knew the counts 2 through 8 had no physical evidence and would be difficult

7    to convict the defendant if tried without the original count one which had DNA evidence"

8    and argues federal law protects him from "the bolstering of charges" through consolidation.

9    *Id.* Petitioner asserts he could have sought lesser bail or could have prevailed at trial without

10   consolidation, but the "multiple victim allegation makes all counts appear true." *Id.*

11        "[T]he [Supreme] Court has long recognized that joint trials 'conserve state funds,

12   diminish inconvenience to witnesses and public authorities, and avoid delays in bringing

13   those accused of crime to trial.'" *United States v. Lane*, 474 U.S. 438, 449 (1986), quoting

14   *Bruton v. United States*, 391 U.S. 123, 134 (1968). While noting "[i]mproper joinder does

15   not, in itself, violate the Constitution," the Supreme Court has indicated "misjoinder would

16   rise to the level of a constitutional violation only if it results in prejudice so great as to deny

17   a defendant his Fifth Amendment right to a fair trial." *Id.* at 446 n.8. The Ninth Circuit has

18   "recognize[d] potential due process concerns when a poorly-supported count is combined

19   with one that is well supported." *Park v. California*, 202 F.3d 1146, 1150 (9th Cir. 2000),

20   citing *Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir. 1998).

21        Upon reviewing this claim as pled in the FAP, Petitioner does not persuasively allege

22   a "poorly-supported" case was combined with a "well supported one," *id.*, as the only

23   difference he notes between the two cases is the presence of DNA evidence in the

24   "original" case.[12] While he contends "counts 2 through 8 had no physical evidence," ECF

25

26   _____

27   [12] Petitioner also alleges the trial court "allowed a case that did not involve the defendant
     to be consolidated" with his "lead case," without explanation, ECF No. 38-50 at 109, while
28   the record reflects the consolidated cases both involved charges against Petitioner.

No. 23-6 at 4, he neglects to acknowledge four of the eight counts charged pertained to Jane Doe 1 (who gave birth to a child DNA evidence showed was Petitioner's) and four counts pertained to her twin sister Jane Doe 2. Moreover, that the jurors acquitted Petitioner on two of the counts (one count pertaining to Jane Doe 1 and one pertaining to Jane Doe 2) appears to clearly reflect the jury's ability to properly and fairly consider the evidence as to each count and undermines any potential finding of prejudice arising from consolidation of the two cases.[13] *See Park*, 202 F.3d at 1150 ("We have held that the failure of the jury to convict on all counts is 'the best evidence of the jury's ability to compartmentalize the evidence.'"), quoting *United States v. Baker*, 10 F.3d 1374, 1387 (9th Cir. 1993) (additional citations and quotations omitted). Even were the Court to assume without deciding that any error in joining or consolidating these cases could state a federal claim in this instance, Petitioner fails to demonstrate prejudice and as such, habeas relief is not available on Claim 104 even under a de novo review.

### 3. Claims Alleging Error/Misconduct by Prosecution

Petitioner alleges numerous instances of error and/or intentional prosecutorial misconduct (Claims 21, 23, 35-37, 54, 58-62, 65, 70, 114-16) The Court's review is de novo, informed by any relevant state court reasoning and analysis.

To state a claim of prosecutorial misconduct, a petitioner must show that the alleged misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Alleged instances of misconduct must be reviewed "in the context of the entire trial," *Donnelly*, 416 U.S. at 639; *see also Greer v. Miller*, 483 U.S. 756, 765-66 (1987), citing *Darden*, 477 U.S. at 179 and *Donnelly*,

---

[13] Petitioner also notes an unrelated arrest video was "mixed into" his discovery instead of his own arrest video but does not attempt to explain how this in any way relates to the consolidation matter, much less supports his claim of error. *See* ECF No. 38-50 at 109.

416 U.S. at 639, because "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Again, habeas relief is not available unless such error is shown to have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

### a. Claim 21

Petitioner contends the prosecution violated his speedy trial rights. ECF No. 23-1 at 20-21. He cites the delay in obtaining discovery from the prosecutor and the need to familiarize himself with the case once he went pro per, contends the prosecution engaged in intentional delay in order to coerce or influence the victim(s) into recanting their "confession," and as with his related trial court error claim, *see* Claim 22, *supra*, references several periods of delay between his August 2016 arrest and August 2019 trial. *Id.*

Even considering the alleged delay in turning over discovery, the Court's analysis of this claim is similar to Claim 22. Based on a review of the record and considering the factors outlined by the Supreme Court, *see Barker*, 407 U.S. at 530, the Court again finds that the factors weigh against Petitioner given his failure to allege prejudice, his own admitted (and repeated) waivers of time, and the fact that numerous delays are attributable to Petitioner on his own and/or via his defense counsel, *see* ECF No. 23-1 at 23, ECF No. 38-16 at 15-16; *see also Brillion*, 556 U.S. at 91, 94, and finds no federal error. Thus, habeas relief is unavailable on Claim 21 even under a de novo review.

### b. Claim 23

Petitioner contends the prosecutor committed misconduct, citing emails from pretrial prosecutor Dix to Marshall-Petry on matters such as the preliminary hearing, discovery of Petitioner's emails with Jane Doe 1, Jane Doe 2's allegations, the strength of the case, and potential plea negotiations, and citing their verbal exchanges during pretrial proceedings and hearings. ECF No. 23-2 at 1-2, citing ECF No. 23-16, Exh. A to FAP.

The Court's review of the emails reveals a largely one-sided communication during which the prosecutor updated defense counsel on the strength of the developing case

against Petitioner, including the result of interviews with Jane Doe 1, additional allegations by Jane Doe 2, discovery, expert interviews, and raised the potential for a plea. *See* ECF No. 23-16. Petitioner fails to explain how these communications were improper, much less constituted "misconduct" or showed the prosecutor and defense counsel worked "in tandem" or as "team players." *See* ECF No. 23-2 at 1. Even were he somehow able to show misconduct, this claim fails for lack of prejudice because this prosecutor only worked on his case during pretrial proceedings (including conducting the preliminary hearing), while Marshall-Petry similarly only represented Petitioner during pretrial proceedings. Thus, Petitioner utterly fails to explain, much less show, communications between this prosecutor and defense counsel had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. There is also nothing to support a conclusion these communications had an adverse impact on "the fairness of the trial." *Smith*, 455 U.S. at 219. Thus, even under a de novo review, he does not merit habeas relief on Claim 23.

### c. Claims 35 and 36

In Claim 35, Petitioner alleges the prosecution "consolidated the wrong case within the original case," because the "correct" case number to be consolidated with "controlling case SCD268146" was "SCD272633," yet case "SCD276633" was instead consolidated with the controlling case; he contends this "remained in error for around one year," violating his right to due process and a fair trial. ECF No. 23-3 at 4-5. In Claim 36, which Petitioner contends is "possibly connected to the consolidation error," he claims the prosecution's failure to inform and notify the defense of the dismissal of seven charged counts and failure to provide for their presence at the pertinent hearing prevented him from attempting bail or release prior to trial and violated his right to due process and a fair trial. ECF No. 23-3 at 6-7.

As to Claim 35, although not entirely clear, his claim the "wrong case" was consolidated with the lead case may stem from what appears to be a verbal misstatement at a July 2018 hearing, during which the trial court briefly noted case 276633 (rather than 272633) had been consolidated with the lead case, albeit shortly after *correctly* noting the

3:22-cv-00556-JES-VET

case numbers. *See* ECF No. 23-67 at 4-5, Exh. SS to FAP. Despite this brief apparent misstatement, the consolidated information(s) reflect the "correct" case numbers were consolidated, as do the pleadings on the motion for consolidation. *See* ECF No. 38-1 at 26, 33, 62. In any event, Petitioner fails to show prejudice arising from consolidation, *see e.g.* Claim 104, *supra*, nor does he allege any prejudice arising from this apparent recitation error, which in any event appears correct in the pleadings and consolidated information.

As to Claim 36, Petitioner fails to show prejudice from his absence at the pretrial hearing dismissing several charges against him, for the reasons previously discussed in conjunction with his related trial court error claim. *See* Claim 38, *supra*. He also fails to allege such error had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 637, as again, he does not show securing bail or release *prior* to trial could have impacted the outcome of his *trial* proceedings. Thus, even under a de novo review, Petitioner does not merit habeas relief on Claims 35 or 36.

### d. Claim 37

Petitioner asserts the prosecution violated his presumption of innocence when investigator Burhans testified as to her opinion about his guilt and violated his right to a fair trial and due process despite the attempt to "cure the statements made" by instructing the jury to disregard the witness' opinion as to his guilt.[14] ECF No. 23-3 at 8-9.

During cross-examination, defense counsel and the district attorney's investigator had the following exchange:

Q. And have you formed an opinion about Mr. Bryson?

A. Yes.

Q. And what is that opinion about Mr. Bryson?

A. That he committed the crime.

---

[14] Petitioner also briefly notes "trial counsel failed to move for mistrial," ECF No. 23-3 at 8, but he raised this as a separate claim in the FAP alleging ineffective assistance of counsel and it is addressed elsewhere in this Order. *See* Claim 40, *infra*.

1

Q. So are you saying that you – you believe that he's guilty?

2

[PROSECUTOR]: Your Honor, I'm going to object for both sides at this

3

point.

4

THE COURT: Sustained.

5

ECF No. 38-19 at 132. Almost immediately thereafter, counsel and the trial court had a

6

sidebar, during which the trial court stated to counsels' agreement: "I think at this point I

7

should admonish the jury to disregard Ms. Burhans' opinion as to the ultimate issue that

8

he's guilty of the crimes," and the jury would be advised it was "[s]olely their decision."

9

*Id.* at 133. The trial court instructed the jurors: "Ladies and gentlemen, you are to disregard

10

the last statement of opinion about this witness' belief in whether the defendant committed

11

the crime. That is your responsibility as a jury. It is for you to decide." *Id.* at 134.

12

Given the trial court and the parties promptly addressed the contested comments and

13

the jury was instructed to both disregard the remarks and was directed they, and not the

14

witness, were charged with making the ultimate decision as to guilt, the Court finds no

15

likelihood the comment "'so infected the trial with unfairness as to make the resulting

16

conviction a denial of due process,'" *Darden*, 477 U.S. at 181, quoting *Donnelly*, 416 U.S.

17

at 643. Again, a jury is presumed to understand and follow the trial court's instructions.

18

*See Weeks*, 528 U.S. at 234; *Marsh*, 481 U.S. at 211; *see also Francis v. Franklin*, 471 U.S.

19

307, 324 n.9 (1985) ("The Court presumes that jurors, conscious of the gravity of their

20

task, attend closely the particular language of the trial court's instructions in a criminal case

21

and strive to understand, make sense of, and follow the instructions given them.") There is

22

no record indication the jurors were unable to understand and follow the trial court's clear

23

direction nor does Petitioner show the investigator's comment was such that the jury would

24

be unable to set it aside. *See Greer*, 483 U.S. at 766 n.8 ("We normally presume that a jury

25

will follow an instruction to disregard inadmissible evidence inadvertently presented to it,

26

unless there is an 'overwhelming probability' that the jury will be unable to follow the

27

court's instructions, and a strong likelihood that the effect of the evidence would be

28

'devastating' to the defendant."), quoting *Marsh*, 481 U.S. at 208 and *Bruton*, 391 U.S. at

1  136. He also does not show the contested comments, particularly in view of the specific

2  and prompt curative instruction, had a "substantial and injurious effect or influence in

3  determining the jury's verdict." *Brecht*, 507 U.S. at 637. Habeas relief is not warranted on

4  Claim 37 even under a de novo review.

5          **e.  Claim 54**

6          Petitioner contends the prosecution violated the Confrontation Clause because Jane

7  Doe 1 did not testify at his first preliminary hearing in October 2016 and other evidence

8  was presented in her stead, including a letter and a detective's testimony.[15] ECF No. 23-4

9  at 14; ECF No. 38-50 at 59. He contends had he been allowed to confront Jane Doe 1, "the

10 alleged victim would have testified on the record that she had committed the crime alone

11 with intent and corroboration and the defendant would be released," but Jane Doe 2 was

12 later used to "turn them both against each other change their stories then put them on the

13 stand together in second preliminary hearing and bolster the case." ECF No. 23-4 at 14. He

14 asserts he would have had a "clean fair opportunity" for dismissal had she testified. *Id.*

15         "The Sixth Amendment to the Constitution guarantees the right of an accused in a

16 criminal prosecution 'to be confronted with the witnesses against him.'" *Davis v. Alaska*,

17 415 U.S. 308, 315 (1974); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986).

18 That said, the Supreme Court has also on several occasions affirmed that the right to

19 confrontation is a "trial right." *See Pennsylvania v. Ritchie*, 480 U.S. 39, 52-53 (1987)

20 ("The opinions of this Court show that the right to confrontation is a *trial* right, designed

21 to prevent improper restrictions on the types of questions that defense counsel may ask

22

23

24 [15] To the extent Petitioner alleges errors relating to the reporting and investigation of his
own allegations of assault by the victims' aunt and Jane Doe 1, *see* ECF No. 38-50 at 59,
25 which was the subject of a 2018 report, *see* ECF No. 23-19 at 6-12, Exh. D to FAP, he fails
to explain its relevance to the instant claim concerning the October 2016 preliminary
26 hearing. Regardless, these contentions were raised as a separate claim in the FAP and are
addressed elsewhere. *See* Claim 45, *infra.* He also repeats allegations as to the lack of a
27 rape kit or physical exam and jury instructions, ECF No. 38-50 at 59, but fails to explain
their relevance here, as this claim concerns the *preliminary* hearing, not trial.
28

during cross-examination."), citing *California v. Green*, 399 U.S. 149, 157 (1970) ("[I]t is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause.") and *Barber v. Page*, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right."); *see also Kentucky v. Stincer*, 482 U.S. 730, 739 (1987) ("[T]he right to confrontation is a functional one for the purpose of promoting reliability in a criminal trial.").

Accordingly, in the absence of any federal Constitutional right to confront the victims at the preliminary hearing and given Petitioner was provided with an opportunity to confront and cross-examine both victims at trial and both were subjected to extensive cross-examination by defense counsel, *see* ECF No. 38-19 at 36-74 (cross-examination of Jane Doe 1), 91-107, 109-111 (cross and recross-examination of Jane Doe 2), Petitioner fails to establish any federal error arising from Jane Doe 1's failure to testify at the first preliminary hearing. *See Peterson v. California*, 604 F.3d 1166, 1169-70 (9th Cir. 2010) ("[U]nder the Supreme Court's Confrontation Clause jurisprudence, [Petitioner] was entitled to confront witnesses against him at trial, which he did. He was not constitutionally entitled to confront them at his preliminary hearing."), citing *Stincer*, 482 U.S. at 735, 740, 744. Because the Court finds no possibility of federal Constitutional error arising from the asserted violation, he does not merit habeas relief on Claim 54 even under a de novo review.

### f.  Claim 58

Petitioner asserts the prosecutor "unduly prejudiced" him "by pretrial public exposure of case information that prospective jurors had access to" prior to their selection. ECF No. 23-4 at 18. He objects to his case information appearing on a public Sheriff's Department website, the failure to properly update that information to ensure accuracy, and the "possibility" that prospective jurors viewed it. *Id.*; *see also* ECF No. 38-50 at 63.

Again, while "the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors . . . It is not required, however, that the jurors be totally ignorant of the facts and issues involved." *Irvin*, 366 U.S. at 722. As also noted previously, "[t]o hold that the mere existence of any preconceived notion as to the guilt or

1   innocence of an accused, without more, is sufficient to rebut the presumption of a

2   prospective juror's impartiality would be to establish an impossible standard. It is sufficient

3   if the juror can lay aside his impression or opinion and render a verdict based on the

4   evidence presented in court." *Id.* at 723 (citations omitted).

5       Here, Petitioner does not assert or show any prospective juror either viewed the

6   contested information, much less one serving on his jury.[16] Again, the trial court

7   specifically instructed jurors not to investigate the case, including internet use. *See* ECF

8   No. 38-1 at 170 (instruction directing jurors in relevant part: "Do not use the Internet, a

9   dictionary, thesaurus, or any other reference manual in any way in connection with this

10  case, either on your own or as a group.") The jurors were also instructed on both the

11  presumption of innocence and reasonable doubt. *See* ECF No. 38-1 at 173 (in part "The

12  fact that a criminal charge has been filed against the defendant is not evidence that the

13  charge is true. You must not be biased against the defendant just because he has been

14  arrested, charged with a crime, or brought to trial.") Again, a jury is presumed to understand

15  and follow the trial court's instructions. *See Weeks*, 528 U.S. at 234; *Marsh*, 481 U.S. at

16  211. Given the lack of evidence any jurors viewed the contested information coupled with

17  both the Supreme Court's specific direction that jury impartiality does not require "the

18  jurors be totally ignorant of the facts and issues involved," *Irvin*, 366 U.S. at 722, and the

19  clear and specific jury instructions provided in this case, the Court finds no likelihood of

20  federal Constitutional error, much less error which could have resulted in prejudice. Even

21  under a de novo review, Petitioner does not merit habeas relief on Claim 58.

22  ///

23  ///

---

26  [16] Petitioner also claims Jane Doe 1 posted a "collage of photos of the baby through emails
27  and social media," sent emails to his girlfriend and brother, and "discussed the case through
    social media," ECF No. 38-50 at 63, but any alleged error arising from these contentions
28  fails as to this claim because he does not show this material was either accessible to the
    general public/prospective jurors or was somehow attributable to the prosecution.

### g.  Claim 59

Petitioner contends the prosecution failed to disclose and turn over all of the "inculpative/exculpative evidence" to his defense prior to trial, specifically, purported emails between Jane Doe 1 and Petitioner's brother in which Jane Doe 1 "was confessing she did the crime while the defendant was intoxicated and [a]sleep," Petitioner's own emails and social media activity, any/all audio/video/transcripts of witness interviews by police, Petitioner's arrest, and an unspecified "forensic walkthrough," as well as Jane Doe 1's email and social media activity. ECF No. 23-4 at 19; ECF No. 38-50 at 64.

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Moreover, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

Here, however, as Respondent correctly notes, *see* ECF No. 37-1 at 38, Petitioner does not provide record support for his assertion, such as a declaration from his brother, who purportedly exchanged the emails. Nor does he explain how the prosecution would have had sole access to or knowledge of such emails, as again, he indicates the correspondence was between one of the victims and his own brother. Instead, Petitioner only indicates an investigator for the prosecution contacted his brother to gain access to his

emails and likely obtained them but did not provide them to the defense. *See* ECF No. 23-4 at 19. Notably, he does not assert the defense was *unaware* of the exchanges in question, which precludes a finding of suppression. *See Cunningham v. Wong*, 704 F.3d 1143, 1154 (9th Cir. 2013) ("Under *Brady's* suppression prong, if 'the defendant is aware of the essential facts enabling him to take advantage of any exculpatory evidence,' the government's failure to bring the evidence to the direct attention of the defense does not constitute 'suppression.'"), quoting *Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006) (additional quotation omitted). Indeed, defense counsel's cross-examination of Jane Doe 1 references emails or social media exchanges between Jane Doe 1 and Petitioner's brother, and it thus appears the defense was aware of such communications. *See* ECF No. 38-19 at 59-65. Petitioner also fails to explain how the prosecution suppressed evidence of his own emails and social media activity, of which he was presumably well-aware. In any event, Jane Doe 1 also testified at trial about her email exchanges with Petitioner. *See id.* at 32-34. As to the purported audio/video/transcripts, he fails to allege or show any such evidence was both exculpatory and suppressed. In fact, the record appears to reflect at least some of this evidence was made available to the defense and was likely *not* exculpatory, given the *defense* requested the exclusion of all video recordings, audio recordings and witness statement transcripts. *See* ECF No. 38-1 at 109-110 (defense trial brief).

Even were Petitioner somehow able to demonstrate suppression of favorable evidence, this claim also fails for lack of prejudice, as Jane Doe 1's prior account that she initiated sex with Petitioner while he was drunk and asleep, the only favorable evidence specifically identified here, was presented to the jury. *See* ECF No. 38-19 at 66-74. Given the guilty verdict, the jury clearly rejected that account of events. As such, Petitioner fails to show any "reasonable probability" had the purported emails on that same subject been provided to the defense, "the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. Even under a de novo review, habeas relief is unavailable on Claim 59.

///

///

3:22-cv-00556-JES-VET

### h.  Claims 60 and 62

In Claim 60, Petitioner asserts the "prosecution failed to prove all the elements of each individual charged count" and in Claim 62, alleges the "prosecution provided speculation, not proof, beyond [a] reasonable doubt." ECF No. 23-4 at 20, 22. He asserts his convictions were obtained by only "circumstantial evidence" as there was no evidence of intent on his part, no details offered about planning or carrying out the alleged crimes, and again states Jane Doe 1 previously "confessed" to the crime and "should have been arrested" and asserts "doubt" that Jane Doe 2 was raped based on her prior statements, her delay in reporting and her refusal to undergo a rape kit examination. *Id.*

As to Claim 60, Petitioner contends the prosecutor failed to prove he was the "actual perpetrator" since the (unconstitutionally obtained) DNA evidence was to "paternity not perpetrator" and in light of Jane Doe 1's prior "confession" and mistakes in identifying him in court, failed to prove his intent, interest or planning, and failed to prove great bodily injury because the pregnancy and birth was assertedly "common" and "normal." ECF No. 38-50 at 65. As to Claim 62, he contends the prosecution failed to provide proof that he was responsible for one of Jane Doe 1's prior inconsistent statements (a letter concerning "Josh"), that he knew and allowed Jane Doe 1 to perform or perpetrate sex acts on him (rather than while he was asleep and intoxicated), that Jane Doe 1 feared or was threatened by him (particularly in view of her communications with him and others), that he coached or coerced Jane Doe 1 as to the prior inconsistent statements, and that he had any intent, motive or planning or improper/inappropriate interest in children. ECF No. 38-50 at 67. Petitioner also generally alleges the prosecutor "failed to admit all evidence into trial" and "convict [him] of all elements of each individual charge" and again points to the "inconsistent and false testimony" by Jane Doe 2 and the victims' father and aunt. *Id.*

First, to the extent Petitioner simply restates allegations raised as separate claims of error in the FAP, including but not limited to his claims of inconsistent/false witness testimony, errors concerning DNA evidence and testimony, Jane Doe 1's prior "confession," and claims about emails, social media posts and other digital evidence and/or

61

communications between Jane Doe 1 and other individuals, those claims are addressed elsewhere in this Order and will not be revisited here. *See e.g.* Claims 53, 64, 68-69, 96-100 (inconsistent/false witness statements), Claims 27-30, 105 (DNA collection and evidence), Claims 16, 18, 59, 81 (emails, social media posts and other communications, including prior "confession" of Jane Doe 1), *supra* and *infra*.

Turning to Petitioner's primary Claim 60 and 62 assertions the evidence presented was insufficient to prove every element of each of the charged counts and the prosecution provided "speculation" rather than proof beyond a reasonable doubt, *see* ECF No. 23-4 at 20, 22, the Supreme Court has long held "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In reviewing a claim of insufficient evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "[T]he applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324 (footnote omitted); *see also Cavazos v. Smith,* 565 U.S. 1, 2 (2011) (per curiam) ("A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.") "The *Jackson* standard 'must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004), quoting *Jackson*, 443 U.S. at 324 n.16.

Petitioner was convicted of six counts of committing a lewd act upon a child under the age of 14, and the California state statute provides in relevant part: "a person who willfully and lewdly commits any lewd or lascivious act, . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or

the child, is guilty of a felony . . . ." Cal. Penal Code § 288(a). Specifically, "section 288 is violated by 'any touching' of an underage child committed with the intent to sexually arouse either the defendant or the child." *People v. Martinez*, 11 Cal. 4th 434, 442 (1995). As to intent, state law specifies: "'(T)he trier of fact looks to all the circumstances, including the charged act, to determine whether it was performed with the required specific intent.'" *Id.* at 445, quoting *People v. Scott*, 9 Cal. 4th 331, 344 n. 7 (1994).

Petitioner's contentions the evidence was insufficient to prove "all the elements of each individual charged count" and there was a purported lack of demonstrated intent, ECF No. 23-4 at 20, are refuted by the Court's review of the record, which supports the jury's guilty verdict. As the state court recounted, the testimony and evidence provided at trial reflected as follows: "During several of the defendant's visits, the defendant forced the sisters to have sexual intercourse with him. He forced Jane Doe 1 to have sexual intercourse with him on at least five occasions. According to Jane Doe 1, she tried to resist the defendant's advances but was unable to do so. During one of these forced sexual encounters, the defendant impregnated Jane Doe 1. She later gave birth to the defendant's child at the age of 13. The defendant forced Jane Doe 2 to have sexual intercourse with him on at least three occasions." ECF No. 38-44 at 4. Given "any touching" with the requisite intent can result in a violation of section 288, and the jury can consider "all the circumstances, including the charged act" to determine intent, *Martinez*, 11 Cal. 4th at 442, 445, the jury could have reasonably found the required specific intent given the acts at issue here were numerous instances of forced sexual intercourse. *See* ECF No. 38-44 at 4.

Again, it is not the role of a reviewing court to simply reweigh the evidence and federal habeas relief is not available even in the event this Court, in the first instance, could have conceivably reached a different decision. *See e.g. Cavazos*, 565 U.S. at 2 ("[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.") Instead, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443

U.S. at 319 (emphasis in original). While Petitioner points repeatedly and throughout the FAP to the victims' prior inconsistent statements and maintains *he* is the victim (based on Jane Doe 1's prior statement indicating she took advantage of an incapacitated Petitioner and Jane Doe 2's asserted lies), the jury was apprised of the victims' prior statements and delayed reporting and nonetheless found the elements of the charged crimes proven beyond a reasonable doubt. Moreover, given their guilty verdict on six of the eight charged counts, and their failure to reach a unanimous verdict on two counts, it is clear the jury diligently considered and weighed the evidence as it related to the requisite elements of the charged crimes. Considering the evidence "in the light most favorable to the prosecution," as required under *Jackson*, 443 U.S. at 319, it is evident the jury could have found the prosecution proved beyond a reasonable doubt Petitioner was guilty of six counts of committing a lewd act upon a child under the age of 14.

With respect to the great bodily injury finding, Petitioner appears to assert the prosecution failed to properly prove that enhancement because Jane Doe 1's pregnancy and birth, and any injuries resulting from it, were within normal parameters. ECF No. 38-50 at 65. The relevant state statute provides: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." Cal. Penal Code § 12022.7(a). Additionally, the same statute further provides: "As used in this section, 'great bodily injury' means a significant or substantial physical injury." Cal. Penal Code § 12022.7(f)(1).

Upon review, a rational trier of fact plainly could have agreed with the jury's finding based on the evidence presented at trial. *See Cavazos*, 565 U.S. at 2. Dr. Kabacka, who treated Jane Doe 1 during her labor and delivery, testified first about the "higher risk" of numerous complications from pregnancy and delivery by a 13-year-old such as Jane Doe 1, ECF No. 38-18 at 10-11, noted Jane Doe 1 was "tearful" during labor, "[i]t was difficult to examine her and perform exams because of the pain that she was in," and she "ultimately opted for an epidural," which involved inserting a large needle into her spine to numb or

reduce pain. *Id.* at 12-13. Dr. Kabacka also noted Jane Doe 1 "sustained a perineal laceration and a labial laceration" from the vaginal delivery, both of which were repaired with sutures. *Id.* at 16-17. The physician also noted Jane Doe 1 "was diagnosed with gestational hypertension immediately after delivery," a complication she was at a higher risk for given her age. *Id.* at 17-18. Considering the evidence "in the light most favorable to the prosecution," as required under *Jackson*, 443 U.S. at 319, it is again apparent the jury could have found the prosecution proved beyond a reasonable doubt Petitioner was guilty of personally inflicting great bodily injury on Jane Doe 1. Finally, while Petitioner does not appear to specifically challenge the jury's multiple victim finding, pursuant to Cal. Penal Code §§ 667.61(e)(4) and (j)(2), the record plainly reflects there were two victims in the case, Jane Doe 1 and Jane Doe 2, and the jury could reasonably have found that enhancement true beyond a reasonable doubt based on the evidence presented at trial.

Thus, for the reasons discussed above, even under a de novo review, Petitioner does not merit habeas relief on Claim 60 or 62.

### i. Claim 61

Petitioner contends the "prosecution admitted into trial the use of prosecutor's fallacy and calculations for DNA results and probability statements," and while statistical evidence concerning DNA results is admissible under state law, "it is not allowed under federal law," and claims "statistics are not all factual, but more circumstantial" because the conclusions are not certain but there is instead a possibility of error. ECF No. 23-4 at 21. Petitioner asserts the DNA evidence shows a "probability" he is the father of Jane Doe 1's baby, but that evidence and Kaeser's related testimony went to "paternity" rather than "perpetrator," and there was a lack of corroborating testimony or evidence about "how and when the biological evidence was left at the crime scene." ECF No. 38-50 at 66.[17]

---

[17] To the extent he repeats allegations about Jane Doe 1's prior statements, his arrest and DNA swab, and the DNA evidence, those contentions were raised as separate claims in the FAP and are addressed elsewhere in this Order. *See* Claims 27, 30-31, 34, 96-97, 99, 105.

Petitioner posits there was error in the DNA results and testimony offered at trial but offers only vague and conclusory assertions in support of his argument. He does not specify what he means by "crime scene," as the police collected his DNA after his arrest, nor does he articulate any substantive difference between "paternity" and "perpetrator" given Jane Doe 1 was well under the age of majority. In any event, as noted previously, Petitioner does not appear to contest that he is the father of Jane Doe 1's baby, although he contends that *he* is the victim in this case. *See* ECF No. 23-1 at 15, 19; *see also* ECF No. 23-19, Exhibit D to FAP (containing SDPD incident reports in which Petitioner alleges he was the victim of sex crimes committed by Jane Doe 1 and her aunt Angelica De La Cruz).

Moreover, while Petitioner generally asserts "[o]pinions and calculations do not prove a person is the perpetrator but only shows it is possible," ECF No. 23-4 at 21, the DNA evidence was not the only evidence introduced against him, as both victims testified at trial and stated he forced them to have sexual intercourse with him, and several other lay and expert witnesses also testified at trial. *See* e.g. ECF Nos. 38-18 through 38-21 (trial witness testimony); *see McDaniel v. Brown*, 558 U.S. 120, 136 (2010) (rejecting claim for relief based on inaccuracies in testimony about DNA where "ample DNA and non-DNA evidence in the record adduced at trial supported the jury's guilty verdict.") Thus, Petitioner both fails to show there was error in the manner alleged and further fails to show any such error had a "substantial and injurious effect or influence in determining the jury's verdict," particularly in the light of the other evidence presented at trial. *Brecht*, 507 U.S. at 637. Even under a de novo review, Petitioner does not merit habeas relief on Claim 61.

### j.  Claim 65

Petitioner asserts the "prosecution conducted improper burden shifting" by failing to provide the defense with a plea offer and telling defense counsel they needed to first make an offer, and notes he learned his defense counsel had offered 11 years, to which the prosecution responded they would not accept any offer less than 20 years. ECF No. 23-4 at 25. Petitioner contends he has "no burden to prove his innocence or admit any guilt" and generally asserts he has the right to a fair trial by jury, has the presumption of innocence

66

until proven guilty and all elements must be proven beyond a reasonable doubt. ECF No. 38-50 at 70.[18]

Petitioner does not demonstrate any impropriety or error with respect to the plea negotiations, as he fails to cite to any authority stating the prosecution must make an offer first rather than the defense. Nor does he show any violation of his federal Constitutional rights arising from the prosecutor requesting a plea offer from the defense. Petitioner also fails to establish prejudice, as he does not indicate he would have taken any such proffered plea or show these events had any impact on the outcome of his *trial* proceedings. Nor does he demonstrate any such alleged error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. As such, even under a de novo review, Petitioner does not merit habeas relief on Claim 65.

### k. Claim 70

Petitioner contends he should have been released because the prosecutor failed to arraign him within exactly 48 hours of his arrest, but he instead remained in custody and was later convicted, in violation of his federal due process rights. ECF No. 23-4 at 30. Petitioner asserts the 48-hour requirement "is not 48:01, 49, or 50" and the rule "does not state any grace period." *Id.* He contends he was arrested the morning of August 3, 2016, but was not arraigned until the afternoon of August 5, 2016. ECF No. 38-50 at 75.

The Supreme Court has long held "the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention," *Gerstein v. Pugh*, 420 U.S. 103, 126 (1975), and to this end, has subsequently held "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply

---

[18] To the extent Petitioner is asserting a violation of his right to a fair *jury* trial arising from these alleged violations, he does not explain or support this contention in the context of this claim, which concerns pretrial plea offers. In any event, the trial jury was instructed on those requirements. *See e.g.* ECF No. 38-1 at 173. He also repeats assertions about "suggestibility" and "coercion," ECF No. 38-50 at 70, which were raised as a separate claim in the FAP and are addressed elsewhere. *See* Claim 106, *infra*.

3:22-cv-00556-JES-VET

with the promptness requirement of *Gerstein*." *County of Riverside* v. *McLaughlin*, 500 U.S. 44, 56 (1991). "Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *McLaughlin*, 500 U.S. at 57 (1991).

Assuming, without deciding, that Petitioner was not arraigned within precisely 48 hours of his arrest, he fails to show there is an available remedy. Even were the Court to find a violation of the rule requiring timely arraignment, the Supreme Court has explicitly rejected "reversal or dismissal of the case" as a potential remedy, as Petitioner requests.[19] ECF No. 23-4 at 30; *see Gerstein*, 420 U.S. at 119 ("[A]lthough a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause.") (citations omitted). It is thus evident Petitioner's request for "reversal or dismissal of the case" is not an available remedy. *See Gerstein*, 420 U.S. at 119. Nor does he explain how this error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Habeas relief is not available on Claim 70 even under a de novo review.

### l.  Claims 114-116

Petitioner contends the prosecution violated his federal Constitutional rights "during the testimony of Detective Vernon Kindred" (Claim 114), "during trial testimonies" (Claim

---

[19] The Ninth Circuit has held that exclusion of evidence relating to the violation could be an appropriate remedy. *See Anderson v. Calderon*, 232 F.3d 1053, 1071 (9th Cir. 2000) (where there was a 76-hour delay in arraignment, finding "the appropriate remedy for a *McLaughlin* violation is the exclusion of the evidence in question—*if* it was 'fruit of the poisonous tree.'"), overruled in part on other grounds by *Bittaker v. Woodford*, 331 F.3d 715, 728 (9th Cir. 2003). Petitioner does not point to any statement or evidence he contends should have been suppressed or excluded and instead only articulates "reversal or dismissal" as the remedy sought. ECF No. 23-4 at 30.

115), and "during two preliminary hearings" (Claim 116). ECF No. 23-6 at 14-16. However, in support of each of these claims, he appears to simply list, by page and line number references to the trial and/or preliminary hearing transcript, numerous objections made during those proceedings based on various grounds, some of which he indicates resulted in a sidebar. *See* ECF No. 38-50 at 119-21. He offers no specific argument as to the substance of the objectionable testimony or evidence nor does he explain how the objections raised were insufficient to ameliorate any potential violation. As noted previously, "cursory and vague claim[s]" such as these "cannot support habeas relief." *Greenway*, 653 F.3d at 804 ("[Petitioner's] cursory and vague claim cannot support habeas relief."), citing *James*, 24 F.3d at 26 ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.") He also fails to allege, much less show, any such asserted error had a "substantial and injurious effect or influence in determining the jury's verdict."[20] *Brecht*, 507 U.S. at 637. Thus, even under a de novo review, habeas relief is not available on Claims 114-116.

### 4. Claims Concerning Testimony of Prosecution Witnesses

Petitioner alleges numerous instances of false, inconsistent, exculpatory and/or otherwise improper prosecution witness testimony (Claims 51, 53, 63-64, 66-69, 96-100, 108-109). The Court's review is de novo, informed by any relevant state court reasoning and analysis.

As relevant to several claims in this section, "it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment" and "[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (citations omitted); *see also Bagley*, 473 U.S. at 678-

---

[20] With respect to Claim 116 at a minimum, it is also unclear how Petitioner could even attempt to allege prejudice to the outcome of his trial, as that claim is based on events which occurred solely during his preliminary hearings.

79 (noting "the well-established rule that 'a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'"), quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976). To state a claim for habeas relief, "the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003), citing *Napue*, 360 U.S. at 269-71. That said, "[t]he fact that a witness may have made an earlier inconsistent statement, or that other witnesses have conflicting recollections of events, does not establish that the testimony offered at trial was false." *Croft*, 124 F.3d at 1119.

### a. Claims 51 and 63

Petitioner contends prosecution witness Phyllis Wiley testified against him "with prejudice and biasness" (Claim 51) and "provided exculpatory statements during trial testimony" (Claim 63), which violated his federal right to due process and to a fair trial. ECF No. 23-4 at 11, 23. In Claim 51, he alleges Wiley, who worked at the school Jane Does 1 and 2 attended, was biased against him from their initial meeting when he went to pick up homework, which he appears to attribute to racial differences between him and the victims' family and his reference to Jane Doe 1 as his "niece," and asserts he became a suspect due to Wiley's assumptions and report. *Id.* at 11; *see also* ECF No. 38-50 at 56. As to Claim 63, he vaguely contends the trial court should have further instructed the jury about considering Wiley's "exculpatory statements" and the prosecution "should have presented their case to support the innocence of the defendant in a non-bias manner due to the exculpatory statements along with their approach to prove guilt." ECF No. 23-4 at 23.

However, Petitioner fails to persuasively explain how either allegation amounts to a federal constitutional violation. As a prosecution witness, it is evident Wiley would not have testified in Petitioner's favor, and he does not allege any facts showing Wiley's testimony was somehow improper or inadmissible such as to potentially sustain a claim for

habeas relief. *See e.g. James*, 24 F.3d at 26 ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.") Moreover, to the extent Wiley made "exculpatory statements" during her trial testimony, any such statements could not have prejudiced Petitioner as they would have benefitted him and were clearly before the jury to consider. *See e.g.* ECF No. 38-50 at 68 (recounting statements made during trial testimony). He offers no authority supporting a claim the trial court or prosecutor should have somehow conducted themselves or acted differently with respect to those statements. The fact remains that Petitioner acknowledges "exculpatory statements" took place during Wiley's trial testimony and the jury was thus necessarily aware of any such statements which inured to Petitioner's benefit, and as such, those statements could not have resulted in prejudice. He also fails to show any such asserted error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Therefore, even under a de novo review, habeas relief is not available on Claims 51 or 63.

### b.  Claims 53 and 64

Petitioner contends the victims' aunt Angelica De La Cruz and the victims' father Angel De La Cruz each "provided inconsistent statements prior to trial testimony" (Claims 53 and 64, respectively). ECF No. 23-4 at 13, 24. Petitioner does not offer specific facts in the FAP as to Angelica, but incorporated by reference are his prior assertions Angelica made statements inconsistent with her trial testimony concerning her sexual relationship with Petitioner, including whether they had sex when the children were in the home, whether she performed sex acts on him while he was asleep, where the "Mercedes" letter originated, how Jane Doe 1 got the pills she took, the source of Petitioner's DNA, and where Angelica lived during the relevant time periods. *See id.* at 13; ECF No. 38-50 at 58. Petitioner asserts Angel "committed perjury" at trial and his inconsistencies were the result of coercion or coaching, noting Angel testified he received the "Mercedes letter" from Petitioner when he previously told San Diego Police he found the letter in the trash, gave an inconsistent account of a time when he found Petitioner in the victims' bedroom late at

1  night, and contends Angel threatened to kick Jane Doe 1 out of the house if she did not

2  change her own account. ECF No. 23-4 at 24; *see also* ECF No. 38-50 at 69.

3      Both claims fail because such inconsistencies are insufficient to sustain a conclusion

4  that either witnesses' trial testimony was false. *See Croft*, 124 F.3d at 1119 ("The fact that

5  a witness may have made an earlier inconsistent statement, or that other witnesses have

6  conflicting recollections of events, does not establish that the testimony offered at trial was

7  false.") Moreover, both witnesses testified at trial and were subjected to cross-examination

8  on many of these matters and the jury was apprised of and could consider these purported

9  inconsistencies in evaluating this testimony. As to Petitioner's claim Angel's testimony

10  was the result of coaching or Angel threatened to kick Jane Doe 1 out of the house if she

11  did not change her account, his failure to provide any factual or record support for these

12  assertions fails to state a claim for relief. *See James*, 24 F.3d at 26 ("Conclusory allegations

13  which are not supported by a statement of specific facts do not warrant habeas relief.")

14  Because Petitioner fails to establish the contested testimony was false *and* the prosecutor

15  knew, or should have known, of its falsity, *see Zuno-Arce*, 339 F.3d at 889, Claims 53 and

16  64 each fail for lack of merit even under a de novo review.

### c.  Claim 66

18      Petitioner contends prosecution expert witness Anthony Urquiza "provided

19  statistical and opinionated and bias testimony and no facts to maintain, support, or sustain

20  a factually guilty verdict." ECF No. 23-4 at 26. He asserts the expert's "opinion is not facts

21  and not material evidence" without which the jury would have been able to weigh the

22  evidence more fairly and contends its admission violated his federal rights. *Id.*

23      Petitioner's primary complaint appears to be Urquiza was "partial, bias in support of

24  the prosecution alone, not in support of defense or both," and offered his opinions rather

25  than "facts." ECF No. 38-50 at 71. But he fails to show the testimony was itself immaterial

26  or inadmissible and as Respondent aptly observes, state law provides for the admission of

27  such testimony. *See* ECF No. 37-1 at 40, citing Cal. Evid. Code § 721 (providing in relevant

28  part that a testifying expert witness "may be fully cross-examined as to (1) his or her

qualifications, (2) the subject to which his or her expert testimony relates, and (3) the matter upon which his or her opinion is based and the reasons for his or her opinion.") The jury was instructed generally on the consideration of expert testimony, *see e.g.* ECF No. 38-21 at 84-85 ("You must consider the opinion, but you are not required to accept it as true or correct. The meaning and importance of any opinion are for you to decide. In evaluating the believability of an expert witness, follow the instructions about the believability of witnesses generally."), and specifically as to Dr. Urquiza. *See id.* at 85 ("You have heard testimony from Dr. Anthony Urquiza regarding child sexual abuse accommodation. [¶] Dr. Urquiza's testimony about general characteristics of child sexual abuse victims as a class is not evidence that defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not [Jane Doe 1's and Jane Doe 2's] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of their testimony.").

Given the jury was explicitly instructed they were not required to accept the expert's opinion as true or correct *and* Dr. Urquiza's testimony was not evidence of guilt but only went to their evaluation of the victims' conduct and believability, Petitioner fails to show the claimed error in this regard had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Claim 66 does not merit habeas relief under even a de novo review.

### d. Claim 67

Petitioner contends the prosecution "allowed the probation officer to state the incorrect outcome of [his] prior conviction and repeated [his] comments from [the] presentence interview into court sentencing," in violation of his right to due process and a fair trial. ECF No. 23-4 at 27.

First, as to his assertion the probation officer stated the "incorrect outcome" of his prior convictions at sentencing, Petitioner indicates he had two prior convictions, "petty theft (misdemeanor) and burglary (felony) but both misdemeanors." ECF No. 38-50 at 72. While the probation officer did not testify at sentencing, the trial court stated it had read

and considered that report, *see* ECF No. 38-23 at 6, which appears to have accurately indicated both prior cases resulted in misdemeanor convictions. *See* ECF No. 38-2 at 22-23. Thus, the Court finds no evidence to sustain Petitioner's contentions in this respect.

He next contends "[u]nder federal law, the probation officer is not to state any statements from the defendant during the probation interview, in the sentencing hearing," ECF No. 23-4 at 27, and cites his comment at that interview about laughing at naked children. But again, the probation officer did not testify at sentencing. *See generally* ECF No. 28-23. Petitioner also fails to cite to any authority supporting his contention his own statements were inadmissible or should not have been considered in sentencing and for the reasons previously discussed, fails to show prejudice given the statute under which he was sentenced. *See e.g.* Claims 1, 25, *supra*. Nor does he show the asserted error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Thus, habeas relief is unavailable on Claim 67 under even a de novo review.

### e. Claims 68 and 69

Petitioner contends the prosecution "allowed character testimony of alleged victim(s) and witnesses into trial and preliminary hearings" (Claim 68) and "allowed false testimony into trial for convictions" (Claim 69), which violated his right to due process and to a fair trial. ECF No. 23-4 at 28-29.

As to Claim 68, he asserts "character testimony is not allowed, under federal law, regarding the victim(s)," *id.* at 28, and cites to innocuous portions of trial testimony, including but not limited to the victims' testimony about their favorite school subjects, the victim's aunt testimony about the difference between her name and her brother's (Angelica and Angel), the victims' small sizes and nicknames, the victims' devastation at their parents' divorce, and the prosecutor's statements at sentencing. ECF No. 38-50 at 73. But he fails to offer legal or factual support showing this testimony was somehow inappropriate or inadmissible and fails to show the contested evidence had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

3:22-cv-00556-JES-VET

With respect to Claim 69, Petitioner asserts the "exhibits" he has submitted on habeas corpus "support false testimony," ECF No. 23-4 at 29, and again appears to reiterate his allegations that inconsistencies in witness statements show several witnesses, including both victims, the victim's father, and the victim's aunt, testified falsely. ECF No. 38-50 at 74. But again, inconsistencies alone do not demonstrate a witness' trial testimony was false and the Court elsewhere in this Order rejects his claims as to each of these witnesses. *See* Claims 53, 64, 99-100, *infra* and *supra*; *see Croft*, 124 F.3d at 1119 ("The fact that a witness may have made an earlier inconsistent statement, or that other witnesses have conflicting recollections of events, does not establish that the testimony offered at trial was false.") He also again cites to investigator Burhans' trial testimony about her belief in his guilt, which was raised as a separate claim of error and rejected, *see* Claim 37, *supra*, and now also references the prosecutor's argument to the jury asking them to find Petitioner guilty. *See* ECF No. 38-50 at 74. Yet, Petitioner fails to explain how either constituted "false testimony," much less provides grounds for federal habeas relief. *See Greenway*, 653 F.3d at 804, citing *James*, 24 F.3d at 26. Neither Claim 68 nor 69 merit habeas relief even under a de novo review.

#### f.  Claims 96, 97, and 99

Petitioner contends Jane Doe 1 provided "exculpative prior statements" (Claim 96), "exculpative trial testimony" (Claim 97) and "inconsistent statements prior to trial testimony" and thus testified "falsely" (Claim 99), in violation of his right to due process and a fair trial. ECF No. 23-5 at 10-11, 13; *see also* ECF No. 38-50 at 101-02, 104. With respect to Claims 96 and 99, he contends the trial court should have admitted "the supporting evidence" of those previous statements and the failure to do so prejudiced his defense. ECF No. 23-5 at 10, 13. As to Claim 97, Petitioner contends several charged counts should have been dismissed because of inconsistencies in the victim's statements and the lack of corroborating testimony, despite the DNA evidence. *Id.* at 11.

Again, inconsistencies alone are insufficient to sustain a conclusion that a witness' trial testimony was false. *See Croft*, 124 F.3d at 1119 ("The fact that a witness may have

made an earlier inconsistent statement, or that other witnesses have conflicting recollections of events, does not establish that the testimony offered at trial was false.") Nor does Petitioner persuasively show prejudice from the failure to admit "supporting evidence" of the prior statements at trial (presumably transcripts and/or recordings of the victim's prior statements), given the defense thoroughly cross-examined Jane Doe 1, *see* ECF No. 38-19 at 26-74, and elicited her admissions to making numerous differing statements prior to receiving the DNA results, first about the boy in the alley impregnating her and later about her initiating sex with Petitioner while he was drunk and asleep in order to get back at her aunt. *See id.* at 66-74. He fails to explain how the "supporting evidence" of those same prior statements would have made a difference to the outcome of the proceedings.[21] Because the jury was apprised of the substance of these prior statements and had that evidence when they rendered their verdict, Petitioner fails to show any error arising from the absence of additional evidence concerning those very same statements, had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. As to his contention several counts should have been dismissed because of these inconsistencies and lack of corroborative testimony, his claims of insufficient evidence are rejected for the reasons previously discussed in Claims 60 and 62, *supra*. Habeas relief is thus unavailable on Claims 96, 97 or 99 under even a de novo review.

### g.  Claims 98 and 100

Petitioner also contends Jane Doe 2 provided "exculpative trial testimony" (Claim 98) and "inconsistent statements prior to trial testimony" and thus testified "falsely" (Claim 100), in violation of his right to due process and a fair trial. ECF No. 23-5 at 12, 14; *see also* ECF No. 38-50 at 103, 105. As to Claim 98, he contends several charged counts should

---

[21] Petitioner's claim of error as to several allegedly "exculpatory prior statements," such as Jane Doe 1's sex education course, the collage of baby photos she sent to him, and her alleged communications with his brother and girlfriend, some of which were excluded from trial, were separately raised and are addressed elsewhere. *See* Claims 18, 58-59.

have been dismissed because of inconsistencies in the victim's statements and the lack of corroborating testimony or physical evidence. ECF No. 23-5 at 12. As to Claim 100, he contends the trial court should have allowed in "the supporting evidence" of the inconsistent statements and alleges the failure to do so prejudiced his defense. *Id.* at 14.

These claims fail for the same reasons as the prior set of claims concerning Jane Doe 1. First, as previously noted, inconsistencies alone are insufficient to sustain a conclusion a witness' trial testimony was false. *See Croft*, 124 F.3d at 1119 ("The fact that a witness may have made an earlier inconsistent statement, or that other witnesses have conflicting recollections of events, does not establish that the testimony offered at trial was false.") He also again fails to show prejudice from the failure to allow "supporting evidence" of the inconsistencies, as Jane Doe 2 was also thoroughly cross-examined about her prior denials of knowing anything had taken place between Petitioner and her sister, her prior denials anything inappropriate had taken place between Petitioner and herself, her delay in reporting, her inability to recall certain details about the incidents, and her prior lies to her father and aunt to get out of trouble. ECF No. 38-19 at 91-107. Because the jury was clearly aware of the inconsistent statements and had that evidence before them, Petitioner fails to show the lack of "supporting evidence" on the same subject had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. As to his contention several counts should have been dismissed because of these inconsistencies and due to lack of testimonial corroboration or physical evidence, his claims of insufficient evidence are rejected for the reasons previously discussed in Claims 60 and 62, *supra*. Habeas relief is unavailable on Claims 98 and 100 under even a de novo review.

### h. Claims 108 and 109

Petitioner contends "forensic expert" Jasmin Kaeser, a police criminalist, "testified illegally and invalid[ly]" (Claim 108) and Dr. Julia Kabacka, an OBGYN, "provided exculpative testimony during trial" (Claim 109) in violation of his federal rights to due process and a fair trial. ECF No. 23-6 at 8-9.

3:22-cv-00556-JES-VET

With respect to Kaeser, Petitioner claims her testimony "may be legal" under state law but it "is not legal under federal law" and "without her testimony, the prosecution would be forced to drop the case or risk losing in trial." *Id.* at 8. Specifically, Petitioner appears to take issue with Kaeser's experience, asserting Kaeser had been a forensic expert for less than three years as of the 2016 preliminary hearing and had only testified in a few previous cases, while the requirement for testifying was 3 years on the job. ECF No. 38-50 at 113. Setting aside Petitioner's failure to cite any support for this contention, Kaeser was found qualified by the trial court and had been in her position for well over three years at the time of her 2019 trial testimony. The remainder of Petitioner's assertions appear to contest the substance of Kaeser's testimony, specifically about probabilities, a "potential hit," her alleged failure to testify the samples were sealed and secured throughout each step of the process, and the use of CODIS. *Id.* However, most of these allegations were raised as separate claims in the FAP and are addressed elsewhere in this Order. *See e.g.* Claims 30, 46, 61, 105, *supra* and *infra*. In any event, Petitioner fails to show any prejudicial error, as the DNA was far from the only evidence introduced against him given both victims testified Petitioner forced them to have sexual intercourse with him, and several other lay and expert witnesses also testified at trial.[22] *See* e.g. ECF Nos. 38-18 through 38-21 (trial witness testimony); *see e.g. Brown*, 558 U.S. at 136 (rejecting claim for relief based on inaccuracies in testimony about DNA where "ample DNA and non-DNA evidence in the record adduced at trial supported the jury's guilty verdict.").

As to Dr. Kabacka, Petitioner appears to contend he "has a right to review" and examine the witness concerning Jane Doe 1's "medical files," which would have provided the jury with more information as to whether Jane Doe 1 was "truly injured beyond what is normal for any pregnancy." ECF No. 23-6 at 9. He similarly appears to take issue with

---

[22] Again, Petitioner does not appear to contest that he is the father of Jane Doe 1's baby, although Petitioner contends that he is the victim, who Jane Doe 1 took advantage of while he was drunk and asleep. *See* ECF No. 23-1 at 15, 19; *see also* ECF No. 23-19.

Dr. Kabacka's experience, as she had been practicing for four years, but this contention fails for the same reasons as those concerning Kaeser, and the trial court also found this witness qualified. He also contests the normalcy of several of the matters the physician testified about, including but not limited to the amount of time Jane Doe 1 pushed in delivery, the timing of the placenta, the lacerations she suffered, the time before her hospital discharge, the use of medications/epidural, gestational hypertension, and generally asserts "everyone copes differently" in labor. ECF No. 38-50 at 114. To his contention about the files, the record reflects Dr. Kabacka testified as to her observations and opinions concerning Jane Doe 1's pregnancy and delivery aided by reference to the medical team's notes on those matters. *See* ECF No. 38-18 at 8-39; *see id.* at 31 (Dr. Kabacka testified the notes include documentation made by team members, which included doctors, anesthesiologists and nurses). The physician also testified in detail about Jane Doe's injuries from labor and delivery, including a "first-degree laceration" which was repaired with "[t]wo vicryl sutures," a "labial laceration" and an epidural given for pain. *Id.* at 26-30. Petitioner fails to demonstrate additional medical files would have provided different information than the physician's testimony and/or the medical team's notes provided, nor does he show supplementary information would have somehow been to his benefit. To the extent Dr. Kabacka made *unidentified* "exculpatory statements" during her trial testimony, it could not have resulted in prejudice because such statements, which would have assisted his defense if "exculpatory," would have clearly been before the jury to consider.

Petitioner ultimately fails to show either asserted error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Thus, even under a de novo review, habeas relief is not available on Claims 108 or 109.

### 5. Claims Alleging Error/Misconduct by Law Enforcement

Petitioner alleges numerous instances of law enforcement errors and/or misconduct (Claims 16, 24, 27-29, 31, 34, 41, 45-46, 52, 55, 106-07, 110), and *Miranda* violations (Claims 14 and 32). The Court's review is de novo, informed by any relevant state court reasoning and analysis.

As relevant to several of the claims discussed below, "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 488-89 (1984) (footnote and internal citation omitted). Relatedly, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Moreover, and as previously noted, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles*, 514 U.S. at 437.

### a. Claims 16, 24 and 45

Petitioner contends San Diego Sheriff's Department jail personnel "failed to preserve and also lost material evidence and caused damage to property" (Claim 16), there was "misconduct during response to 911 call" by a San Diego police officer and evidence was not preserved (Claim 24), and Sheriff's Department personnel "delayed" in assisting Petitioner with filing a police report, resulting in a failure to preserve exculpatory evidence (Claim 45). ECF Nos. 23-1 at 10-11, 23-2 at 3-4, 23-3 at 24-25.

First, in Claim 16, Petitioner asserts when he was transported from the jail to a hospital for surgery in May 2018, his belongings were packed to accompany him but did not arrive with him and were instead delivered several weeks later during his recovery in a jail medical facility, "all mixed up in plastic bags" with "soiled," "ripped" and missing documents, including text messages and emails from prosecution witnesses. ECF No. 23-1 at 10-11. Yet, he does not show these emails and text messages were "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 488-89. Indeed, Petitioner acknowledges he

1    unsuccessfully sought relief for this lost evidence prior to trial and then too, failed to

2    sufficiently explain to the trial court why he was unable to obtain additional copies of the

3    evidence and conceded he had not made any effort to subpoena the missing documents.

4    *See* ECF No. 23-67 at 16-17, Exh. SS to FAP (transcript of July 30, 2018, motion hearing).

5    Petitioner now similarly contends the "emails reveal the intent and confession of the

6    alleged victim being the perpetrator of the crime, not the defendant," ECF No. 23-1 at 10,

7    but this again appears to refer to Jane Doe 1's prior account of events, in which she

8    indicated she had sex with Petitioner while he was drunk and asleep. Given Jane Doe 1

9    was cross-examined on this very same matter, *see* ECF No. 38-19 at 66-74, Petitioner fails

10   to show the lost emails or texts were both "exculpatory" and not "comparable" to other

11   available evidence, *Trombetta*, 467 U.S. at 488-89, and does not show any error arising

12   from the loss of the emails and texts had a "substantial and injurious effect or influence in

13   determining the jury's verdict." *Brecht*, 507 U.S. at 637.

14        Next, as to Claim 24, Petitioner contends the San Diego police officer who

15   responded to the initial 911 call at the victims' home failed to make an "audio or video"

16   recording of the interview with Jane Doe 1 to provide to the defense, "[o]nly a summarized

17   transcript and not a full complete/detailed transcript was provided," and claims an unrelated

18   audio/video of an arrest the same police officer assisted with was inadvertently included in

19   his discovery materials. ECF No. 23-2 at 3-4. But Petitioner fails to explain what, if any,

20   exculpatory information was not preserved in the "summarized transcript" provided to the

21   defense nor does he allege any "bad faith" on the part of the officer which resulted in the

22   failure to preserve any exculpatory or even "potentially useful" evidence. *See Youngblood*,

23   488 U.S. at 58. Indeed, he acknowledges the defense was aware of Jane Doe 1's prior

24   inconsistent accounts of events, which she was cross-examined on at trial. *See* ECF No.

25   38-19 at 66-74. Thus, not only does Petitioner fail to show any federal error in this regard,

26   he also does not allege any error arising from the failure to make and provide the defense

27   with an audio and/or video of the initial interview had a "substantial and injurious effect or

28   influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

Turning to Claim 45, Petitioner does not show the Sheriff Department's "delayed" assistance in helping him to file his own police report against Jane Doe 1 and her aunt resulted in any failure to preserve exculpatory evidence. Petitioner has included reports he eventually made concerning the alleged assaults as exhibits, *see* ECF No. 23-19 at 6-12, Exh. D to FAP, and in at least one report he acknowledges "there were no witnesses and no evidence that would be able to back up his claims." *Id.* at 11. While the reports were taken in 2018 and were based on incidents allegedly occurring between 2014 and 2016, *see id.* at 6-12, he does not articulate what, if any, evidence was "not preserved" because the reports were made in 2018 rather than in 2016. Given he ultimately made the reports and admits there was a lack of corroborative evidence for his claims, he also fails to show this "lost material evidence" was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 488-89. He also does not attempt to demonstrate prejudice and instead simply offers a conclusory assertion the Sheriff Department's actions were akin to "interfering with the chain of custody." ECF No. 23-3 at 24. This is insufficient to state a claim for relief. *James*, 24 F.3d at 26. At any rate, this evidence was presented to the jury, as Jane Doe 1 was cross-examined on her prior account that she initiated sex with Petitioner while he was drunk and asleep in order to get back at her aunt, *see* ECF No. 38-19 at 66-74, while the victims' aunt Angelica De La Cruz testified about her sexual relationship with Petitioner, admitted she usually initiated the activity, denied it was ever while he was sleeping, said she did not "mind" when he wanted to stop having sex and denied ever raping him. *See* ECF No. 38-18 at 116-120. As such, Petitioner also fails to show any error arising from the delay in producing these reports had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. For the reasons discussed above, even under a de novo review, habeas relief is not available on Claims 16, 24 or 45. *See Trombetta*, 467 U.S. at 488-89; *Youngblood*, 488 U.S. at 58; *Brecht*, 507 U.S. at 637.

///

///

### b. Claim 27

Petitioner asserts a San Diego police detective conducted an illegal search and seizure, as he was not "presented" with "nor signed" any consent form, did not give a verbal yes or no, and the detective failed to present a warrant when his DNA swab was taken during his August 3, 2016, arrest and detention. ECF No. 23-2 at 9-10. He requests a new trial or dismissal of the case because of this asserted federal violation. *Id.*

Long-standing and clearly established federal law provides "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes omitted); *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 n.3 (9th Cir. 1980) ("[A] fourth amendment claim is not cognizable as a basis for federal habeas relief, where the state has provided an opportunity for full and fair litigation of the claim."), citing *Powell*, 428 U.S. 465; *see also Newman v. Wengler*, 790 F.3d 876, 881 (9th Cir. 2015) ("The *Stone v. Powell* doctrine survives the passage of AEDPA and therefore bars [Petitioner's] claim because he had a full and fair opportunity in state court to litigate his Fourth Amendment claims.").

Here, California provides a defendant with the opportunity to litigate the propriety of a warrantless seizure, as Petitioner appears to allege occurred here. *See* Cal. Penal Code § 1538.5(a)(1) (providing in relevant part that "A defendant may move for the return of property or to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on either of the following grounds: (A) The search or seizure without a warrant was unreasonable.") Because Petitioner clearly had an avenue with which to litigate this contention in state court, federal habeas relief is unavailable regardless of whether he sought to challenge this seizure in state court and regardless of the correctness of any state court decision on the matter. *See Ortiz-Sandoval*, 81 F.3d at 899 ("The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided."); *see also Gordon v. Duran*,

3:22-cv-00556-JES-VET

895 F.2d 610, 613-14 (9th Cir. 1990) ("Given that [defendant] had an opportunity in state court for 'full and fair litigation' of his fourth amendment claim, the Constitution does not require that [defendant] be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."), citing *Powell*, 428 U.S. at 481-82. Federal habeas relief is thus foreclosed on Claim 27.

### c.  Claims 28-29 and 46

Petitioner contends San Diego police detectives failed to show a "sufficient chain of custody" at the preliminary hearing as to DNA swabs taken from the baby (Claim 28) and from the other individuals tested (Claim 29) and forensic expert Kaeser similarly "failed to show sufficient chain of custody" at trial for the DNA swabs tested (Claim 46), which violated his federal right to due process. ECF No. 23-2 at 11-14, ECF No. 23-4 at 1-2.

To the extent Petitioner again raises contentions pertaining to the lack of warrant or his failure/refusal to consent to a DNA swab, habeas relief is unavailable for the reasons just stated. *See* Claim 27, *supra*. To the extent he contends the trial court erred in admitting the evidence at the preliminary hearing and/or trial, claims of state law error in the admission of evidence are not reviewable on federal habeas corpus and federal case law provides that chain of custody issues go to the "weight" rather than admissibility of the evidence. *See* Claim 30, *supra*, citing *Holley*, 568 F.3d at 1101 ("Simple errors of state law do not warrant federal habeas relief."), *McGuire*, 502 U.S. at 67, and *Solorio*, 669 F.3d at 954 ("'The possibility of a break in the chain of custody goes only to the weight of the evidence.'"), quoting *Harrington*, 923 F.2d at 1374.

Ultimately, however, these claims fail for lack of merit because Petitioner's assertions are wholly conclusory. He appears to contend that because law enforcement personnel and witnesses did not specifically document and testify the DNA samples taken from him and others were "secure" during *each and every* step of the way during and after collection *and* during the later testing and comparison (and the entire collection procedure was not both video and audio taped), there exists a *possibility* the evidence was not secured and was thus vulnerable to unspecified tampering. *See* ECF Nos. 23-2 at 11-14, 23-4 at 1-

2. Because he only speculates tampering may have occurred here, these claims fail for the reasons previously noted as to his other unsupported and conclusory assertions. *Greenway*, 653 F.3d at 804, citing *James*, 24 F.3d at 26 ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.") Thus, even under a de novo review, habeas relief is not available on Claim 28, 29 or 46.

### d.  Claims 31 and 34

Petitioner contends two United States Marshals "conducted a false and illegal arrest," citing the lack of arrest warrant or search warrant for the DNA swab and the lack of "footage" of the arrest such as body cam, recordings or transcripts (Claim 31) and the San Diego Police "had no probable cause to arrest, detain, and/or hold" him beyond 48-72 hours given the lack of an arrest warrant and similarly had no warrant or consent form for the DNA swab (Claim 34), and requests a new trial or dismissal of the case because of the asserted federal violations. ECF No. 23-2 at 17-18, ECF No. 23-3 at 2-3.

First, as the Court previously discussed with respect to Claim 27, because California provides a defendant with the opportunity to litigate this type of a claim, *see* Cal. Penal Code 1538.5(a)(1), federal habeas relief is unavailable regardless of whether he sought to litigate this Fourth Amendment issue and regardless of the outcome of any such challenge. *See Ortiz-Sandoval*, 81 F.3d at 899; *see also Gordon*, 895 F.2d at 613-14, citing *Powell*, 428 U.S. at 481-82. Second, as to his requested remedy, there exists a long-standing "established rule that illegal arrest or detention does not void a subsequent conviction." *Gerstein*, 420 U.S. at 119 (citations omitted); *see also Terrovona v. Kincheloe*, 852 F.2d 424, 427 (9th Cir. 1988) ("An illegal arrest or detention does not void a subsequent conviction."), citing *Gerstein*, 420 U.S. at 119, and *United States v. Alvarez*, 810 F.2d 879, 884 (9th Cir. 1987). Thus, even were this claim cognizable on federal habeas review, his request for a new trial or dismissal of the case is clearly a non-starter. For the reasons discussed, federal habeas relief is not available on either Claim 31 or Claim 34.

///

///

### e. Claim 41

Petitioner claims Detective Kindred conducted an "improper and faulty photo lineup procedure" and failed to properly identify him at trial. ECF No. 23-3 at 16-17. Specifically, he contends he was not provided with lineup photos in discovery and was provided "no video only audio" concerning Kindred's interview with Jane Doe 1 when the photo lineup was conducted, which prevented him from determining both suggestibility and whether numerous photos were shown or only his own photo. *Id.* at 17. He also claims when Kindred testified at trial, the witness could not see Petitioner's "complete body" and the given description of Petitioner differed from Jane Doe 1's, who he claims was "coached" on how to describe him, noting again she had also not identified him at the October 27, 2016, preliminary hearing. *Id.*

Regardless of how the photo identification procedure was memorialized, Petitioner acknowledges he was provided discovery of the interview and identification. He fails to suggest or show the identification procedure employed by the police in this instance was susceptible to challenge, as he was clearly well-known to both victims. *See* ECF No. 38-44 at 2 (as the state appellate court recounted on direct appeal: "The defendant was in an on-again, off-again romantic relationship with the sisters' aunt. After the sisters moved in with their aunt, the defendant became involved in the sisters' lives. He regularly played with them, picked them up from school, and babysat them while the other members of the family were at work. Jane Doe 1 referred to the defendant as her 'Tio.'"); *see e.g. Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (factors for a reviewing court to consider in deciding the reliability, and thus admissibility, of an identification "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation," against which is "to be weighed the corrupting effect of the suggestive identification itself."), citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). Nor does Petitioner persuasively explain how the witnesses' differences in describing him, or Jane Doe 1's asserted failure to identify him

at a preliminary hearing, resulted in prejudice *at trial*. Any disparity in the trial witnesses' descriptions or identifications were presented to the jury. Finally, the record reflects Jane Doe 1 did not testify at the contested preliminary hearing, and thus it appears she could not have identified (or failed to identify) Petitioner at that proceeding. *See* ECF No. 38-4, Exh. AA to FAP (copy of October 27, 2016, preliminary hearing transcript).

Even were Petitioner able to establish, rather than speculate, that the photo identification procedure was somehow improper, faulty or suggestive, he fails to show any such error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Thus, even under a de novo review, habeas relief is not available on Claim 41.

### f. Claim 52

In this claim, which appears related to Claim 58's allegations of prejudicial pretrial publicity attributed to the prosecution, Petitioner alleges the San Diego Sheriff "unduly prejudiced" him by "pretrial and trial publicity" in violation of his presumption of innocence and federal rights to due process and a fair trial. ECF No. 23-4 at 12. Specifically, he alleges the Sheriff's "Who's In Jail" website erroneously listed "over 20 counts of PC 288(a)" which prospective jurors could have accessed prior to being sworn and later instructed not to use the internet. *Id.*; *see also* ECF No. 38-50 at 57. He contends "[n]o proof needed to show evidence any juror accessed the website" but claims any who may have would have unfairly had a "more negative" view of him. ECF No. 23-4 at 12.

Again, the Supreme Court has held that while "the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors . . . It is not required, however, that the jurors be totally ignorant of the facts and issues involved," *Irvin*, 366 U.S. at 722, and has rejected an assertion that "the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality," and instead held: "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* at 723.

This claim, like Claim 58, *supra*, also fails for lack of merit because Petitioner does not assert, much less demonstrate, either that any prospective juror or actual juror viewed the contested information but instead contends the mere possibility of such viewing is sufficient to demonstrate a violation. *See* ECF No. 23-4 at 12. Moreover, as discussed above, the trial court thoroughly instructed the jurors on the presumption of innocence and specifically directed them not to investigate the case, including internet use, and there is no record indicating the jurors failed to understand or follow those instructions. *See* ECF No. 38-1 at 170 (instruction not to investigate); *see id.* at 173 ("The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial."); *see also Weeks*, 528 U.S. at 234; *Richardson*, 481 U.S. at 211. Given the lack of any indication any prospective jurors, much less jurors who served, viewed the contested information, when taken together with the clear Supreme Court instruction that jury impartiality does not require "that the jurors be totally ignorant of the facts and issues involved," *Irvin*, 366 U.S. at 722, and the jury instructions provided in this case, *see e.g.* ECF Nos. 38-1 at 170, 173, the Court finds no likelihood of error, much less prejudice. As such, Petitioner does not merit habeas relief even under a de novo review on Claim 52.

### g. Claim 106

Petitioner contends SDPD Detective Kindred committed misconduct during interviews of prosecution witnesses because "suggestibility and coercion is not allowed under federal law" and "without the statements elicited thru suggestibility and coercion, the case would be weak to prosecution and conviction." ECF No. 23-6 at 6. He notes Kindred told Angelica De La Cruz Petitioner was "not your friend," was "slick" and "lied to you," and told a story about himself to Jane Doe 1 to relate to her.[23] ECF No. 38-50 at

---

[23] Petitioner also repeats his allegations about inconsistent witness statements, specifically as to what Jane Doe 1 told Kindred in initial interviews versus her trial testimony, alleged errors with respect to the lineup, and the lack of audio/video of "ALL interviews of

111. Yet, Petitioner fails to explain how these statements were somehow improper, nor does he specifically articulate how the purported misconduct impacted the outcome of the trial, particularly given the contested statements were made during pre-trial witness interviews, not at trial.[24] "[Petitioner's] cursory and vague claim cannot support habeas relief." *Greenway*, 653 F.3d at 804, citing *James*, 24 F.3d at 26. Habeas relief is thus unavailable on Claim 106 even under a de novo review.

### h. Claim 107

Petitioner alleges the detectives in his case "conducted a sloppy and tunnel vision investigation," "[t]he acts by detectives in this claim may be considered legal under California law but are illegal of [sic] the law on the federal rules," and "[i]f not for these illegal acts, the case made by the prosecution would collapse." ECF No. 23-6 at 7. Specifically, he faults the police for focusing on him and failing to further investigate "Josh," failing to search all computers and cell phones used by the victims and their family and notes an unrelated arrest video was mixed in with his discovery.[25] ECF No. 38-50 at 112. But Petitioner fails to identify any actual "illegal acts" committed by the investigating police detectives, nor does he explain how any such contested actions are legal under state

---

witnesses," ECF No. 38-50 at 111, each of which was raised as separate claims in the FAP and have been addressed elsewhere. *See* Claims 18, 41, 59, 99, *supra*.

[24] While Petitioner offers numerous case citations, he fails to explain their relevance. *See* ECF No. 38-50 at 111. Upon cursory review, none appear relevant, as several concern problematic in-court identifications following tainted lineups or suggestive photo arrays, *see Young v. Conway,* 698 F.3d 69 (10th Cir. 2012), *U.S. v. Smith*, 156 F.3d 1046 (10th Cir. 1998), *U.S. v. Emanuele*, 51 F.3d 1123 (3rd Cir. 1995), and *U.S. v. Wade*, 388 U.S. 218 (1967), one discusses the denial of assistance of counsel, *see Crutchfield v. Wainwright*, 803 F.2d 1103 (11th Cir. 1986), while another concerns *Miranda*, *see Simpson v. Jackson*, 615 F.3d 421 (6th Cir. 2010), and *Brady*, which is clearly not the issue here.

[25] Yet again, Petitioner repeats contentions raised as other claims in the FAP and rejected elsewhere in this Order, including but not limited to Jane Doe 1's social media activity, failure to perform a rape kit exam on the victims, the non-consensual DNA swab, and the audio/video of witness interviews and his arrest. *See e.g.* Claims 18, 30, 59, 105, *supra*.

law but not under federal law. While he offers a cursory reference to *Brady* and *Kyles*, *see id.*,[26] he fails to show the police or prosecution withheld exculpatory information. *See also* Claim 59, *supra*. Finally, he does not explain how any such acts had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Again, vague allegations cannot sustain a claim for habeas relief. *See e.g. James*, 24 F.3d at 26. Even under a de novo review, habeas relief is not merited on Claim 107.

### i.  Claims 14 and 32

Petitioner contends that during his August 3, 2016, arrest, two United States Marshals (Claim 32) and two police detectives (Claim 14) each violated his *Miranda* rights by failing to advise him of his rights prior to questioning.

The Supreme Court has long held "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444. To that end, an individual in custody "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires," and "unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Id.* at 479 (footnote omitted).

Petitioner acknowledges "no evidence was adduced" from the questioning but nonetheless asserts a *Miranda* violation "is not dependant" on whether a statement results from the questioning, but simply from the questioning itself prior to the provided warnings; he requests a "new trial" or "dismissal of case" as a remedy for this asserted violation. ECF

---

[26] Petitioner also fails to explain his cursory citation to *Hamling v. United States*, 418 U.S. 87, 117 (1974), a case which appears in any event clearly distinguishable on the facts given *Hamling* concerned a prosecution for mailing obscene material.

No. 23-1 at 6. However, the Supreme Court has plainly provided that the remedy for this violation, or the prosecution's inability to demonstrate the proper advisal of rights was provided, to be that "no evidence obtained as a result of interrogation can be used against him." *Miranda*, 384 U.S. at 444. Here, Petitioner explicitly acknowledges he did not give any statement and does not identify any statement introduced against him at trial. As such, even were he able to show one or more law enforcement entities attempted to question him prior to advising him of his rights, he demonstrates no harm arising from any such alleged violation and certainly nothing which impacted the outcome of his trial proceedings, much less had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Accordingly, habeas relief is not available on Claims 14 or 32 even under a de novo review of these claims.

### 6. Claims Alleging Ineffective Assistance of Trial Counsel

Petitioner alleges numerous errors resulting in prejudicially deficient performance by Marshall-Petry, who represented him during pretrial proceedings apart from when he proceeded pro per (Claims 13, 20, 87-94 and 112) and by Suwczinsky, who represented him at trial and during sentencing (Claims 6, 8, 12, 17, 33, 40, 43, 50, 71 and 73-83).

"[A] defendant must show both deficient performance by counsel and prejudice in order to prove that he has received ineffective assistance of counsel." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. Further, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). To demonstrate prejudice, a petitioner must show "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. Moreover, when a federal habeas court is reviewing a claim of ineffective assistance of counsel previously adjudicated on the merits by a state court:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, *supra*, at 410, 120 S.Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105. As discussed above, because these claims were adjudicated on the merits, AEDPA deference applies.

### a. Claims 13, 20, 87-94 and 112

Petitioner contends counsel Marshall-Petry, who represented him during pretrial proceedings apart from when he proceeded pro per, failed to: investigate and uncover mitigating factors for litigation (Claim 13), thoroughly advise him and move for a speedy trial (Claim 20), consult with and hire experts (Claim 87), file pretrial motions (Claim 88), failed to object to a victim's failure to identify Petitioner (Claim 89), adequately argue that someone else committed the crime (Claim 90), contact and secure witnesses (Claim 91), understand the law (Claim 92), communicate the prosecution's deal offer (Claim 93), argue coercion, duress, or suggestibility in court hearings (Claim 94), and asserts she made false and contradictory statements during court hearings (Claim 112).

First, as to Claim 13, Petitioner contends Marshall-Petry failed to investigate and uncover mitigation, specifically by failing to request a "psych assessment" to be used at sentencing for mitigation purposes and possible probation, failing to investigate his background, including his education, military service, job history, family, high school athletic success and being a "first responder" at a DUI fatal crash and another highway vehicle accident, and failing to subpoena character witnesses. ECF No. 23-1 at 4-5. Yet, he fails to explain how Marshall-Petry can be faulted for any such failures, as she only represented him during preliminary proceedings. Even to the extent he can show counsel rendered deficient performance in one or more respects, he fails to show prejudice. Again, because Marshall-Petry did not represent him at either trial or at sentencing, these alleged failures do not present a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Court next turns to Claim 20, in which Petitioner faults Marshall-Petry for failing to properly and "thoroughly" advise him and move for a speedy trial. ECF No. 23-1 at 18-19. As previously discussed as to Claims 21 and 22, *see supra*, the Court found Petitioner failed to state a violation of his federal right to a speedy trial by either the trial court or prosecution. *See e.g. Barker*, 407 U.S. at 530; *see also Brillion*, 556 U.S. at 91, 94. He concedes counsel told him she needed more time to prepare, but he now asserts she failed to properly advise him of the weakness in the prosecution's case and contends the delay allowed the prosecution to build a stronger case by adding additional charged counts against him. ECF No. 23-1 at 18-19. Petitioner acknowledges he waived his right to a speedy trial, albeit "by defense counsel's advice," ECF No. 23-1 at 23, but the record also reflects he represented himself during two separate pre-trial periods, waived time during each of those periods, and waived time on both occasions after relinquishing his right to represent himself. *See* ECF No. 38-16 at 15-16 (trial court recounting timeline of pre-trial proceedings, including time waivers and periods of self-representation). Even assuming without deciding Petitioner can somehow show counsel acted deficiently, he cannot establish prejudice, particularly in view of his own numerous time waivers. *See Strickland*,

93

466 U.S. at 694 (prejudice requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

In Claim 87, Petitioner alleges Marshall-Petry failed to consult with and hire experts. ECF No. 23-5 at 1. He contends counsel should have consulted with and hired a urologist to testify about his penis function, a psychologist to "conduct assessments" and write a report "for mitigation at sentencing," a "child behavior expert" to counter the prosecution's expert, a forensic expert on DNA testing and procedures, an OB-GYN to testify on adult versus youth pregnancy, a handwriting expert to examine the victims' letters, a "medical expert" to testify about the effect of diabetes, and notes counsel failed to subpoena child protective service worker Rouse, who had interviewed Jane Doe 1. ECF No. 38-50 at 92.

Again, because Marshall-Petry only represented Petitioner during pretrial proceedings and not at trial, the Court need not determine whether counsel failed in these respects because he does not show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" at either trial or sentencing. *Strickland*, 466 U.S. at 694; *see also id.* at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.") Claim 87 plainly fails for lack of merit.

In Claim 88, Petitioner contends Marshall-Petry failed to file several pretrial motions between August 2016 and January 2018, ECF No. 23-5 at 2, namely a *Trombetta*/*Youngblood* motion premised on the loss of evidence by the Sheriff's Department, a motion to set aside several charged counts pursuant to section 995 based on a lack of physical evidence, a motion to suppress DNA evidence, a motion to sever charged counts, a motion to compel discovery of the victims' and Petitioner's social media and emails, and a motion to subpoena/call witnesses. *See* ECF No. 38-50 at 93. Yet, the record reflects Petitioner himself twice raised the *Trombetta*/*Youngblood* motion while he was pro

per, which was twice denied, and the Court elsewhere rejects his claim of ineffective assistance of trial counsel for failing to re-raise that motion. *See* Claim 17, *infra*. Similarly, the Court rejects his claim of ineffective assistance of counsel for failing to file a motion to suppress the DNA evidence. *See* Claim 50, *infra*. Petitioner also appears to have twice brought a motion under section 995 while he was pro per, which was twice denied. *See* ECF No. 38-3 at 31-32. Based on the lack of record indication as to the reason for this counsel's actions or lack of action, he fails to overcome the required presumption counsel's decisions "fall[] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. While he also generally asserts success on these motions would have bolstered his defense and increased the potential for a favorable outcome, his failure to demonstrate any likelihood of prevailing on these motions (and given at least a few of these motions were later brought unsuccessfully) also precludes relief. *See Leavitt v. Arave*, 646 F.3d 605, 613 (9th Cir. 2011) ("Where the defendant claims ineffective assistance for failure to file a particular motion, he must 'not only demonstrate a likelihood of prevailing on the motion, but also a reasonable probability that the granting of the motion would have resulted in a more favorable outcome.'"), quoting *Styers v. Schriro*, 547 F.3d 1026, 1030 n. 5 (9th Cir. 2008). Claim 88 thus fails for lack of merit under *Strickland*.

In Claim 89, Petitioner contends counsel failed to object to Jane Doe 2's failure to "thoroughly identify" him at the preliminary hearing. ECF No. 23-5 at 3. Because Jane Doe 2's "head was down," she did not look in his direction, and he was the only male in the room, he asserts she was "coached" to identify his jail attire. ECF No. 38-50 at 94. But as previously discussed, *see* Claim 41, *supra*, Petitioner was well-known to both victims. *See* ECF No. 38-44 at 2 (state appellate court recounting Petitioner's involvement with the victims' family, including that he "regularly played with them, picked them up from school, and babysat them while the other members of the family were at work.") He therefore fails to overcome a "strong presumption" counsel acted reasonably in declining to challenge Jane Doe 2's identification. *See Strickland*, 466 U.S. at 689. Again, given this counsel did not represent him at trial, he also fails to show a "reasonable probability that,

but for counsel's unprofessional errors," in failing to adequately object to the identification, "the result of the proceeding would have been different" at either trial or sentencing. *Id.* at 694. Thus, this claim fails for lack of merit.

In Claim 90, he alleges Marshall-Petry "failed to argue thoroughly that someone else committed the crime." ECF No. 23-5 at 4.[27] He contends counsel failed to "argue and request the arrest" of Jane Doe 1 based on her prior statements and lies, including her "confession she perpetrated a sex act" on Petitioner while he slept and failed to file a motion to dismiss the charges based on Jane Doe 1's failure to testify at the preliminary hearing, be subjected to cross-examination and the lack of a rape kit. ECF No. 38-50 at 95. The Court has elsewhere addressed Petitioner's allegations about Jane Doe 1's prior statements, *see e.g.* Claims 96-97, 99, and about her lack of testimony at the preliminary hearing and the absence of a rape kit, *see* Claims 18, 54, and found no federal error. Moreover, given the lack of any factual record as to the reason, or lack thereof, for counsel's decisions and actions, Petitioner fails to overcome the "strong presumption counsel's conduct falls within the wide range of reasonable professional assistance" and her actions "'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). He also fails to show any "reasonable probability" had counsel proceeded in the manner he sought, it would have made any difference to the outcome, as the underlying claims of error lack merit. *Strickland*, 466 U.S. at 694. Because he fails to show deficient performance or prejudice, this claim fails under *Strickland*.

In Claim 91, Petitioner contends Marshall-Petry failed to subpoena character witnesses to testify at the preliminary hearing, including his girlfriend, brothers,

---

[27] Petitioner also again alleges counsel failed to pursue a contention that the California Rape Shield law "interfered with the defense," *id.*, which the Court addresses elsewhere in this Order. *See* Claims 18, 33, *supra* and *infra*. He also repeats allegations about the lack of a warrant or consent for the DNA collection, lack of arrest warrant, lack of physical evidence, and Jane Doe 2's prior inconsistent statements, each of which have also been addressed elsewhere. *See e.g.* Claims 18, 27, 30-31, 34, 59, 98, 100, 105.

roommates, and other acquaintances, asserting Jane Doe 1 confessed to his girlfriend and brother and others could serve as character witnesses and/or had previously met and spent leisure time with members of the victims' family. *See* ECF No. 23-5 at 5; ECF No. 38-50 at 96. First, Petitioner does not provide specific factual detail as to the evidence or testimony those witnesses would have offered, as he has not submitted any witness statements, affidavits or declarations. Nor does he explain how character testimony would have been admissible at a *preliminary hearing*, much less how its absence at the preliminary hearing prejudiced the outcome of his *trial* proceedings.[28] *See Strickland*, 466 U.S. at 694. He also does not attempt to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the decision not to call these witnesses was not strategic. *Strickland*, 466 U.S. at 689. "A disagreement with counsel's tactical decisions does not prove that the representation was constitutionally deficient." *Cox v. Ayers*, 613 F.3d 883, 893 (9th Cir. 2010) (citation omitted). Because Petitioner fails to satisfy either prong of *Strickland* as to Claim 91, it fails for lack of merit. *See Mirzayance*, 556 U.S. at 122, citing *Strickland*, 466 U.S. at 687.

In Claim 92, Petitioner contends Marshall-Petry "failed to understand the law," citing her stated inexperience in trial, her indication most of her cases ended in a deal and her failure to understand it should have been Petitioner "who finalizes the defense since he is the one facing conviction and prison." ECF No. 23-5 at 6. He asserts she failed to understand a litany of laws, including speedy trial rights, discovery rights, search and seizure, the state's rape shield law, numerous laws concerning numerous defense rights, as well as those concerning witness testimony, expert witnesses, photo lineups, arraignment rights, interviewing minors, attorney/client privilege, confidentiality and collaboration with the prosecutor. *See* ECF No. 38-50 at 97. But most, if not all, of Petitioner's

---

[28] Indeed, the state court appeared to reach a similar conclusion, noting: "Evidence of Petitioner's character—no matter how presented—would not have been something for the preliminary hearing magistrate to consider." ECF No. 38-52 at 18.

allegations concerning counsel's purported lack of understanding appear to correspond to separate claims of ineffective assistance of counsel based on these same alleged errors or failures, *see e.g.* Claim 15 (collaboration), Claim 20 (speedy trial), Claim 33 (rape shield law), and given those claims are addressed elsewhere, the Court will not repeat those discussions here. At any rate, as Marshall-Petry did not represent Petitioner at trial, this claim fails because he does not persuasively explain how counsel's alleged inadequacies, all of which would have necessarily occurred (and would have long-concluded) well before trial, resulted in *Strickland* prejudice. *Strickland*, 466 U.S. at 694. As such, regardless of counsel's performance, Claim 92 fails for lack of prejudice. *See id.* at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

In Claim 93, Petitioner alleges counsel "failed to communicate the deal offer discussed between the defense and the prosecutor." ECF No. 23-5 at 7. Specifically, he indicates counsel stated eleven years for one charged count was "a good starting point for negotiating" and she would request "no less than 20 years to avoid loss in trial at 25 years to life," but contends she "ignored" options under state law for first offenders, failed to discuss the conversation with Petitioner and failed to "offer the marriage option" to the victims' family "under [Petitioner's] right to practice the right resolution in this matter through Christianity." ECF No. 38-50 at 98. Even assuming without deciding counsel may have acted deficiently in discussing potential plea options, Petitioner does not indicate he would have accepted any such purported prosecution offer. He instead appears to primarily maintain the case should have been resolved through "Christianity," citing scripture concerning virginity and marriage, and contends "the right thing to do is to provide counseling, programs, and later marriage to honor both sides of the families and the child's right to a family unit." ECF No. 23-5 at 7; *see also* ECF No. 38-50 at 98. Setting aside

Petitioner's own peculiar suggestion for settlement, which he acknowledges was not communicated, his failure to assert he would have accepted any deal offer actually discussed between the defense and prosecution forecloses habeas relief because he does not demonstrate any "reasonable probability" of a different outcome. *Strickland*, 466 U.S. at 694; *see also id.* at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.") Claim 93 therefore fails for lack of merit under *Strickland*.

In Claim 94, Petitioner faults pretrial counsel for failing to argue suggestibility and coercion in court hearings. ECF No. 23-5 at 8. He asserts counsel should have made this argument based on Kindred telling Angelica De La Cruz Petitioner was "not your friend," was "slick" and "lied to you," the story Kindred told Jane Doe 1 about himself in order to relate to her, the purportedly coercive photo lineup provided to Jane Doe 1, and the investigator's and detective's indications they did not believe Jane Doe 1's initial account. *See* ECF No. 38-50 at 99. But again, in the absence of any factual record showing counsel's actions were not strategic or reasoned, Petitioner fails to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and counsel's actions "'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). Petitioner also fails to allege or show any "reasonable probability" had counsel made the arguments he sought, it would have made any difference to the outcome, again particularly given Marshall-Petry did not represent him at trial. *See Strickland*, 466 U.S. at 694. Because he fails to satisfy either, much less both, *Strickland* prongs as to Claim 94, it fails for lack of merit. *See Mirzayance*, 556 U.S. at 122; *Strickland*, 466 U.S. at 687.

In Claim 112, Petitioner contends Marshall-Petry "made several false and contradictive statements during court hearings." ECF No. 23-6 at 12. He points to several statements counsel made about her prior experience in cases concerning charges under Cal. Penal Code § 288(a), the great bodily injury allegations, her overall caseload, DNA research and her intent to pursue and use psychological evaluations and expert testimony.

*See* ECF No. 38-50 at 117. While difficult to fully discern, it appears Petitioner contends she contradicted some of these statements in court hearings, particularly as to her prior experience and caseload, and made false statements to him on the remaining subjects. *See id.* Yet again, any "false and contradictive" statements counsel allegedly made would all have occurred early in the case, as Marshall-Petry's representation concluded well before trial. Thus, regardless of whether any such remarks could conceivably constitute deficient performance, Petitioner does not attempt to show a "reasonably probability" of a different outcome at trial but for the contested remarks by counsel at these pretrial hearings. *Strickland*, 466 U.S. at 694, 697. Claim 112 thus fails for lack of merit under *Strickland*.

Given the Court's own conclusion each of these claims clearly fail under *Strickland* and because Petitioner fails to show the state court rejection of these contentions was either contrary to or an unreasonable application of *Strickland*, or the state court decision was based on an unreasonable determination of the facts, habeas relief is not available on Claims 13, 20, 87-94 and 112. *Richter*, 562 U.S. at 97-98, 101.

### b. Claims 6, 8, 12, 17, 33, 40, 43, 50, 71, and 73-83

Petitioner contends Suwczinsky, who represented him at trial and during sentencing, failed to: inform and accompany him to the presentencing interview (Claim 6), obtain and review the presentencing report with him prior to sentencing (Claim 8), investigate and uncover mitigating factors for sentencing (Claim 12), file and argue the loss of material evidence by jail personnel (Claim 17), object to the trial court's use of the Rape Shield law (Claim 33), move for mistrial after Burhans testified as to her opinion about his guilt (Claim 40), prepare and utilize his requested defense (Claim 43), file a motion to suppress DNA evidence (Claim 50), prepare and present a coercion, duress, or suggestibility defense (Claim 71), challenge his identification (Claim 73), go to the crime scene (Claim 74), consult with, hire, and properly prepare for experts (Claims 75 and 80), thoroughly and properly examine prosecution witnesses (Claim 76), contact and secure witnesses (Claims 77), bar the seating of biased jurors or object to the prosecutor's peremptory challenges (Claim 78), perform effectively in closing arguments (Claim 79), adequately investigate

the facts and law concerning admitting the audio/video of the victims' prior statements/confessions and adequately argue someone else committed the crime (Claim 81), object to the prosecutor's closing argument (Claim 82) and file pretrial motions (Claim 83).

As to Claim 6, Petitioner contends counsel acted deficiently in failing to accompany him to the presentencing interview "to prevent incriminating statements by Mr. Bryson and to assist him and object to any questioning by the probation offer that may be inappropriate, illegal, or unlawful." ECF No. 23 at 14. He first fails to show that even had counsel been present, she could have somehow prevented him from speaking and making damaging statements. He also offers no argument or record evidence showing the probation officer asked inappropriate or unlawful questions counsel could or should have prevented. He nonetheless asserts counsel should have, with her mere presence, prevented him from telling the probation officer that "if naked kids were brought in here, I would laugh." *Id.* Petitioner contends the statement was repeated during the reading of that report at sentencing.[29] *Id.* He contends the introduction of the statement prejudiced him, as it "resulted in his loss of a downward adjustment or lesser sentence" and counsel failed to object. *Id.* Yet, as previously discussed with respect to Claim 25, Petitioner was not sentenced under a statute providing for any such adjustments but was instead sentenced pursuant to a statute requiring a specific term of imprisonment (25 years to life per count) because of the type of offenses committed and because those offenses were committed against more than one victim. *See* Claim 25, *supra*, citing Cal. Penal Code § 667.61(j)(2). As such, even were he able to show counsel was deficient in the manner asserted, this claim still fails for lack of prejudice. *Strickland*, 466 U.S. at 694, 697.

---

[29] Petitioner provides no citations in support of this contention and the Court's review of the sentencing transcript does not reflect and reference to that statement at sentencing, *see* ECF No. 38-23, apart from the trial judge's general indication that he had read and considered the probation report. *Id.* at 6.

101

In Claim 8, Petitioner raises similar contentions as previously addressed and rejected in Claim 7, as he again argues his presentencing interview was conducted on the date of sentencing and the trial court failed to confirm Petitioner read and reviewed the report, and now also alleges counsel failed to obtain the report 10 days before sentencing and review the report with him to prepare mitigation. *See* ECF No. 23 at 15-16. Again, the record reflects his presentencing interview was conducted on September 19, 2019, *see* ECF No. 38-2 at 21, which clearly refutes his claim the interview was conducted on the day of the October 7, 2019, sentencing. While the trial court did not specifically "acknowledge" Petitioner's receipt of the report at sentencing, his receipt was noted when defense counsel stated: "I have given Mr. Bryson a copy of the probation reports." ECF No. 38-23 at 6. As to his other contentions, he fails to explain how counsel's asserted failure to obtain and review the report sufficiently in advance of sentencing constituted deficient performance. Even assuming he could show deficiencies in one or more of the respects alleged here, Petitioner also fails to establish prejudice because, as previously discussed, the sentencing statute solely provided for a sentence of 25 years to life per count given the particularities of his offenses, and he fails to explain how the cited mitigation evidence could have altered the outcome of his sentencing proceeding. *See e.g.* Claim 25, *supra*, citing Cal. Penal Code § 667.61(j)(2); *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Claim 12, in which Petitioner contends counsel failed to investigate and uncover mitigating factors for use in sentencing and acted in a prejudicially deficient manner by failing to object to the sentencing conditions imposed (i.e. stay away order from victims, DNA sample requirement, registration as a sex offender, restitution, firearm prohibition, "dual" use of aggravation, consecutive terms), *see* ECF No. 23-1 at 2-3, similarly fails for lack of demonstrated prejudice. Petitioner again does not persuasively show mitigation evidence would have changed the outcome of the sentencing proceedings given the statute he was sentenced under and the offenses at issue. *See e.g.* Claim 25, *supra*, citing Cal.

Penal Code § 667.61(j)(2); *Strickland*, 466 U.S. at 697; *see also* Claim 1, *supra* (discussion of "dual" use of aggravating factor and imposition of consecutive terms).

In Claim 17, Petitioner contends trial counsel failed to file and argue *Trombetta*/*Youngblood* motions concerning the loss of material evidence during his May 2018 jail transfer. *See* ECF No. 23-1 at 12-13. As previously discussed with respect to his related Claim 16 allegation of error by jail personnel, Petitioner acknowledges he sought relief under *Trombetta*/*Youngblood* for this lost evidence prior to trial, as he was proceeding pro per at the time of the May 2018 incident. *See e.g.* ECF No. 23-67, Exh. SS to FAP (transcript of July 30, 2018, motion hearing); *see also* ECF No. 38-16 at 15-16 (trial court recounting pre-trial proceedings, including Petitioner proceeding pro per from January 2018 to March 2019). He also acknowledges the trial court denied his motion, *see* ECF No. 23-1 at 11, 13, and fails to explain how counsel acted deficiently in failing to re-raise a previously rejected issue. Nor does he demonstrate any later motion by counsel would have somehow fared better given the lack of showing the allegedly lost emails or texts contained "exculpatory" evidence which was not "comparable" to other available evidence or was not obtainable through additional subpoenas. *See Trombetta*, 467 U.S. at 488-89; *see also* ECF No. 23-67 at 16-17. Because he fails to satisfy either *Strickland* prong as to Claim 17, this claim fails for lack of merit. *See Mirzayance*, 556 U.S. at 122 ("[A] defendant must show both deficient performance by counsel and prejudice in order to prove that he has received ineffective assistance of counsel."), citing *Strickland*, 466 U.S. at 687.

In Claim 33, Petitioner asserts trial counsel "failed to object to trial court's use of CA Rape Shield Law." ECF No. 23-2 at 21. However, as the state superior court found: "The application of the Rape Shield law was extensively litigated during this trial. Proper objections and argument were made. The court considered the objections and argument and ruled as required by law." ECF No. 38-52 at 13-14. Petitioner does not offer argument or evidence to rebut the presumed correctness of the state court's findings and instead appears to largely reiterate his Claim 18 allegations that application of the Rape Shield law was unfair because it excluded certain evidence about the victims' prior statements,

backgrounds and behavior. *See* ECF No. 23-2 at 21, ECF No. 23-1 at 1; *see also* Claim 18, *supra*. Because the Court must defer to the state court's factual findings that this matter was "extensively litigated," his assertion counsel failed to litigate this matter fails to find record support, which precludes a potential finding of ineffectiveness. *See Stevens v. Davis*, 25 F.4th 1141, 1165-66 (9th Cir. 2022) ("[E]ven under a de novo review, 'we still defer to a state court's factual findings under § 2254(e).' Specifically, the state court's factual findings are presumed correct, and that presumption can be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)."), quoting *Crittenden v. Chappell*, 804 F.3d 998, 1011 (9th Cir. 2015) and citing 28 U.S.C. § 2254(e)(1); *see also Mirzayance*, 556 U.S. at 122; *Strickland*, 466 U.S. at 687. Claim 33 therefore fails for lack of merit.

Claim 40, in which Petitioner contends counsel failed to move for a mistrial after investigator Burhans testified as to her opinion about his guilt, is without merit for the reasons previously discussed in his related prosecutorial misconduct claim. *See* Claim 37, *supra*. Again, almost immediately after Burhans' contested comments, *see* ECF No. 38-19 at 132, counsel and the trial court held a sidebar, during which the trial court stated: "I think at this point I should admonish the jury to disregard Ms. Burhans' opinion as to the ultimate issue that he's guilty of the crimes," and both sides agreed that the jury would be so instructed and would be further advised it was "[s]olely their decision." *Id.* at 133. The trial court instructed the jurors: "Ladies and gentlemen, you are to disregard the last statement of opinion about this witness' belief in whether the defendant committed the crime. That is your responsibility as a jury. It is for you to decide." *Id.* at 134. Given the issue was immediately addressed, all parties agreed upon the course of action to be taken, and the jury was promptly instructed to disregard the witness' statement, Petitioner fails to show counsel was deficient in failing to *also* request a mistrial based on this same asserted error. He also does not show a mistrial would have been granted given the comments had just been addressed and ameliorated by the trial court's specific direction to the jurors to disregard the comments. Because Petitioner does not show "a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different," Claim 40 also necessarily fails for lack of prejudice. *Strickland*, 466 U.S. at 694.

In Claim 43, Petitioner contends trial counsel "failed to prepare and utilize" his "requested and complete defense," including failing to file the motions and requests he sought, use his "hand-drawn floor plan of apartments," use his cross-examination questions and strategy as to recalling witnesses, seek to introduce "all exculpatory evidence" including any prior inconsistent witness statements, audio and/or video recordings of witness and victims' statements/interviews, letters, and social media posts, pursue his preferred defense strategy that someone else committed the crime and he was intoxicated/asleep, subpoena his medical records to attempt a defense based on the impact of his diabetes on his sex drive and/or ability, and properly investigate mitigation for sentencing. ECF No. 23-3 at 20-21. While Petitioner raises a multitude of complaints as to the alleged inadequacy of counsel's performance, he fails to offer any evidence showing counsel's decisions were not strategic, while the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). Given the lack of any record as to the reason for counsel's decisions, such as a declaration from counsel, the Court cannot simply throw aside this presumption and assume the contested decisions were not tactical in nature and were instead the product of deficient performance. *See e.g. Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("That presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court 'may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.'"), quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003). Nor can Petitioner overcome this presumption by simply articulating his disagreement with counsel's decisions. *See Cox*, 613 F.3d at 893 ("A disagreement with counsel's tactical decisions does not prove that the representation was constitutionally deficient."), citing *United States*

105

*v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981) (per curiam); *see also Strickland*, 466 U.S. at 689 ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").

Petitioner also fails to demonstrate prejudice, as first, he does not show that had counsel sought to introduce the materials he cites, most notably the letters or social media posts by his minor victims or his hand drawn floor plans, any such evidence would have even been admitted. More importantly, he fails to show the evidence he sought to introduce would have made a difference to the outcome of his trial proceedings. *Strickland*, 466 U.S. at 694 (prejudice requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") Again, audio/video evidence as to the victims' prior inconsistent statements or floor plans would not likely have made a difference given defense counsel cross-examined those witnesses on their inconsistent statements. As to the alleged failure to investigate mitigation for sentencing, this contention fails for the reasons previously discussed. *See e.g.* Claims 1, 25, *supra*. Nor does he show that advancing a defense he was asleep/intoxicated at the time of the crime, or was physically unable to commit the charged acts, would have made a difference. Not only do those two contentions appear internally inconsistent, but Jane Doe 1 also testified at trial about the former, that is, her prior statement concerning Petitioner's incapacitated state. As such, this claim fails on the merits for a lack of both demonstrated deficient performance and prejudice. *Mirzayance*, 556 U.S. at 122 ("[A] defendant must show both deficient performance by counsel and prejudice in order to prove that he has received ineffective assistance of counsel."), citing *Strickland*, 466 U.S. at 687.

In Claim 50, Petitioner contends trial counsel failed to file a motion to suppress the DNA evidence from his August 3, 2016, swab because it was taken "by threat of physical force" and without consent or warrant and appears to relatedly speculate an earlier DNA database hit "may have come from" his December 2014 burglary arrest which should have

3:22-cv-00556-JES-VET

been removed from the system because it eventually settled as a misdemeanor. ECF No. 23-4 at 9-10. In light of Petitioner's own admission the initial DNA match to Jane Doe 1's baby came not from the contested August 2016 swab but from an earlier database hit, he fails to show a motion to suppress that DNA swab would have both resulted in the exclusion of the DNA match to the baby, nor does he show the outcome of his trial would have been "more favorable." *See Leavitt*, 646 F.3d at 613 ("Where the defendant claims ineffective assistance for failure to file a particular motion, he must 'not only demonstrate a likelihood of prevailing on the motion, but also a reasonable probability that the granting of the motion would have resulted in a more favorable outcome.'"), quoting *Styers*, 547 F.3d at 1030 n. 5. Petitioner also offers no record support for his speculative and cursory assertion about the impropriety of the DNA database hit itself. *See e.g. Greenway*, 653 F.3d at 804. Because he fails to satisfy either *Strickland* prong as to Claim 50, this claim fails for lack of merit. *See Mirzayance*, 556 U.S. at 122, citing *Strickland*, 466 U.S. at 687.

In Claim 71, Petitioner appears to fault counsel for only "verbally" raising the issues of coercion, duress, and/or suggestibility to the jury instead of seeking to admit the prior interviews with the victims and witnesses supporting those arguments. ECF No. 23-4 at 31. Petitioner also reiterates contentions about the interviews Kindred conducted with Jane Doe 1 and the victims' aunt, and the lineup photo provided to Jane Doe 1, *see* Claim 94, *supra*, as well as those about the victims' prior inconsistent statements, Jane Doe 2's delay in reporting, Jane Doe 1's continued contact with Petitioner, his brother and his girlfriend, her in-court identification, and makes various assertions about the victims' family dynamics. ECF No. 38-50 at 76. But again, in light of the lack of any factual or other record evidence as to the reasons for counsel's actions, Petitioner fails to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and counsel's actions in this regard "'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted); *see also Gentry*, 540 U.S. at 8. Moreover, despite his claim trial counsel only "verbally" raised this issue, the state supreme court noted "the evidence presented at trial and the motions presented before trial show

that this theory was argued, and evidence of suggestibility was presented to the jury," ECF No 38-52 at 15, and Petitioner has not offered anything to rebut the presumed correctness of those factual findings. *See Rice*, 546 U.S. at 338-39; 28 U.S.C. § 2254(e)(1). He also fails to show any "reasonable probability" had counsel proceeded differently, it would have made a difference to the outcome. *See Strickland*, 466 U.S. at 694. Because he does not satisfy either, much less both, *Strickland* prongs as to Claim 71, his contentions fail for lack of merit. *See Mirzayance*, 556 U.S. at 122, citing *Strickland*, 466 U.S. at 687.

In Claim 73, Petitioner contends counsel failed to challenge his "identification," asserts the matching DNA results only "linked" him to the crime but did not prove he committed the crime, and claims corroborative evidence was needed. ECF No. 23-4 at 33. But he appears to largely repeat assertions made elsewhere concerning errors in the photo (rather than lineup) provided to Jane Doe 1, the lack of consent for his DNA swab and related DNA contentions, the lack of arrest warrant, Jane Doe 1's absence at the first preliminary hearing, and Jane Doe 2's identification at the second preliminary hearing, *see* ECF No. 38-50 at 78, each of which are discussed elsewhere and will not be reiterated here. *See* Claims 27, 30-31, 41, 54, 89, 105, *supra*. He also claims trial counsel failed to object to and challenge Jane Doe 1's purported misidentification of his shirt color as pink instead of purple and her error in stating his belly was smaller at trial than it was in 2016 and asserts witnesses were coached by detective Kindred. *See* ECF No. 38-50 at 78.

However, as previously discussed with respect to his claim concerning the photo lineup or identification procedures used by police in this case, *see* Claim 41, *supra*, Petitioner was well-known to both victims and there is no indication either victim had difficulty identifying him. *See* ECF No. 38-44 at 2 (state appellate court recounted Petitioner's relationship to and involvement with the victims' family, including his "on-again, off-again romantic relationship" with their aunt and that he "regularly played with them, picked them up from school, and babysat them while the other members of the family were at work.") Indeed, at trial, both victims clearly identified Petitioner as their assailant, with Jane Doe 1 also identifying him as her child's father. *See* ECF No. 38-19 at 15-16

(Jane Doe 1's identification), 81-82 (Jane Doe 2's identification). Moreover, contrary to his assertion, Jane Doe 1 identified his shirt color as "purple" at trial, not pink (as did Jane Doe 2). *See id.* at 15, 81. The Court finds nothing to support a challenge or objection to Jane Doe 1's identification, particularly given Petitioner's long-standing relationship with their family, and nothing to overcome a "strong presumption" counsel's action in declining to challenge the victims' identification was anything other than reasonable. *See Strickland*, 466 U.S. at 689. Nor does he show had counsel mounted such a challenge, it would have made any difference to the trial's outcome. *See id.* at 694. This claim fails for lack of merit.

In Claim 74, he next contends counsel "failed to go to the crime scene" and obtain exculpatory evidence such as "pictures, floor plan, surroundings, and witnesses (neighbors)."[30] ECF No. 23-4 at 34; *see also* ECF No. 38-50 at 79. But in rejecting this claim on state habeas review, the state superior court noted: "The evidence Petitioner sought was also made available by the People and presented at trial." ECF No. 38-52 at 15-16. Petitioner fails to offer any argument or evidence to rebut the presumed correctness of the state court's factual finding the contested evidence was "made available" and "presented at trial." *See Rice*, 546 U.S. at 338-39; 28 U.S.C. § 2254(e)(1). Thus, the Court must defer to these findings, which obviates any potential conclusion trial counsel was prejudicially ineffective, as even assuming counsel somehow erred in failing to go to the crime scene, there was no prejudice because this evidence was "made available" and "presented at trial." *See Mirzayance*, 556 U.S. at 122; *Strickland*, 466 U.S. at 687. Claim 74 thus fails for lack of merit.

In Claims 75 and 80, Petitioner alleges various failures with respect to expert witnesses, including failing to: consult with and hire experts, conduct relevant research and request copies of underlying studies upon which experts relied (Claim 75) and subpoena

---

[30] To the extent Petitioner reiterates his claim the trial court erred in violation of federal law in excluding certain evidence under California's Rape Shield law, *see* ECF No. 23-4 at 34, this matter was addressed elsewhere, *see* Claim 18, *supra*, and will not be repeated here.

child protective services worker Rouse and/or Chadwick, as requested (Claim 80). ECF No. 23-4 at 35, 40. In Claim 75, similar to the assertions made with respect to his related claim concerning prior counsel, *see* Claim 87, *supra*, Petitioner contends trial counsel should have consulted with and hired a urologist, a psychologist, a "child behavior expert" to counter the prosecution's expert, a forensic expert "to conduct DNA testing" and "check CODIS," an OB-GYN, and a handwriting expert.[31] ECF No. 38-50 at 80.

Claim 75 first fails in part as vague and conclusory because Petitioner does not provide specific facts to support several of his contentions, for instance failing to identify research counsel should have conducted and failing to identify underlying studies counsel should have obtained. *See Greenway*, 653 F.3d at 804; *see also James*, 24 F.3d at 26. Next, as to the experts Petitioner contends counsel should have retained, he only generally speculates what evidence those experts could have offered. For example, he speculates a urologist could potentially have testified about his "penis function," noting without explanation "sleep, intoxicated, diabetic," a psychologist could "conduct assessments," noting "STOLL, SARATSO, STATIC-99, PC 288.1," again without argument or explanation, an OB-GYN could testify on adult versus youth pregnancy and great bodily injury, again without explanation as to the potential content of such testimony, a child behavior expert could "counter" the prosecution's expert in an again unexplained manner, a DNA expert could "conduct DNA testing," and a handwriting expert could "analyze letters" from the victims for an unidentified purpose. ECF No. 38-50 at 80. Because he fails to specify how such experts would have testified, does not assert experts were available or willing to testify on his behalf, and does not explain how the testimony would have led to a "reasonable probability" of a different verdict, this claim also fails for lack of prejudice. *See Strickland*, 466 U.S. at 694; *see also Grisby v. Blodgett*, 130 F.3d 365, 373

---

[31] To the extent Petitioner also references statements Jane Doe 1 made during her interview with child protective services in Claim 75, the Court addresses his claim concerning counsel's failure to subpoena child protective services personnel in Claim 80.

(9th Cir. 1997) ("Speculation about what an expert could have said is not enough to establish prejudice.").

As to Claim 80, while Petitioner identifies child protective service witnesses Chadwick and/or Rouse, he appears to acknowledge this prospective evidence was "blocked" by the Rape Shield law. ECF No. 23-4 at 40. He indicates Rouse interviewed both victims and was a "crucial" witness to their earlier inconsistent statements, such as to Jane Doe 1's statements about "Josh," asserting she took advantage of Petitioner, and giving birth went fine, and Jane Doe 2's statement Petitioner had "never crossed the line" with her. ECF No. 38-50 at 85. The state superior court also briefly touched on the substance of the prospective testimony and similarly noted such evidence would have been largely inadmissible. *See* ECF No. 38-52 ("In Claim 80, Petitioner argues that trial counsel failed to call Chadwick witness that would have provided evidence of the victim's statements. Most of this evidence is subject to the Rape Shield law and would not have been admissible. Trial counsel was not required to needlessly subpoena a witness whose testimony would likely have been excluded.") He also does not attempt to overcome the "strong presumption counsel's conduct falls within the wide range of reasonable professional assistance" and "might be" considered strategic. *Strickland*, 466 U.S. at 689. Nor does Petitioner show a "reasonable probability" that such testimony would have made a difference to the outcome of his trial proceedings, particularly given his own concession and the state court's similar indication that much of the evidence in question was likely inadmissible. *Strickland*, 466 U.S. at 694. Claim 80 fails for lack of merit under *Strickland*.

In Claim 76, Petitioner asserts counsel "fail[ed] to thoroughly cross-exam re cross-exam and re call prosecution witnesses" as he requested. ECF No. 23-4 at 36.[32] He contends

---

[32] While he also contends counsel "violated Confrontation Clause" by failing to call and question witnesses in the manner he sought, *id.*, he acknowledges his defense had an opportunity to cross-examine and confront the witnesses against him, which is all that is constitutionally required. *See Davis*, 415 U.S. at 315 ("The Sixth Amendment to the

it was his own preparation of questions "alone" that resulted in the mistrial and dismissal of counts 1 and 6, maintains he is the "pilot in his defense" rather than trial counsel, and had counsel "execut[ed] his cross-exam question" he likely would not have been convicted. *Id.* Petitioner also claims he submitted questions to counsel and requested recalling witnesses to ask further questions, but counsel refused to do so and returned his written questions without posing them. *See* ECF No. 38-50 at 81.

First, Petitioner does not provide the actual questions he sought to pose that counsel failed to ask, only indicating he sought to "expose inconsistent stories" from both victims and the victims' aunt and asserting it was his own questions about the furniture at the different residences which resulted in the dismissal of counts 1 and 6. *Id.* Not only does Petitioner fail to explain what additional questions he sought, he also does not specify or explain how additional questioning would have resulted in a "reasonable probability" of a different outcome at trial. *See Greenway*, 653 F.3d at 804; *see also James*, 24 F.3d at 26; *Strickland*, 466 U.S. at 694.

Moreover, that two of the counts resulted in mistrial and dismissal would appear, on its face, to further support, rather than rebut, the reasonableness of the required "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that counsel's actions and choices in questioning witnesses "'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To the extent Petitioner maintains it was his own questions which led to the dismissal of those counts at trial, this contention also appears to undermine his assertion trial counsel "refused" to use his desired questions. Ultimately, because Petitioner fails to satisfy either *Strickland* prong as to Claim 76, this claim fails for lack of merit. *See Mirzayance*, 556 U.S. at 122, citing *Strickland*, 466 U.S. at 687.

———————————

Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'")

In Claim 77, Petitioner contends defense counsel failed to subpoena and secure character witnesses for trial. He identifies numerous witnesses, including his girlfriend, brother, and several other acquaintances, *see* ECF No. 38-50 at 82, who "interacted" with him and Jane Doe 1 "together in person" in a positive manner, including during her pregnancy while "unaware of [Jane Doe 1's] condition" and he contends they could have testified to the victims' behavior towards him. ECF No. 23-4 at 37. Yet, Petitioner does not allege counsel failed to investigate or did not know about these prospective witnesses, and instead alleges he had a right to have these witnesses testify "no matter if trial counsel believes it will work or not." *Id.* He also alleges he provided contact information for these witnesses but counsel "failed to request continuances to allow time for subpoenas to be filed." ECF No. 38-50 at 82. However, Petitioner does not even attempt to overcome the "strong presumption counsel's conduct falls within the wide range of reasonable professional assistance" and counsel's decision not to further pursue and call these witnesses was not strategic. *Strickland*, 466 U.S. at 689. Again, "[a] disagreement with counsel's tactical decisions does not prove that the representation was constitutionally deficient." *Cox*, 613 F.3d at 893. Nor does he attempt to demonstrate a "reasonable probability" such character testimony would have made a difference to the outcome of his trial proceedings. *Strickland*, 466 U.S. at 694. Thus, because he fails to satisfy either *Strickland* prong as to Claim 77, it fails for lack of merit. *See Mirzayance*, 556 U.S. at 122; *Strickland*, 466 U.S. at 687.

In Claim 78, Petitioner contends counsel failed to "bar the seating of obviously biased jurors" and failed to object to the prosecutor's use of peremptory challenges, generally asserting any juror who was a victim "more than likely bias[ed]" and noting juror #1 indicated they did not know whether they could be fair, but they would "try." ECF No. 23-4 at 38; *see also* ECF No. 38-50 at 83. He also singles out jurors or alternates who were related to a "molest" or "sex abuse" victims, those affiliated with or related to someone in law enforcement, attorneys and court workers, those who worked with children, and a "DNA student." ECF No. 38-50 at 83. However, as discussed previously with respect to

his related trial court error claim, *see* Claim 39, *supra*, Petitioner fails to show any juror serving on his case was unable to be impartial and decide his case fairly. *Irwin*, 366 U.S. at 722-23. The sworn jurors and alternates were also instructed to decide the case solely on the facts and evidence introduced and to not be influenced by their own feelings towards any party, and jurors are presumed to understand and follow the trial court's instructions. *See* ECF No. 38-17 at 6 (jurors were instructed: "You must decide the facts from the evidence received in this trial, and not from any other source. [¶] You must determine the effect and the value of the evidence. You must not be influenced in your decision by mere sentiment, conjecture, sympathy, passion or prejudice towards any party, witness or attorney in this case, or public opinion or public feeling."); *see Weeks*, 528 U.S. at 234 (jurors are presumed to understand and follow the trial court's instructions); *Marsh*, 481 U.S. at 211 (same). Further, Petitioner does not offer any factual support for his contention about counsel's asserted lack of objection, nor identify any juror challenged by the prosecution to which counsel should ostensibly have objected, and his conclusory assertions in this respect cannot support a claim for habeas relief. *See Greenway*, 653 F.3d at 804; *James*, 24 F.3d at 26. Because Petitioner fails to satisfy either *Strickland* prong, he does not state a claim for relief on Claim 78. *See Mirzayance*, 556 U.S. at 122, citing *Strickland*, 466 U.S. at 687.

In Claim 79, Petitioner contends counsel committed "gross error" and was ineffective in closing argument because had the jurors been aware of the lengthy sentence he was facing, they would have likely sought "leniency or elect not to convict at all," and the jury should have been apprised of nullification pursuant to federal law. ECF No. 23-4 at 39. He also asserts counsel failed to mention lesser included offenses or reference violations of his presumption of innocence.[33] ECF No. 38-50 at 84.

---

[33] He again repeats arguments alleging counsel failed to challenge prospective jurors and recall witnesses for cross-examination, but neither contention involves closing arguments and each are in any event addressed elsewhere. *See e.g.* Claims 72, 78, *infra* and *supra*.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

First, Petitioner's assertions again lack support. For one, during closing, counsel reminded jurors that when the trial started, the jurors all "agree[d] he was not guilty without any evidence being presented" and he had the "presumption of innocence" which could only be overcome by evidence. ECF No. 38-21 at 116. While Petitioner is correct counsel did not argue lesser included attempts during closing, the record reflects that just prior to closing arguments, counsel indicated to the trial court the defense was *not* asking for jury instruction on "lesser included offenses in the form of attempts," affirmed the decision was one for "trial strategic purposes," and stated the matter had been discussed with Petitioner. *See id.* at 69. Thus, neither allegation of deficient performance finds record support. With respect to his contention counsel erred in failing to argue for jury nullification, the Court previously noted there is no such federal right. *See* Claim 4, *supra*, citing *Merced*, 426 F.3d at 1079 ("While jurors have the power to nullify a verdict, they have no right to do so.") (additional citation omitted). Given the lack of authority supporting Petitioner's position, he cannot overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" to demonstrate counsel acted deficiently in refraining from making a nullification argument.[34] *Strickland*, 466 U.S. at 689. Nor does he show a "reasonable probability that, but for" any such argument along these lines, "the result of the proceeding would have been different" at either trial or sentencing. *Id.* at 694. Indeed, the jury was expressly instructed *not* to consider punishment in rendering their verdict. *See* ECF No. 38-1 at 198 (pre-deliberation jury instructions included direction: "You must reach your verdict without any consideration of punishment.") Thus, because

---

[34] To the extent Petitioner also contends counsel was ineffective for failing to request jury instructions on nullification, this argument fails for the same reasons. *See* Claim 4, citing *Powell*, 955 F.2d at 1213 ("Our circuit's precedent indicates that the [defendants] are not entitled to jury nullification instructions.") (additional citation omitted); *see Strickland*, 466 U.S. at 689.

3:22-cv-00556-JES-VET

Petitioner fails to satisfy either *Strickland* prong as to Claim 79, this claim fails for lack of merit. *See Mirzayance*, 556 U.S. at 122, citing *Strickland*, 466 U.S. at 687.

In Claim 81, Petitioner contends counsel failed to "adequately investigate the facts and law" in order to seek to introduce the audio and video of the "alleged victims[] confessions of being the perpetrator of the crime to present a defense someone else committed the crime." ECF No. 23-4 at 41. He argues counsel did not use his "strategy and defense," including failing to obtain and utilize audio/video or transcriptions of Jane Doe 1's "confession," prior statements concerning the victims' lies, and communications the victims had with himself, his brother, and his girlfriend over email and social media.[35] ECF No. 38-50 at 86.

Petitioner again appears to repeat several of the contentions raised and rejected in Claim 43, *see supra*, concerning counsel's alleged failure to introduce audio and/or video of the victims' prior statements rather than, or in addition to, cross-examining the victims on those matters. Here again, given the lack of any factual record as to the reason for counsel's decisions, Petitioner fails to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted); *see also Gentry*, 540 U.S. at 8. He also fails to show any "reasonable probability" had counsel sought to introduce any audio and/or video of those prior statements or offered further argument on the subject, it would have made any difference to the outcome, especially because defense counsel cross-examined Jane Doe 1 and Jane Doe 2 on their prior

---

[35] To the extent Petitioner simply repeats his contentions about the lack of a rape kit and the exclusion of evidence under the rape shield law, these allegations were addressed and rejected in Claim 18, *supra*. To the extent he claims counsel should have obtained and used emails and social media exchanges, he separately (and unsuccessfully) contended the prosecution suppressed these items in Claim 59, *supra*. At any rate, it appears Jane Doe 1 testified about social media or email exchanges she had with Petitioner's brother, *see* ECF No. 38-19 at 59-65, as well as her email exchanges with Petitioner. *See id.* at 32-34.

statements. ECF No. 38-19 at 66-74, 91-107; *Strickland*, 466 U.S. at 694. Thus, for lack of demonstrated deficient performance or prejudice, Claim 81 fails under *Strickland*.

In Claim 82, Petitioner faults counsel for failing to object to the prosecution's closing argument, asserting the trial was "not over" at that stage yet counsel made "no effort" and "basically gave up" by failing to raise objections. ECF No. 23-4 at 42. He claims counsel should have objected to prosecutor's "opinionated statements," such as when the prosecutor urged the jury to find him guilty, "hold him accountable," called him a "predator" and a "fox in a henhouse," argued he groomed the victims and acted as a father figure, asserted he coached Jane Doe 1 to lie, and argued his email addresses corresponded to the years he molested the victims. ECF No. 38-50 at 87. But Petitioner does not allege any of the statements were improper or inaccurate, only that they were "opinionated." *Id.* Without any allegations identifying *objectionable* arguments or purported *misstatements* the prosecutor assertedly made without objection, Petitioner fails to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted); *see also United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993) ("Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct."), citing *Strickland*, 466 U.S. at 689. Nor does he attempt to demonstrate any "reasonable probability that, but for" counsel raising an objection to these aspects of the prosecutor's closing argument, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, for lack of demonstrated deficient performance or prejudice, this claim fails under *Strickland*.

In Claim 83, Petitioner contends trial counsel failed to file "critical" pretrial motions (as he similarly contended with respect to pretrial counsel in Claim 88, *supra*). ECF No. 23-4 at 43. Petitioner again lists the *Trombetta/Youngblood* motion premised on the loss of evidence by the Sheriff's Department, as well as motions to set aside several charged

counts pursuant to section 995, suppress DNA evidence, sever charged counts, compel discovery, and subpoena/call witnesses. *Id.*; *see also* ECF No. 38-50 at 88.

First, as previously discussed with respect to Claim 88, the record reflects Petitioner himself twice raised the *Trombetta*/*Youngblood* motion while he was pro per, which was twice denied, and the Court elsewhere rejected his claim of ineffective assistance of pretrial counsel for failing to re-raise that motion. *See* Claim 17, *supra*. Similarly, the Court previously rejected his claim of ineffective assistance of counsel for failing to file a motion to suppress the DNA evidence. *See* Claim 50, *supra*. Petitioner also twice brought a motion under section 995 while he was pro per, which was also twice denied. *See* ECF No. 38-3 at 31-32. Finally, the record reflects Suwczinsky *did* move to sever the counts relating to each respective victim and argued counts 1-5 (relating to Jane Doe 1) should be severed from counts 6-8 (relating to Jane Doe 2). *See* ECF No. 38-1 at 105-07 (defense trial brief).

Given trial counsel clearly pursued at least one of the cited motions, the Court elsewhere rejected his claims of ineffective assistance for failing to raise and pursue several other cited motions, and Petitioner himself unsuccessfully (and repeatedly) pursued several motions, the Court finds this claim lacks support. At any rate, given the absence of any record evidence as to the reason for counsel's actions, Petitioner does not overcome the required presumption counsels' actions did not "fall[] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. He also again only generally asserts success on these motions would have bolstered his defense and increased the likelihood of a more favorable outcome, but his failure to demonstrate any likelihood of prevailing on these motions, coupled with the fact that at least a few of these motions were brought unsuccessfully (either by counsel or by Petitioner while pro per), precludes relief on this claim. *See Leavitt*, 646 F.3d at 613 ("Where the defendant claims ineffective assistance for failure to file a particular motion, he must 'not only demonstrate a likelihood of prevailing on the motion, but also a reasonable probability that the granting of the motion would have resulted in a more favorable outcome.'"), quoting *Styers*, 547 F.3d at 1030 n. 5. Claim 83 thus fails for lack of merit under *Strickland*.

1    Given each of these claims fail under *Strickland* and because Petitioner does not

2    show the state court decision was contrary to or an unreasonable application of *Strickland*

3    or was based on an unreasonable factual determination, habeas relief is not available on

4    Claims 6, 8, 12, 17, 33, 40, 43, 50, 71 and 73-83. *Richter*, 562 U.S. at 97-98, 101.

5         **7.  Claims Alleging Conflicts of Interest and/or Misconduct by Trial Counsel**

6    Petitioner contends Marshall-Petry "collaborated with" the prosecution against him

7    (Claim 15), the Office of Assigned Counsel interfered with his right to represent himself

8    while he was pro per (Claim 44), there was a breakdown in attorney client communication

9    with both pretrial and trial counsel (Claims 56-57), and both pretrial and trial counsel

10   represented "conflicting interests and/or divided loyalties" which altered their

11   performances (Claims 72 and 86).

12   As pertinent to several of the claims discussed in this section, the Supreme Court has

13   held that "[i]n order to demonstrate a violation of his Sixth Amendment rights, a defendant

14   must establish that an actual conflict of interest adversely affected his lawyer's

15   performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). "[A] defendant who shows

16   that a conflict of interest actually affected the adequacy of his representation need not

17   demonstrate prejudice in order to obtain relief." *Id.* at 349-50, citing *Holloway v. Arkansas*,

18   435 U.S. 475, 487-91 (1978). While the "[a]ctual or constructive denial of the assistance

19   of counsel altogether is legally presumed to result in prejudice," *Strickland*, 466 U.S. at

20   692, the Supreme Court has "reject[ed] the claim that the Sixth Amendment guarantees a

21   'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S.

22   1, 14 (1983) (footnote omitted); *see also Schell v. Witek*, 218 F.3d 1017, 1027 (9th Cir.

23   2000) ("[N]ot every conflict or disagreement between the defendant and counsel implicates

24   Sixth Amendment rights."), citing *Morris*, 461 U.S. at 13-14.

25        **a.  Claim 15**

26   Petitioner contends Marshall-Petry "collaborated with" the pretrial prosecutor

27   against him, primarily citing emails he obtained from his client files. ECF No. 23-1 at 8-9.

28   He also notes overhearing a conversation between the two attorneys during a break from a

119

1   January 3, 2018, *Marsden* hearing, during which defense counsel purportedly spoke to the

2   prosecutor "to collaborate how to fix the errors made by the judge in order to prevent the

3   defendant coming back on appeal" following "improper, bias, and or impartial comments"

4   the judge made. *Id.* at 9. He contends counsel "labored under a conflict of interest and

5   collusion" with the prosecutor and "acted as witness against the defendant." *Id.*

6       First, as previously noted in his related claim of prosecutorial misconduct, *see* Claim

7   23, *supra*, a review of the emails reveals a largely one-sided communication where the

8   prosecutor updated defense counsel concerning the strength of the developing case against

9   Petitioner and raised the potential for a plea. *See* ECF No. 23-16, Exh. A to FAP. Petitioner

10  fails to show these communications were inappropriate, and given they reflected minimal

11  communication *from* defense counsel, also fails to show collaboration or collusion. As to

12  the overheard conversation, his contention fails as both vague and conclusory given he fails

13  to offer any specifics as to any "errors" the judge made which the attorneys sought to fix.

14  *See Greenway*, 653 F.3d at 804; *see also James*, 24 F.3d at 26. It is also unclear how the

15  prosecutor could have been aware of, much less sought to correct, purported errors which

16  occurred at a *Marsden* hearing which the prosecutor did not attend. *See* ECF No. 23-55 at

17  4, Exh. LL to FAP (containing transcript of January 3, 2018, *Marsden* hearing noting

18  presence of defendant, defense counsel, court personnel and that "of course Mr. Dix, the

19  prosecuting attorney, is not present.") Thus, even to the extent the Court credits Petitioner's

20  cursory allegations despite the lack of specifics, he does not persuasively demonstrate

21  collaboration from the overheard conversation.

22      Given the vague, conclusory and unsupported allegations provided, Petitioner fails

23  to show Marshall-Petry acted improperly, much less labored under any conflict of interest

24  which negatively impacted her performance as defense counsel. *Cuyler*, 446 U.S. at 350.

25  As this claim clearly fails for lack of merit and because Petitioner fails to show the state

26  court decision was contrary to or an unreasonable application of clearly established federal

27  law or was based on an unreasonable determination of the facts, habeas relief is not

28  available on Claim 15. *Cuyler*, 446 U.S. at 350; *Richter*, 562 U.S. at 101.

**b. Claim 44**

Petitioner contends the Office of Assigned Counsel ("OAC") "interfered" with his right to represent himself when he was pro per in violation of his due process rights. ECF No. 23-3 at 22-23, citing ECF No. 23-20, 23-35, 23-66, Exhs. E, T, and RR to FAP. During two pretrial periods when he was pro per (March-May 2017 and January 2018-March 2019), he asserts OAC "placed themselves between [his] ability to file motions to the court; hire experts; file subpoenas; send and receive emails; receive discovery from District Attorney and Public Defender Offices" and required him to "send all requests, motions" to OAC instead of allowing him to send them directly to the court or prosecutor. *Id.* at 23. He contends OAC, which is "actually the Public Defender Office" and should not have been involved in his pro per representation, decided which motions or requests could proceed and "denied and rejected" or "failed to grant" his requests for an investigator, to subpoena witnesses, documents, and material evidence, and to recuse the judge and prosecutor. *Id.*

As Petitioner acknowledges, and as is reflected in his attached exhibit containing a partial transcript of a pretrial hearing in his case, when he raised complaints about OAC's procedures, he was informed OAC not only delivered discovery and filed motions for pro per defendants but also "act[ed] as an arm of the court in that we analyze, review ancillary services for pro per defendants," that "every decision [OAC] makes from filing motions to approving or denying ancillary service requests are appealable to the presiding judge," and "[i]f the court orders us to do something we previously denied, then we do it. No questions asked." ECF No. 23-66 at 10-11. Petitioner fails to explain how this procedure is objectionable, much less constitutionally infirm. Nor does Petitioner show he was somehow prevented from pursuing any motions or requests solely by the actions of OAC, as it is evident there was an appeal procedure (of which he was clearly apprised) for any OAC decision he might seek to challenge.

Nor do the remainder of Petitioner's cited exhibits support his contention OAC "denied and rejected motion and subpoenas" or "failed to grant" his requests. Upon review, one exhibit appears to concern his post-conviction request to OAC for work product

material concerning the pretrial defense counsel and prosecutor, to which OAC indicated it did not keep work product on closed cases, *see* ECF No. 23-20 at 2, while the other exhibit contains email exchanges between Petitioner and OAC which largely appear to reflect OAC relayed his discovery requests to the prosecutor and apprised him of the necessary procedures (release forms, etc.) for expert witnesses. *See* ECF No. 23-35 at 2-4. The only potential "denial" apparent in those communications was OAC's reply to his phone message inquiry about subpoena and search warrant procedures, in which OAC personnel indicated it "cannot address your questions regarding subpoenas and/or search warrants," that "I am forbidden by law to give you legal advice, procedural or substantive," and advising that while OAC was under the "umbrella" of the public defender offices it was "not part of" the primary or alternate public defender's office. *Id.* at 5. Again, given the stated appeal process, even to the extent this "denial" was in error, Petitioner clearly had an avenue for recourse.

In any event, Petitioner also fails to show prejudice, as he does not demonstrate any of the requests or motions which OAC purportedly denied or refused to process had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Petitioner also does not allege OAC's asserted refusals while he was pro per later prevented his defense from pursuing those same motions or requests once he was again represented by counsel, as he was at trial. Finally, even to the extent the Court could reasonably credit Petitioner's claim OAC was "actually" the public defender, and this claim should be analyzed under *Strickland*, it necessarily fails for lack of prejudice because he fails to show that but for OAC's actions or lack of action, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see Mirzayance*, 556 U.S. at 122.

Because Claim 44 clearly fails for lack of demonstrated prejudice and because Petitioner fails to show the state court decision was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts, habeas relief is not available. *Richter*, 562 U.S. at 97-98, 101; *Brecht*, 507 U.S. at 637; *Strickland*, 466 U.S. at 694.

### c.  Claims 56 and 57

Petitioner asserts there was a "breakdown" in communication between himself and pretrial counsel Marshall-Petry (Claim 56) and later between himself and trial counsel Suwczinsky (Claim 57). ECF No. 23-4 at 16-17. He claims the jury's verdict "was a direct impact" of Marshall-Petry's representation due to the "discovery and client file" she created which was later used by trial counsel Suwczinsky, who he asserts "did no further work on the case and" "did not see eye to eye" with Petitioner due to her "lies" about having received discovery and her readiness for trial. *Id.* Petitioner contends had Marshall-Petry did a better job communicating with him, their defense preparation would have been "better and successful" and more information from Suwczinsky would have allowed him "a better opportunity" to make a choice to either seek new counsel or keep appointed counsel. *Id.* Petitioner asserts both attorneys failed to provide him with "logistics" as he requested concerning their education and experience and in support, details numerous verbal exchanges he had with each attorney. *See* ECF No. 38-50 at 61-62.[36]

First, given Marshall-Petry's pretrial representation was followed by Petitioner deciding to proceed pro per and then later relinquishing that right in favor of another counsel, he cannot show any breakdown in communication with this attorney resulted in either the actual or constructive *denial* of counsel. *Strickland*, 466 U.S. at 692. Nor does he show any alleged difficulties in their communication, given the early tenure of her representation, prejudiced the outcome of his trial proceedings. *See id.* at 694, 697.

Second, while Petitioner asserts he and Suwczinsky did not see "eye to eye" because of her initial lies about discovery and readiness, ECF No. 23-4 at 17, he appears to acknowledge counsel later told him she had not yet received certain discovery items. *Id.*

---

[36] To the extent Petitioner again reiterates purported errors by either or both attorneys, including but not limited to communications with the prosecutor, failures to file motions and subpoenas, pursue his preferred defense strategy, communicate a plea offer, and procure records or expert witnesses, such contentions were raised as separate claims in the FAP and are addressed elsewhere in this Order. *See e.g.* Claims 15, 75-77, 80, 87-94.

This concession undermines a potential finding he was denied the assistance of counsel either actually or constructively due to the asserted breakdown in communication, as Petitioner acknowledges he continued to communicate with counsel on relevant matters. It instead appears his primary complaint is the lack of sufficient information or research about his "choice" of counsel (presumably including education/experience) to inform his decision whether to seek new counsel. This does not suffice to state a claim for relief. *See Gonzalez*, 515 F.3d at 1012 ("The Sixth Amendment guarantees criminal defendants the right to effective representation, but indigent defendants do not have a constitutional right to be represented by their counsel of choice."), citing *Caplin & Drysdale*, 491 U.S. at 624. In any event, stated difficulties in communication or differences in opinion as to how the case should be conducted, without more, do not demonstrate a violation of his right to the effective assistance of counsel. *Schell*, 218 F.3d at 1027 ("[N]ot every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights."), citing *Morris*, 461 U.S. at 13-14. Nor does Petitioner show any "reasonable probability" the result of his trial "would have been different" had he more information to inform his decision about counsel. *Strickland*, 466 U.S. at 694.

Because Claims 56 and 57 each fail for lack of merit and because Petitioner fails to show the state court decision was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable factual determination, habeas relief is unavailable on either claim. *Cuyler*, 446 U.S. at 350; *Richter*, 562 U.S. at 101.

### d. Claims 72 and 86

Petitioner contends "counsel represented conflicts of interest and/or divided loyalties" affecting counsel's performance as to both Suwczinsky (Claim 72) and as to Marshall-Petry (Claim 86). ECF No. 23-4 at 32, 46.

As to Suwczinsky, Petitioner generally contends "federal law prevents the defendant from conflicts of interest between defendant and counsel" and "[t]his conflict led to further case damage and conviction could have been avoided." ECF No. 23-4 at 32. He cites to bar complaints he filed against her and pre-trial *Marsden* hearings, recounts verbal exchanges

1    where Suwczinsky questioned him "like a prosecutor" and appeared to erroneously assume

2    the case was ready for trial based on prior counsel's preparation, and again repeats

3    previously rejected claims concerning her alleged failures as to the presentencing

4    interview/report and at sentencing, *see* Claims 6, 8, 12, *supra*, and the asserted breakdown

5    in communications, *see* Claim 57, *supra*. ECF No. 38-50 at 77. But he fails to allege how

6    these exchanges or asserted deficiencies show Suwczinsky labored under any conflict of

7    interest which negatively impacted her performance, and his claim thus fails as conclusory.

8    *Cuyler*, 446 U.S. at 350; *see Greenway*, 653 F.3d at 804; *see also James*, 24 F.3d at 26.

9        As to Marshall-Petry, Petitioner contends she "treated Petitioner as guilty" and was

10    not "loyal" to him, again citing emails between her and the pretrial prosecutor which

11    purportedly demonstrate she was "collaborating to prevent any possibility of a successful

12    appeal." ECF No. 23-4 at 46. But as previously discussed, *see* Claim 15, *supra,* the emails

13    do not demonstrate collaboration, nor do they show Marshall-Petry had a conflict of

14    interest which impacted her performance. *Cuyler*, 446 U.S. at 350. He again also cites to

15    bar complaints he filed against her and *Marsden* hearings, recounts verbal exchanges where

16    she questioned him "like a prosecutor," and repeats previously rejected claims of error

17    concerning the communication of a plea offer and the asserted breakdown in

18    communications, *see* Claims 56, 65, *supra*. ECF No. 38-50 at 91. Yet again, he does not

19    explain how these exchanges or asserted deficiencies show Marshall-Petry labored under

20    a conflict of interest which negatively impacted her performance. *Cuyler*, 446 U.S. at 350;

21    *see Greenway*, 653 F.3d at 804; *see also James*, 24 F.3d at 26. As to his allegation counsel

22    was not loyal and treated him as guilty, in the absence of any factual allegation concerning

23    how any such attitude impacted her performance, he does not state a claim for relief. *See*

24    *Slappy*, 461 U.S. at 14 ("[W]e reject the claim that the Sixth Amendment guarantees a

25    'meaningful relationship' between an accused and his counsel.") (footnote omitted).

26        Because Claims 72 and 86 fail for lack of merit and because Petitioner does not show

27    the state court decision was contrary to or an unreasonable application of clearly

28

established federal law or was based on an unreasonable factual determination, habeas relief is unavailable on either claim. *Cuyler*, 446 U.S. at 350; *Richter*, 562 U.S. at 101.

### 8. Claims Alleging Ineffective Assistance of Appellate Counsel

Petitioner alleges appellate counsel rendered ineffective assistance on direct appeal (Claims 2, 5, 9, 19, 47-48, 101, and 103) and asserts there was a "breakdown" in attorney-client communication with appellate counsel (Claim 49).

"[A] criminal defendant has a right to effective assistance of counsel on a first appeal as of right." *Ohio Adult Parole Authority v. Woodard,* 523 U.S. 272, 284 (1998), citing *Evitts v. Lucey*, 469 U.S. 387, 394-96 (1985). Even so, "appellate counsel has no constitutional obligation to raise every non-frivolous issue requested by the defendant." *Miller v. Keeney*, 882 F.2d 1428, 1434 n.10 (9th Cir. 1989) (citing *Jones v. Barnes*, 463 U.S. 645, 751-54 (1983)).

### a. Claims 2, 47, and 101

Petitioner asserts appellate counsel was ineffective in failing to file a petition for a writ of certiorari (Claim 2), failing to follow the "*Anders* mandate" and "refus[ing]" to proceed on appeal (Claim 47), and filing a "no-merit" brief pursuant to *Anders* (Claim 101) on his direct appeal.[37] ECF Nos. 23 at 5, 23-4 at 3, 23-6 at 1.

First, with respect to Claim 2, Petitioner acknowledges there is no federal constitutional right to counsel while seeking certiorari from the Supreme Court, *see* ECF No. 23 at 5, citing *Ross v. Moffitt*, 417 U.S. 600 (1974), but nonetheless asserts he has a "statutory right" to counsel pursuant to 18 U.S.C. § 3006A. *Id.* Yet, that statute is inapplicable here, as it plainly governs appointment of counsel in the *federal district court*, and not in *state* post-conviction proceedings. *See* 18 U.S.C. § 3006A(a) ("Each United States district court, with the approval of the judicial council of the circuit, shall place in

---

[37] Petitioner does not explain his Claim 47 reference to the "Anders mandate," but given he also cites *Anders* with respect to Claim 101, the Court will address and discuss *Anders v. California,* 386 U.S. 738 (1967), in the discussion of that latter claim.

operation throughout the district a plan for furnishing representation for any person financially unable to obtain adequate representation in accordance with this section . . .") His reference to 28 U.S.C. § 2255, *see* ECF No. 23 at 5, is equally unavailing, as that statute concerns appeals from a *federal* conviction, not a *state* judgment of conviction. Given the lack of a federal Constitutional right to state post-conviction counsel, there is also no right to the effective assistance of such counsel. *See e.g. Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (per curiam) ("[A] criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals or applications for review in this Court. . . Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely."), citing *Ross*, 417 U.S. 600 (additional citations and footnotes omitted). Claim 2 thus plainly fails for lack of merit.

As to Claim 47, Petitioner contends appellate counsel failed to request a state appellate court rehearing after his direct appeal was denied, failed to file a writ of certiorari within 90 days of the state supreme court's decision affirming judgment, and failed to seek relief in federal court. ECF No. 23-4 at 3-4. First, his assertion as to the writ of certiorari fails for the reasons just discussed with respect to Claim 2. As to his claim *state* appellate counsel was somehow required to seek other review in *federal* court, such an argument is also a non-starter, as appellate counsel's responsibilities ended with the conclusion of direct review. *See e.g. Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.") Petitioner also not only fails to explain how counsel was allegedly deficient for these purported failures, but he does not demonstrate prejudice. *See Mirzayance*, 556 U.S. at 122 ("[A] defendant must show both deficient performance by counsel and prejudice in order to prove that he has received ineffective assistance of counsel.") Even were he somehow able to show counsel's failure to file a petition for rehearing amounted to deficient performance, he does not show prejudice given counsel thereafter sought review of the state appellate court's decision in the state supreme court and the petition for review was

denied. ECF Nos. 38-47, 38-49; *see Strickland*, 466 U.S. at 194 (prejudice requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). Claim 47 thus fails for lack of merit.

Finally, Petitioner contends in Claim 101 counsel filed a "no-merit brief (Anders)" which denied him the right to the effective assistance of counsel on direct appeal. ECF No. 23-6 at 1. Petitioner appears to primarily take issue with counsel's failure to "include additional claims on direct appeal" as he requested, and declining to utilize Petitioner's "plan and approach" for appeal. *Id.*; *see also* ECF No. 38-50 at 106. However, it is clear appellate counsel did not file a "no-merit" or "*Anders*" brief in Petitioner's direct appeal. *See Anders*, 386 U.S. at 744 (holding "if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.") Instead, counsel raised one claim for sentencing relief (Claim 1 in the instant Petition) and argued to the extent the state appellate court was inclined to find the issue waived, trial counsel was ineffective for failing to raise the issue and argue the matter at sentencing. ECF No. 38-41. Nor does he show appellate counsel acted in a constitutionally deficient manner in declining to raise claims he requested or sought to present, as clearly established authority forecloses such a contention. *See Barnes*, 463 U.S. at 751 ("Neither *Anders* nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points.") He also does not demonstrate prejudice because he does not show had counsel presented those claims, the outcome of his appeal would have been different. *See e.g.* Claims 5, 9, 19, 30, 48, 102, 103, *infra*; *see Mirzayance*, 556 U.S. at 122. Claim 101 thus fails for lack of merit.

Because these claims each lack merit and because Petitioner fails to show the state court rejection of Claims 2, 47 or 101 was contrary to or an unreasonable application of

1  clearly established federal law or was based on an unreasonable determination of the facts,

2  habeas relief is not available. *Richter*, 562 U.S. at 97-98, 101; *Strickland*, 466 U.S. at 694.

3  ### b.  Claims 5, 9, 19, 30, 48, 102, and 103

4  Petitioner alleges appellate counsel failed to raise numerous claims of ineffective

5  assistance of trial counsel on appeal, including with respect to: the presentencing interview,

6  preparation of mitigation and at sentencing (Claims 5 and 9), DNA issues (Claim 30), lack

7  of motion for a mistrial after Burhans' testimony (Claim 48), silence at the reading of the

8  verdict and at sentencing (Claim 103), and also alleges appellate counsel failed to raise and

9  argue a speedy trial violation (Claim 19) and a Confrontation Clause violation at the

10  preliminary hearing (Claim 102).

11  Yet, the Court has elsewhere rejected the contentions underlying these ineffective

12  assistance of appellate counsel claims. For instance, in Claims 6, 8, and 12, *supra*, the Court

13  found Petitioner's allegations of ineffective assistance of trial counsel at sentencing lacked

14  merit, and as such, appellate counsel's failure to raise those "meritless" arguments in

15  Claims 5, 9, and the sentencing aspect of Claim 103 do not demonstrate ineffective

16  assistance of appellate counsel. *See e.g. Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir.

17  2001) ("[A]ppellate counsel's failure to raise issues on direct appeal does not constitute

18  ineffective assistance when appeal would not have provided grounds for reversal."), citing

19  *Jones v. Smith*, 231 F.3d 1227, 1239 n. 8 (9th Cir. 2000) and *Boag v. Raines*, 769 F.2d

20  1341, 1344 (9th Cir. 1985); *see also Baumann v. United States*, 692 F.2d 565, 572 (9th Cir.

21  1982) ("The failure to raise a meritless legal argument does not constitute ineffective

22  assistance of counsel."); *Miller*, 882 F.2d at 1434 and n.10. In Claims 40 and 50, *supra*,

23  the Court similarly found his allegations of ineffective assistance of trial counsel relating

24  to counsel's failure to move to suppress the DNA evidence and failure to move for a

25  mistrial after investigator Burhans' testimony also failed for lack of merit, and thus again,

26  appellate counsel's failure to raise those arguments (Claim 48) do not suffice to state a

27  claim of ineffective assistance of appellate counsel. *See e.g. Wildman*, 261 F.3d at 840;

28  *Baumann*, 692 F.2d at 572. For the same reasons, his allegations of ineffective assistance

1    of appellate counsel as to the other claims not raised (Claims 19, 30 and 102) similarly fail

2    to state a claim given the underlying claims of error lack merit. *See* Claims 21, 22, 30, 54,

3    *supra*; *Wildman*, 261 F.3d at 840; *Baumann*, 692 F.2d at 572.

4          Finally, as to Claim 103, while it does not appear he raised any related ineffective

5    assistance of *trial* counsel claim in the FAP, this claim also fails for lack of merit. He faults

6    trial counsel for being "silent with no objection" at the reading of the verdict and when the

7    "extreme" sentence was imposed, *see* ECF No. 23-6 at 3, but does not articulate any basis

8    for objecting to the jury's verdict and thus states no basis upon which appellate counsel

9    could have premised a claim of ineffective assistance. Thus, at least to the verdict, this

10   claim of error fails as vague and conclusory. *Greenway*, 653 F.3d at 804; *see also James*,

11   24 F.3d at 26. The Court previously rejected the claim his sentence was "extreme" or

12   disproportionate, *see* Claim 1, *supra*, and he does not identify any "sentencing errors"

13   counsel should ostensibly have objected to apart from again contending his sentence was

14   "extreme" and "beyond statutory maximum." ECF No. 38-50 at 108. Given his underlying

15   contention lacks merit, coupled with the Court's prior rejection of his related claims of

16   ineffective assistance of trial counsel, *see e.g.* Claim 12, *supra*, he does not show appellate

17   counsel was ineffective in failing to raise arguments which had no likelihood of success on

18   appeal. *See Wildman*, 261 F.3d at 840; *Baumann*, 692 F.2d at 572.

19         Because these claims fail for lack of merit and Petitioner fails to show the state court

20   decision was contrary to or an unreasonable application of clearly established federal law

21   or was based on an unreasonable determination of the facts, habeas relief is not available

22   on any of these claims. *Richter*, 562 U.S. at 97-98, 101; *Strickland*, 466 U.S. at 694.

23           **c.  Claim 49**

24         Petitioner contends there was a breakdown in communication with appellate

25   counsel, as they "only spoke on the phone once or twice" during her representation, "no

26   other calls were answered," and "letters were not responded to promptly and thoroughly."

27   ECF No. 23-4 at 7. He faults counsel for not visiting him in person or through "video

28

3:22-cv-00556-JES-VET

visits."[38] *Id.* at 8. In support, he submits copies of written correspondence between himself and this counsel. *See* ECF No. 23-23, Exh. H to FAP.

A review of the written correspondence reflects counsel communicated with Petitioner throughout her representation and he fails to show the asserted failure to also communicate through phone, video or in person somehow affected the adequacy of counsel's representation, much less resulted in the constructive denial of counsel. *See e.g. Morris*, 461 U.S. at 14 ("[W]e reject the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel.") (footnote omitted); *see also Strickland*, 466 U.S. at 692. His allegations of difficulty in communication or differences in opinion as to how the appeal should have been conducted do not demonstrate a federal Constitutional violation. *Schell*, 218 F.3d at 1027 ("[N]ot every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights."), citing *Morris*, 461 U.S. at 13-14. He also fails to show a "reasonable probability" the result of his appeal "would have been different" but for counsel's alleged inadequacies. *Strickland*, 466 U.S. at 694.

Because this claim lacks merit and Petitioner fails to show the state court decision was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable factual determination, habeas relief is not available on Claim 49. *Strickland*, 466 U.S. at 692, 694; *Morris*, 461 U.S. at 13-14; *Richter*, 562 U.S. at 101.

### 9. Claims Concerning Conditions of Confinement

Petitioner alleges numerous failures by the Sheriff's Department, including: failing to protect the protective custody defendants (Claim 55), placing him in situations at risk to his health and life while trying to prepare post-conviction pleadings (Claim 95), committing misconduct and interfering with his pro per representation (Claim 110), a

---

[38] To the extent Petitioner again asserts counsel raised "only one claim on direct appeal," failed to raise additional requested claims and failed to file a petition for writ of certiorari, *see id.* at 8, those claims are addressed elsewhere. *See e.g.* Claims 2, 47, 101, *supra*.

deputy sheriff groped him prior to escorting him to a pre-trial court hearing (Claim 111), and contends his current sentence and earned good conduct credits are no longer in compliance with current law (Claim 113). Again, the Court's review is de novo, informed by any relevant state court reasoning and analysis.

Challenges to the fact or duration of confinement are brought by petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, while challenges to conditions of confinement are brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 488-500 (1973). "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500. Meanwhile, "a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." *Id.* at 499; *see also Nettles v. Grounds*, 830 F.3d 922, 931 (9th Cir. 2016) (en banc) ("[W]e hold that if a state prisoner's claim does not lie at 'the core of habeas corpus,' it may not be brought in habeas corpus but must be brought, 'if at all,' under § 1983."), quoting *Preiser*, 411 U.S. at 487; *see also Skinner v. Switzer*, 562 U.S. 521, 535 n.13 (2011).

### a. Claims 55 and 110

Petitioner contends the Sheriff's Department "failed to protect the protective custody defendants," which adversely impacted his preparation for trial (Claim 55) and "displayed misconduct and interfered with [his] pro-per representation" (Claim 110), violating his federal right to due process and to a fair trial. ECF Nos. 23-4 at 15, 23-6 at 10.

However, Petitioner fails to specify or explain how the actions of the Sheriff impeded or interfered with his ability to prepare for trial or represent himself. With respect to Claim 55, he generally asserts it "was his right to be safe, unharmed, and maintain a sound and stressless mind" while in protective custody, the Sheriff failed to protect him, and "stress and physical harm is very distracting while fighting and self representing your case." ECF No. 23-4 at 15. He recounts a verbal and physical assault by another inmate on

132

November 19, 2016, which he asserts was "instigated" by three other inmates and alleges jail personnel failed to protect him from "staph infection, surgery, nerve damage," for which he filed grievances and other incident reports. ECF No. 38-50 at 60. In Claim 110, Petitioner alleges jail personnel failed to take him to the law library to prepare for a bail hearing at an unspecified time after his surgery, he was harassed about his Bible and his religion, was not provided with power outlet in his cell for his "wound vacuum," was told to walk down flooded halls and fell due to wet shoes, fell off a bus seat when the driver braked during a transport, other individuals were allowed in the law library and elevator with him despite his protective custody status, was subjected to strip searches and cell searches without his presence resulting in the loss of property/legal documents, was under threat of infection, and was told to mail legal property home which also resulted in the loss of materials. ECF No. 38-50 at 115. He maintains "[t]hese details in this claim are protected under federal law." ECF No. 23-6 at 10.

To the extent either claim is potentially cognizable on habeas review, Petitioner does not specify he was prevented from preparing for trial or attending proceedings due to the actions or inactions of Sheriff Department personnel. While he mentions being impeded from using the law library to prepare for a bail hearing, he does not allege he was ultimately unable to otherwise prepare for or attend that hearing. As with prior claims similarly found lacking detailed support, the Court finds "[Petitioner's] cursory and vague claim cannot support habeas relief." *Greenway*, 653 F.3d at 804, citing *James*, 24 F.3d at 26. Even were Petitioner able to demonstrate the Sheriff somehow acted or failed to act to his arguable detriment, he does not show it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Thus, even under a de novo review, habeas relief is not available on Claims 55 or 110.[39]

_____

[39] It also appears several of these complaints solely concern the conditions of his confinement, which again may not be brought on habeas review and must instead be raised, if at all, in section 1983. *See Nettles*, 830 F.3d at 935 ("Because success on [Petitioner's]

### b.  Claims 95 and 111

In Claim 95, Petitioner asserts he has been "placed in extreme health risk and life-threatening situations while trying to prepare appeal documents and writ of habeas corpuses from November 14, 2019 to present," indicates he "will seek civil relief" and is "reporting civil matter(s) and requesting proper filing method/procedures." ECF No. 23-5 at 9. In Claim 111, Petitioner alleges a San Diego Deputy Sheriff "groped" him "two times during body pat down before escorting him to court hearing" during the time he was pro per, indicates he "will pursue civil relief" and "request[s] the proper procedure to pursue civil relief." ECF No. 23-6 at 11. As he appears to acknowledge, these contentions are not properly brought on habeas review but instead appear to be challenges to the conditions of his confinement which "must be brought, 'if at all,' under § 1983." *Nettles*, 830 F.3d at 931, quoting *Preiser*, 411 U.S. at 487. Claims 95[40] and 111 are not cognizable on federal habeas review and thus neither states a claim for federal habeas relief.

### c.  Claim 113

Petitioner claims his "current sentence and good conduct credits (GCC) earned are no longer in compliance with current law" and because "[t]he crimes in this case are not violent under federal law," he "should be eligible for additional credits." ECF No. 23-6 at 13. Yet, Petitioner concedes he is serving an indeterminate sentence of "150 years to life

---

claims would not necessarily lead to his immediate or earlier release from confinement, [Petitioner's] claim does not fall within 'the core of habeas corpus,' and he must instead bring his claim under § 1983."), quoting *Skinner*, 562 U.S. at 535 n. 13.

[40] It additionally appears at least a few of his Claim 95 allegations concern events which took place during his incarceration at institutions not located in this district, including California Institution for Men ("CIM") in Chino and Ironwood State Prison in Blythe. *See* ECF No. 38-50 at 100. CIM is in Riverside County and Ironwood is in San Bernardino County, and as such, both institutions are within the jurisdictional boundaries of the Central District of California, Eastern Division. *See* 28 U.S.C. § 84(c)(1). If Petitioner intends to seek relief on these contentions pursuant to 42 U.S.C. § 1983, he must do so in a Court of proper jurisdiction.

plus three years." *See* ECF No. 23 at 2. Even were he able to establish entitlement to additional credits, he fails to allege it would "necessarily" result in his earlier release, and as such, this claim is not cognizable on habeas corpus. *See Nettles*, 830 F.3d at 935.

Claim 113 is thus not cognizable on habeas because it is unclear how it challenges the constitutional validity or duration of his confinement and does not state a claim for federal habeas relief. *See* 28 U.S.C. § 2254(a); *Preiser*, 411 U.S. at 500. To the extent Petitioner seeks to bring this challenge, he must do so, if at all, in a civil rights complaint filed pursuant to 42 U.S.C. § 1983. *See Nettles*, 830 F.3d at 931, 935.

## V.    PETITIONER'S REQUESTS

In addition to requesting an evidentiary hearing and post-hearing pleadings, habeas relief and release from custody, Petitioner outlines numerous other requests "if necessary," including appointment of counsel, funds for the retention of experts and investigators, and expansion of the record/discovery/additional briefing and development of the facts and law. ECF No. 40 at 30.

The Court first addresses Petitioner's request for habeas relief and release from custody. For the reasons discussed in detail above, Petitioner has not shown an entitlement to habeas relief as to any of his claims for habeas relief. Accordingly, the Court **DENIES** Petitioner's request for habeas relief and release from custody.

The Court next turns to Petitioner's request for an evidentiary hearing and other evidentiary development, including expansion of the record, discovery and his related requests for additional briefing and/or pleadings and development of the facts and law. As to Claims 1-4, 7, 10-11, 14, 16, 18, 21-32, 34-39, 41-42, 44-46, 51-55, 58-70, 84-85, 95-100, 104-111, and 113-120, because habeas relief is not warranted on any of those claims under an independent review of the record (as to Claims 117-120), because the claims are not cognizable or are foreclosed on federal review (Claims 27, 31, 34, 95, 111, and 113) or even under a de novo review (as to the remainder of these claims) for the reasons discussed above, the Court finds an evidentiary hearing unnecessary. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is *not* required on issues that can be

3:22-cv-00556-JES-VET

resolved by reference to the state record.") As to Claims 5-6, 8-9, 12-13, 15, 19-20, 33, 40, 43, 47-50, 56-57, 71-83, 86-94, 101-103, and 112, because habeas relief is not available under section 2254 given each of those claims both fail on the merits and were reasonably rejected by the state court as discussed above, an evidentiary hearing is also not necessary or warranted. *See Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) ("[A]n evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief.") Given none of Petitioner's claims warrant an evidentiary hearing, the Court finds discovery, additional briefing, or further factual and record development similarly unnecessary. *See e.g. Kemp v. Ryan*, 638 F.3d 1245, 1260 (9th Cir. 2011) ("[B]ecause the district court was not authorized to hold an evidentiary hearing on [Petitioner's] [] claim, obtaining discovery on that claim would have been futile.") Thus, the Court **DENIES** Petitioner's request for an evidentiary hearing and other evidentiary development.

Petitioner has also requested the appointment of counsel. District courts are clearly provided with statutory authority to appoint counsel in a federal habeas case when a petitioner is financially eligible and "the court determines that the interests of justice so require." 18 U.S.C. §3006A(a)(2)(b); *see also Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986) ("Indigent state prisoners applying for habeas corpus relief are not entitled to appointed counsel unless the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations.") (citations omitted). Here, however, the Court finds nothing to support a conclusion that such appointment is necessary to prevent a violation of due process in this instance, *see Chaney*, 801 F.2d at 1196, as the Court's review of Petitioner's FAP, which again contains 120 enumerated claims for habeas relief, and his Traverse, which includes numerous ancillary requests, reflect Petitioner's ability to articulate his positions in his own stead without the assistance of counsel. *See e.g. LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir. 1987) (district court did not abuse discretion in declining to appoint counsel where "district court pleadings illustrate to us that [the petitioner] had a good understanding of the issues and the ability to present forcefully and coherently his contentions."); *see* ECF Nos. 23, 40. Moreover,

given this request is clearly connected to his request for additional evidentiary development, and/or evidentiary hearing, any such appointment is also unnecessary because any such development is not warranted in this case. For these reasons, the Court **DENIES** Petitioner's request for the appointment of counsel.[41]

Finally, the Court addresses Petitioner's request for funds for the retention of experts and investigators. Because this request, similar to his request for the appointment of counsel, is plainly connected to his request for evidentiary development and/or evidentiary hearing, the Court **DENIES** the request as moot given evidentiary development is not warranted in this case.

## VI.    CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. 11(a), Rules Governing Section 2254 Cases (2019). "A certificate of appealability should issue if 'reasonable jurists could debate whether' (1) the district court's assessment of the claim was debatable or wrong; or (2) the issue presented is 'adequate to deserve encouragement to proceed further.'" *Shoemaker v. Taylor*, 730 F.3d 778, 790 (9th Cir. 2013), quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This same requirement applies when a district court's decision is based on procedural grounds. *See Buck v. Davis*, 580 U.S. 100, 122 (2017) ("[A] litigant seeking a COA must demonstrate that a procedural ruling barring relief is itself debatable among jurists of reason; otherwise, the appeal would not 'deserve encouragement to proceed further.'"), quoting *Slack*, 529 U.S. at 484.

Here, the Court finds issuing a certificate of appealability is not appropriate as reasonable jurists would not find debatable or incorrect the Court's conclusion that (1) the Court is not precluded from considering the merits of Claims 2-4, 7, 10-11, 14, 16, 18, 21-32, 34-39, 41-42, 44-46, 51-55, 58-70, 72-86, 95-99, 101, 104-111, and 113-116 based on

---

[41] To the extent Petitioner requests this Court appoint counsel to assist in state court proceedings (*see e.g.* Claims 117-120), any such request is not appropriate and is denied.

procedural default, (2) irrespective of any procedural bar matters, habeas relief is not warranted on Claims 1-4, 7, 10-11, 14, 16, 18, 21-32, 34-39, 41-42, 44-46, 51-55, 58-70, 84-85, 95-100, 104-111, and 113-120 under an independent review of the record (as to Claims 117-120), because the claims are not cognizable or are foreclosed on federal review (Claims 27, 31, 34, 95, 111, and 113) or even under a de novo review (as to the remainder of these claims), and (3) habeas relief is not available under section 2254 on Claims 5-6, 8-9, 12-13, 15, 19-20, 33, 40, 43, 47-50, 56-57, 71-83, 86-94, 101-103, and 112 because each of those claims both fail on the merits and were reasonably rejected by the state court, nor does the Court find any of the issues presented deserve encouragement to proceed further. *See* 28 U.S.C. § 2253(c); *Slack*, 529 U.S. at 484.

## VII.   CONCLUSION AND ORDER

For the reasons discussed above, the Court **DENIES** the Amended Petition for a Writ of Habeas Corpus, **DENIES** Petitioner's requests [ECF No. 40 at 30] and **DENIES** a Certificate of Appealability.

**IT IS SO ORDERED.**

Dated:  November 10, 2025

Honorable James E. Simmons Jr.
United States District Judge

3:22-cv-00556-JES-VET